FILED

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

2014 DEC 19 P 2: 28

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**VERISIGN, INC.,**

**Plaintiff,**

v.

**XYZ.COM, LLC**

**-and-**

**DANIEL NEGARI,**

**Defendants.**

Civil Action No. _1:14CV1749-CMH-TRJ_

## **COMPLAINT**

Plaintiff VeriSign, Inc. ("Verisign"), by and through its undersigned counsel, hereby brings the following Complaint against Defendant XYZ.COM LLC ("XYZ") and its Chief Executive Officer and founder, Daniel Negari ("Negari") for violations of the Lanham Act's prohibition on false or misleading representations of fact in commercial advertising.

In support thereof, Verisign makes the following allegations on personal knowledge or upon information and belief.

## **NATURE OF THE CASE**

1.      Verisign seeks preliminary and permanent injunctive relief, disgorgement of profits, enhanced damages, attorneys' fees, and other damages pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading advertising and unfair competition in interstate commerce.

2.      XYZ and Negari are disseminating a false and/or misleading promotional campaign in which they:

    a.    Disparage Verisign by stating that it is "*impossible*" for customers to find the domain name that they want using .COM—despite the fact that millions of customers find the .COM domain name they want every quarter.

    b.    Represent that XYZ is "the number one new [g]TLD in the marketplace" and has the "most registrations of all new gTLDs" based on artificial XYZ-generated data, derived from XYZ's automatically registering users for XYZ domain names without the knowledge or consent of those users.[1]

    c.    Represent that independent third parties have declared XYZ the "next .COM" when in fact the third parties cited have said no such thing.

    d.    Assert comparative equivalence or superiority to Verisign despite substantial differences between .XYZ and .COM in acceptance, reputation, security, and stability.

3.    XYZ and Negari's statements are literally false because:

    a.    There are an astronomically high amount of theoretical names left in the .COM registry, and in fact, *millions of .COM domain names are registered each quarter* by businesses and individuals. By way of example, .COM added over 30 million domain names to the base in 2013.

    b.    On information and belief, XYZ relies on automatic registrations by one or more third parties to deceptively inflate the growth, success, and desirability of XYZ as a .COM competitor.

---

[1] "gTLD" stands for generic top-level domain (like .COM, .NET, .ORG, or .XYZ).

c.      XYZ has not been declared "the next .COM" by independent third parties as it has falsely claimed.

d.      XYZ is in no way equivalent or superior to Verisign.

4.      XYZ and Negari's statements violate the Lanham Act, constitute unfair competition, and are proximately impairing Verisign's brand and goodwill.

## THE PARTIES

5.      Plaintiff Verisign is a Delaware corporation with its principal place of business at 12061 Bluemont Way, Reston, Virginia, 20190.

6.      Defendant XYZ.COM, LLC, is a Nevada business with its principal place of business at 318 North Carson Street No. 208, Carson City, NV 89701.

7.      Defendant Negari is a resident of California residing at 205 South Camden Drive, Beverly Hills, California 90212.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction because this action arises out of violations of the federal laws pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1125(a).

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, XYZ's advertising reaches customers in this judicial district, on information and belief, XYZ relies on automatic registrations by one or more third parties to automatically register for an XYZ domain name customers who reside in this judicial district, and Verisign is headquartered in this judicial district and is suffering irreparable harm in this judicial district.

## FACTUAL BACKGROUND

10.     Verisign is a global leader in domain names and Internet security.

11.     For more than 15 years, Verisign has operated the infrastructure for a portfolio of top-level domain names that today includes .COM, .NET, .TV, .CC, .NAME, .JOBS, .EDU, and .GOV, as well as two of the world's 13 Internet root servers.

12.     Versign's product suite includes Managed DNS, Distributed Denial of Service ("DDoS") Protection and iDefense Security Intelligence Services.

13.     XYZ is the registry operator for the newly launched .XYZ domain extension.

14.     Negari is the Chief Executive Officer and founder of XYZ.

15.     On information and belief, Negari is responsible for all actions of XYZ.

16.     XYZ has launched a promotional campaign that is designed to suggest that it is superior to Verisign.

17.     For example, on its website at http://xyz.com/, XYZ features a 35 second video that is entitled "Move over .com - .XYZ is for the next generation of the internet."

18.     An accurate verbatim transcription of the audio voiceover for this video is attached as **EXHIBIT 1**.

19.     XYZ's video features what appears to be a dirty 1994 Honda Accord with a sputtering engine sound and a Nevada license plate that says ".COM." The Honda is filmed in a grainy video, and is accompanied by unflattering and dated background music.

20.     The voice-over states, among other things, that: "with over 120 million dot coms registered today, *it's __impossible__ to find the domain name that you want*." **EXHIBIT 1** (emphasis added).

21.     After focusing on the old Honda, the ad then shows a shiny new Audi sports car pulling up next to the Honda with a Nevada license plate that says "XYZ." The Audi sports car

appears to be an Audi R8 Spyder (a luxury coupe that retails for over $130,000). The video

changes from grainy to clear, and the music changes to a more upbeat and modern style.

22.     The voice over says that "introducing the new .XYZ...for every website,

everywhere." The Audi speeds away as the Honda remains stationary.

23.     A screenshot from the video is below:



24.     The visual communicates a comparative superiority claim.

25.     The claim that "it's ***impossible*** to find the domain name that you want" using

.COM (emphasis added) is literally false. To the contrary, millions of businesses and individuals

register new .COM domain names every quarter.

26.     Negari has repeated this attempt to falsely portray the availability of domain

names in .COM.

27.     Negari stated in an interview on National Public Radio that, with respect to the

availability of domain names in .COM, "[a]ll of the good real estate is taken. The ***only*** thing that

is left is something with a dash, or maybe three dashes and a couple of numbers in it." (emphasis added).

28.     A true and correct copy of this interview is attached as **EXHIBIT 2**.

29.     This statement is literally false.

30.     In fact, numerous short, relevant domain names without "a dash, or maybe three dashes and a couple of numbers," as Negari falsely claimed, are available in .COM and are registered by thousands of consumers and businesses every day.

31.     In addition to the false statements about the availability of domain names in .COM, XYZ has falsely attributed to supposed neutral third parties statements suggesting that XYZ is the "next .com."

32.     For example, XYZ states on its website and in promotional materials that NPR called XYZ the "next .com."

33.     A true and correct copy of a printout from XYZ's website is attached as **EXHIBIT 3**.

34.     This statement is literally false.

35.     In fact, in the NPR story that the advertising references, the NPR reporter says that XYZ "could *try* to become the next .COM." **EXHIBIT 2** (emphasis added).

36.     On July 31, 2014, Verisign wrote a letter to Negari detailing the falsity of the statements related to the NPR broadcast and notifying Negari of Verisign's resolve to protect its rights under the Lanham Act. Verisign sent this letter via certified mail. Verisign set a deadline to respond of August 15, 2014.

37.     A true and correct copy of the July 31, 2014 letter is attached as **EXHIBIT 4**.

38.     Negari never responded to this letter.

39.     Instead of voluntarily correcting the false advertising and avoiding this dispute, Negari and XYZ have continued to disseminate these and similar false statements into commerce.

40.     XYZ's current website states: "Coined the next .com by NPR and VentureBeat" http://gen.xyz/registrars.  As explained above, NPR did not call XYZ the next.com.  In addition, the referenced VentureBeat article likewise does not call XYZ the "next .com." To the contrary, VentureBeat expresses skepticism:  "Interestingly, .xyz's own website is at a dot-com address, xyz.com. Go figure."

41.     A true and correct copy of Venture Beat's statement is contained in **EXHIBIT 5** (http://venturebeat.com/2014/05/12/cant-find-a-com-address-try-foo-or-xyz/).

42.     XYZ's promotional statements, when viewed together and in context, reflect a strategy to create a deceptive message to the public that companies and individuals cannot get the .COM domain names they want from Verisign, and that XYZ is quickly becoming the preferred alternative.

43.     This false advertising campaign appears to be part of a larger scheme to unfairly target, and unfairly compete with, Verisign.

44.     On information and belief, XYZ, through one or more third parties, caused hundreds of thousands of registrants of .COM domain names to take a one year .XYZ domain name registration for no fee—but without the affirmative consent of the registrant, and in some instances, without any notice to the registrant.

45.     On information and belief, XYZ, through one or more third parties, caused this scheme to be "opt-out," meaning that, without affirmative action on the part of the registrant, the registrant would be automatically registered for a .XYZ domain name.

46.     On information and belief, XYZ, through one or more third parties, disseminated an email with a misleading subject line: "Thank You for being a loyal customer," from the registrar, which many registrants may not have opened, or which would have automatically landed in a junk mail folder.

47.     On information and belief, unless the registrant took an affirmative action to opt out in response to this email, the registrant was automatically registered for a .XYZ domain name.

48.     Verisign has directly been affected by XYZ's scheme.  Verisign is the registrant for the domain name "gtld-servers.com."  Unbeknownst to Verisign, on information and belief, XYZ through a third party caused Verisign to become—without Verisign's consent—the registrant for "gtld-servers.xyz."

49.     On June 4, 2014, an internet domain name commentator reported that third party "Network Solutions gave away thousands of .XYZ domain names for free to people who hadn't requested them, artificially inflating the new gTLD's launch day numbers."  The same commentator reported that, at that time, of the 36,335 registered .XYZ domain names, approximately 27,000 were associated with Network Solutions, LLC and its parent, Web.com.

50.     On June 6, 2014, in an interview with another domain name commentator, Negari was asked if he was "behind" the scheme.  Negari did not expressly deny his involvement, but instead coyly stated:  "I never even saw the email that the registrar sent to its customers until I discovered it on the blogs."

51.     On June 8, 2014, another commentator reported on the scheme and noted that "the effect of this has been to propel .XYZ into the leading spot in the new gTLD league table."

52.     On information and belief, XYZ has used its scheme to grossly overstate the number of legitimate .XYZ domain name registrations—which serves to falsely and unfairly support XYZ's claims to being the next .COM and the fastest growing new gTLD. On information and belief, XYZ and Negari have used this scheme to deceptively inflate the success and desirability of .XYZ as a .COM competitor.

53.     For example, Negari has stated:

a.      "We are now the number one new [g]TLD in the marketplace" (statement made on June 6, 2014) (video statement; an accurate verbatim transcription is attached as **EXHIBIT 6**);

b.      ".xyz has received the most registrations of all new gTLDs *with 447,544 domains registered*" (statement made on August 20, 2014) (emphasis added) (a true and correct excerpt is attached as **EXHIBIT 7**);

c.      "It seems I aimed too low in my ambitions of .com, .net, .xyz, as it has now become .com, .xyz, .org!" (statement made on August 27, 2014) (a true and correct excerpt is attached as **EXHIBIT 8**);

d.      "In nearly every relevant metric for success including *registration numbers* . . . .xyz leads the pack" (statement made on October 18, 2014) (emphasis added) (a true and correct excerpt is attached as **EXHIBIT 9**); and

e.      "Awareness and traffic lead to registrations. Notable accomplishments since general availability launch: *550k - xyz domains registered since launch*" (presentation posted to the internet on October 18, 2014) (a true and correct excerpt is attached as **EXHIBIT 10**) (emphasis added).

54.     On information and belief, Negari and other agents of XYZ have repeated the foregoing representations of fact including verbally in communications with customers and investors.

55.     On information and belief, the foregoing statements are misleading because the vast majority of registrations were given out for free as part of the "opt-out" scheme designed to create the false appearance of success.

56.     As of December 16, 2014, a commentator posted that of the approximately 750,000 .XYZ registered domain names, approximately 50% of all .XYZ domain names were registered by Network Solutions, LLC.

57.     On information and belief, 25% of all .XYZ domain names are held by Xin Net, another domain name registrar.

58.     XYZ's conduct in this case is similar to conduct previously attributed to Negari in a prior lawsuit, *Facebook, Inc. v. Cyber2media, Inc. and Daniel Negari et al*, No. 4:11-cv-03619-PJH (N.D. Cal. 2011) (the "Facebook/Negari" Litigation).

59.     Negari is the founder of Cyber2media, Inc.

60.     In the First Amended Complaint of the Facebook/Negari Litigation, Facebook alleged that:

    a.      Negari is a "typosquatter" who "exploit[s] and profit[s] from Internet Domain names that are confusingly similar to Facebook's famous and distinctive trademark . . . ." (¶ 1);

    b.      Negari maintains typosquatter domain names, and has "registered, used, and trafficked in typosquatter domain names in the past . . . ." (¶ 44); and

     c.     Negari engaged in unlawful conduct to "divert Facebook users and potential users from Facebook's online location and thereby harm Facebook." (¶ 57).

61.     Facebook also alleged that Negari "knowingly destroyed evidence relevant to Facebook's claims against Cyber2Media, Negari, and other Defendants" (¶ 60).

62.     On information and belief, Negari settled the Facebook/Negari litigation.

63.     XYZ's conduct in this case is similar to conduct previously attributed to Cyber2media in *Goodwill Indus. Int'l, Inc. v. Cyber2media, Inc. et al.*, No. 1:09-cv-01364-LO-TCB, which was filed in this Court on December 11, 2009 ("Goodwill litigation").

64.     In the Complaint in Goodwill litigation, Goodwill alleged that Cyber2Media is "in the business" of acquiring domain names that "capitalize on a consumers' landing on a website page by offering links to contextually-generated sponsored listing. . . . Rather than create a legitimate website at the Infringing Domain Name, Cyber2Media is attempting to monetize the domain name by 'parking' it at a [pay per click] website . . . ." ¶¶ 28-29.

65.     Goodwill asserted causes of action for federal trademark infringement, federal unfair competition, and anti-cybersquatting, amongst other causes of action.

66.     On information and belief, Negari settled the Goodwill litigation.

## COUNT I

**(Deceptive Advertising and Unfair Trade—Violation of the Lanham Act)**

67.     Verisign incorporates herein all factual allegations made above.

68.     The Lanham Act prohibits deceptive advertising and prohibits advertisers like XYZ from making any claim, in words or in substance, that contain express or implied falsehoods.

69.     As described above, XYZ and Negari have made false and/or misleading statements of fact in commercial advertising and promotion.

70.     XYZ and Negari have placed these false and/or misleading statements in interstate commerce.

71.     XYZ and Negari's deceptive promotional statements, as described above, have been widely disseminated in interstate commerce sufficiently to the relevant purchasing public so as to constitute commercial advertising under the Lanham Act.

72.     XYZ and Negari's false and/or misleading statements of fact have actually deceived a substantial segment of the audience exposed to it, or have the capacity for such deception.

73.     The deception caused by the false and/or misleading statements of fact, as described above, have, or are likely to, influence domain name registration purchasing decisions.

74.     Verisign is being injured as a result of XYZ and Negari's false and/or misleading statements of fact including because XYZ and Negari's statements undermine the equity and good will Verisign has developed in the .COM registry.

75.     XYZ and Negari's false and misleading promotional statements, as described above, have irreparably harmed and, if not enjoined, will continue to irreparably harm Verisign.

76.     The injuries to Verisign's reputation and good will cannot be measured by money damages and therefore Verisign lacks an adequate remedy at law.

77.     XYZ and Negari have been unjustly enriched at the expense of Verisign as a consequence of its false advertising.

78.     XYZ and Negari should be ordered to disgorge their profits and other ill-gotten gains received as a result of this deception on the consuming public.

79.     XYZ and Negari have acted willfully, recklessly, intentionally, and wantonly in intending to deceive domain name consumers.

80.     The foregoing acts of XYZ and Negari constitute false and/or misleading advertising and unfair trade in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Verisign seeks to enjoin such false and/or misleading advertising and recover money damages and the costs of this action.

81.     This is an exceptional case pursuant to the Lanham Act, 15 U.S.C. § 1117 entitling Verisign to recovery of its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Verisign prays:

A.      For judgment that XYZ and Negari have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B.      For injunctive relief requiring XYZ, Negari, their representatives and all those persons in active concert or participation with it from claiming, in words or substance, directly or by implication, that:

      i.      It is "impossible" to find the domain name that you want with .COM;

      ii.     All of the good .COM real estate is taken. The only thing that is left is something with a dash, or maybe three dashes and a couple of numbers in it;

      iii.    XYZ's metrics reflect registrations from bona fide registrants (without simultaneous disclosure of the amount of automatic registrations that XYZ generated through third parties);

          iv.     Third parties have stated that .XYZ is the "next .COM"; and

          v.     .XYZ is equivalent or superior to .COM.

C.     For an order directing that XYZ and Negari pay Plaintiff the full amount of money damages authorized by law.

D.     For an order directing that the aforesaid amounts be multiplied or otherwise enhanced as authorized by law.

E.     For an ordering requiring full payment of prejudgment interest.

F.     For an order requiring XYZ, Negari, and their representatives to recall and destroy all misleading and false advertising.

G.     For an order requiring XYZ and Negari to issue corrective advertising in a form approved by the Court to dispel the serious competitive impact and effect of the false representations previously described.

H.     For attorneys' fees and costs.

I.     For such other, further, or different relief as this Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: December 19, 2014

VENABLE LLP

By:

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
(703) 905-1449 (Telephone)
(703) 821-8949 (Facsimile)
rkmiller@venable.com
nmdepalma@venable.com

*Counsel to Plaintiff VeriSign, Inc.*