**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Verisign, Inc., <br><br> Plaintiff, <br><br> v. <br><br> XYZ.com, LLC and Daniel Negari, <br><br> Defendants. | Case No. 1:14-cv-01749 CMH-MSN |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

**I.   INTRODUCTION**

Despite devoting 29-pages to opposing XYZ's 14-page motion, Verisign's Opposition neglects to address the most important point raised by XYZ: Verisign never identifies any injury that it suffered. Instead, Verisign tries to misdirect the Court by analyzing an irrelevant holding from *Lexmark* about how businesses that don't compete can sue each other. Similarly, Verisign summarizes the outcome of several false-advertising cases but never addresses the key point that the statements in this case were not sufficiently disseminated to qualify as advertising under the Lanham Act. Finally, Verisign alleges new facts it didn't plead in its complaint to support an argument that actual domain-name registration numbers should be viewed as false. But Verisign never alleges that any consumer was misled by those numbers, or that a consumer learning those numbers would withhold business from Verisign.

Without alleging injury, Verisign has no standing. Without alleging the relevant market and that the statements reached a sufficient portion of it, the statements do not qualify as advertising under the Lanham Act. And without drawing a connection between "fake" registration numbers (that are actually truthful) and loss of business, Verisign cannot meet the materiality requirement in a false-advertising case. Because Verisign fails to state a claim, XYZ

1

respectfully requests that the Court grant its motion for judgment on the pleadings.

## II.     ARGUMENT

A.  **Verisign fails to explain how it suffered injury; and instead focuses on the fact that XYZ and itself are competitors, which is not in dispute and is insufficient to confer standing without injury.**

XYZ challenged Verisign's complaint because Verisign did not allege harm. Specifically, how did the alleged false statements impact Verisign? Rather than respond, Verisign devotes much of its opposition to a treatise on the perceived "liberalizing" effect of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Instead of simply pointing to facts in the complaint that the Court could find as supporting injury, Verisign cites law review articles and comments. But academia's perception of Supreme Court precedent, while interesting, is no substitute for binding legal authority or plausible factual allegations that Verisign suffered harm.

Under *Lexmark*, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391. And in meeting this requirement, Verisign must offer more than "naked assertions" and "unadorned conclusory allegations" of harm. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

In its motion, XYZ reprinted verbatim the only three paragraphs in Verisign's Complaint that allege harm, all of which rely on the type of conclusory language the Fourth Circuit rejected in *Giacomelli*. (*See* Dkt. 35 (the "Motion") at 3.) Verisign does not dispute XYZ's characterization of those paragraphs, does not identify any other allegations which would rise above "naked conclusions," and does not attempt to distinguish its pleading from *Giacomelli*. Instead, Verisign emphasizes again and again that it and XYZ are "direct competitors." This misses the point. XYZ does not dispute that a competitor has standing—provided that the competitor also suffers injury. Verisign being a competitor is insufficient. It must also allege injury, but it cannot do so.

Verisign directly challenges XYZ's reliance on Judge Lee's decision in *Belmora, LLC v.*

2

*Behr Consumer Care A.G.*, 1:14–cv–00847–GBL–JFA, 2015 WL 518571 (E.D. Va. Feb. 6, 2015), writing: "XYZ's citation to *Belmora* is *inexplicable*. *Belmora* is a trademark case (***not a false advertising case***)…" (Opposition at 12, emphasis supplied.) But the second paragraph of Judge Lee's ruling reads:

> There are six issues before the Court…The second issue is whether the Court should dismiss Count II of Bayer's Complaint, alleging that Belmora violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), ***which prohibits false advertising, because Bayer lacks standing to bring the statutory cause of action***.

*Belmora*, 2015 WL 518571 at *1 (emphasis supplied). In fact, Judge Lee cites to *Lexmark* in dismissing the false-advertising claim for failure to plead injury to commercial interests with sufficient specificity. *Id.* at *13.

This undercuts Verisign's position that *Belmora* is "irrelevant to this false advertising case." *Belmora* is the only reported[1] case within the Fourth Circuit to apply *Lexmark* to a false-advertising claim. Judge Lee's conclusion—rote allegations of harm to reputation are insufficient to state a claim for relief under the Lanham Act—applies here. By not sufficiently pleading injury to itself, Verisign has not established basic Article III standing.

**B.      The statements Verisign complains about are not commercial advertisements or promotions—not because of the media they appeared in but—because Verisign cannot plead they were sufficiently disseminated to the relevant purchasing public.**

   **1.      Verisign fails to address the *Fashion Boutique* test for defining a commercial advertisement or promotion because the facts it alleges cannot meet the standard.**

Verisign offers a plethora of citations providing there is no limit to the type of communications that *could* be considered commercial advertisements or promotions. XYZ never claimed otherwise. The issue is not the media in which the communications appeared. Rather, Verisign's claim fails because it does not allege facts supporting its naked conclusion that the communications here achieved the necessary "widespread dissemination within the relevant

---

[1] West Publishing confirms that *Belmora* has been selected for reporting in the Federal Supplement, Third Series.

industry." *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002).

Verisign offers no alternative to the *Fashion Boutique* test, does not apply it to the facts alleged in its complaint, and does not attempt to distinguish it. *Fashion Boutique* teaches that, "although the Lanham Act encompasses more than the traditional advertising campaign, [it] cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique*, 314 F.3d at 57-58 (holding that twenty-seven oral statements in a marketplace of thousands was not actionable under the Lanham Act).

Fourth Circuit courts have repeatedly adopted *Fashion Boutique* as the standard for evaluating whether a non-traditional advertisement—such as the statements as issue here—are actionable under the Lanham Act. In particular, the Eastern District of Virginia applies *Fashion Boutique*'s "widespread dissemination" test by comparing the number of people reached by the alleged false statements against the relevant purchasing public—the total number of potential customers in the market. *See e.g., Applied Med. Res. Corp.*, 527 F. Supp. at 493-94; *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004); *Cavalier Tel., LLC v. Verizon Va. Inc.*, 208 F. Supp. 2d 608, 617–18 (E.D. Va. 2002); *Reynolds* 2014 WL 794277, at *5. These cases require Verisign to identify the relevant purchasing public and allege facts supporting the conclusion that XYZ's statements were sufficiently disseminated within that market. But no such facts appear in the body of Verisign's complaint.

Verisign cannot allege that XYZ's statements were "disseminated sufficiently to the relevant purchasing public." Verisign claims to be "a global leader in domain names" and to have sold 30-million new .com domain registrations in 2013 alone. (Compl. ¶¶3(a), 10.) This is an admission that the relevant purchasing public is at least many tens of millions if not hundreds of millions. Given this enormous market, Verisign must allege facts to support its claim that the statements were widely disseminated.

Verisign attempts to duck its burden by citing to a powerpoint slide that reads "3.2M – unique visitors per month on www.gen.xyz". The solitary "3.2M" reference is not enough. On its face, the number refers to visitors to XYZ's entire website (www.gen.xyz). By contrast, the

4

"online statements" that Verisign complains of appear on individual pages within that website or on Mr. Negari's personal blog. And even if 3.2 million people saw the statement—which Verisign does not and cannot allege—that is insufficient to plead widespread dissemination. And to be clear, even if the Court were to grant leave to amend, Verisign will not be able to make these allegations in good faith.[2]

2. **Verisign cannot meet its pleading burden under *Fashion Boutique*, as illustrated by the dearth of facts in its complaint and decision to ignore *Fashion Boutique* in its opposition.**

The larger the relevant market is, the harder to show widespread dissemination. *See Tao*, 299 F.Supp. 2d at 573. *See e.g., Applied Med. Res. Corp.*, 527 F. Supp. at 493-94; *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004); *Cavalier Tel., LLC v. Verizon Va. Inc.*, 208 F. Supp. 2d 608, 617–18 (E.D. Va. 2002); *Reynolds* 2014 WL 794277, at *5. Verisign seizes on the results of some of these cases without acknowledging the analysis. The Court should not look at the outcome of a case, but rather the holding and rationale.

For example, Verisign claims that *Tao* "favors Verisign" because the court denied a motion dismiss. But *Tao* arose in the context of a particularly micro-sized market—the parties there were competing for contracts with NASA, which meant the "relevant purchasing public" was that single government agency. 299 F.Supp.2d 569-70. Verisign ignores *Tao*'s observation that when the "relevant market is large and…the alleged contacts are comparatively trivial, dismissal for failure to state a claim is appropriate." In this case, the relevant market is large. So according to Tao, "dismissal for failure to state a claim is appropriate."

In *Applied Med. Res. Corp.*, the court dismissed a false-advertising claim where the plaintiff

---

[2] The very same "Google Analytics" tools that Verisign claims make the level of dissemination "precisely knowable" (Opposition at 19-20, n.10) confirm that the blog posts in question were typically seen by a few hundred—and, in the most popular blog post's case, a few thousand—unique visitors. If the Court grants Verisign's request for leave to amend, XYZ will provide Verisign with this confidential data. And if Verisign thereafter insists on amending (rather than dismissing) its complaint, XYZ will seek attorneys' fees and costs under the Lanham Act's exceptional-case provision.

bragged that it sold its products "within the jurisdiction of this Court, in the Commonwealth of Virginia, throughout the nation, and in countries around the world." *Applied Med. Res. Corp.* 527 F. Supp. 2d 489, 493 (internal quotations and citations omitted). Accordingly, the court concluded "the relevant market for Plaintiff's [goods] is at least nationwide, if not worldwide." *Id.* And viewed in that context, the defendant's "isolated comments" during a narrow time frame were comparatively insignificant. *Id.* at 593-94. Similarly, the statements Verisign complains of here—everything from the promotional video to NPR's interview with Negari to the online statements and blog posts—are comparatively insignificant in the context of the worldwide market of domain-name registrations.

This case is also like *Cavalier Tel.* There, the plaintiff's false-advertising claim failed because the "relevant purchasing public" contained several million consumers and the pleadings did not specify the number reached by the alleged misrepresentations. *See Cavalier Tel.*, 208 F. Supp. 2d at 617-18. On a motion to dismiss, the Eastern District of Virginia concluded that the allegations "remain far too vague to meet the particularity requirement." *Id.* Verisign's pleadings share this defect.

Finally, Verisign's reliance on out-of-circuit cases featuring "a single letter", or a sales presentation to "eleven bottlers", or a "press release" is misplaced for similar reasons. In each of these cases, the relevant market was small, which meant the threshold for "wide dissemination" was also small. For example, in Verisign's "single letter" case the court found that "the true relevant purchasing public consisted solely of [the letter's recipient]". *Mobius Mgmt. Sys. v. Fourth Dimension Software*, 880 F. Supp. 1005, 1020-21 (S.D.N.Y. 1994). Similarly, in the "eleven bottlers" case, the total market was seventy-four bottlers—meaning the statements at issue there reached nearly 15% of the market. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996). And Verisign's citation to the "press release" case is particularly troubling since the defendants in that case did not dispute that the press release was widely disseminated—meaning the issue was not contested and the court did not evaluate it. *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, No. SA-12-CV-282-FB, 2013 WL 652420, at *3 (W.D. Tex.

Feb. 15, 2013).

    **3.    Verisign concedes that Negari's statement to NPR in the context of a bona fide news interview is not directly actionable under the Lanham Act, and Verisign's "republication" argument does not alter this result.**

Verisign does not rebut the argument that Negari's statements to National Public Radio in the context of a bona fide news interview are not actionable. Instead, Verisign sidesteps the issue by arguing that "XYZ's republication and outright promotion of the NPR story…is fatal to XYZ's argument." But the cases it cites are distinguishable.

Verisign cites an unreported Central District of California case stemming from an article published in the Los Angeles Business Journal ("LABJ") about potential tariffs on the import of non-US hangers. *United Fabricare Supply, Inc. v. 3Hanger Supply Co., Inc.* No. CV 12-03755-MWF FFMX, 2012 WL 2449916, at *1 (C.D. Cal. June 27, 2012). The defendant, a dry-cleaning supply company, reprinted portions of the article in a pamphlet and included a discussion of the increased cost of supplies. (*Id.* at *1, *5.) The defendants specifically altered the article in its pamphlet to include "excerpts from different portions of the LABJ article, combined together without correct attribution, and in some instances added [the plaintiff's] name in bold print to sentences in which [the plaintiff] had not been mentioned in the original text." (*Id.* at *1) The pamphlet then stated that the defendant was "doing everything we can to bring some relief back to this situation." (*Id.* at *5) Unlike XYZ, the defendants specifically manipulated the article to target their competitor and damage that competitor's reputation and business. As a result, the court found that "taking the LABJ Article, the excerpts and the [] pamphlet 'in their full context,' [the defendants'] statements are actionable." (*Id.* at *4.)

Verisign has not and cannot allege that XYZ's citation to the NPR piece is comparable. XYZ did not publish misleading excerpts but rather "implores the website visitors to 'be sure to check out the whole story,' and helpfully provides a link to the full NPR interview." (Opposition at 16.) Taken "in their full context," XYZ's statements at issue here are not comparable to those in *United Fabricare*.

7

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics* also doesn't apply. There, the plaintiff alleged the defendant violated the Lanham Act by publishing a survey of scientific journals using a misleading rating system that the defendants themselves created. 859 F. Supp. 1521, 1523 (S.D.N.Y. 1994). On the defendant's motion to dismiss, the court held that the initial publication of the defendant's survey was not actionable, but that the distribution of the articles were used as "promotional materials cloaked in the deceptive guise of 'neutral' academic inquiry." *Id*. at 1523, 1544. By contrast, the statement here— "All the good real estate is taken. The only thing that's left is something with a dash or maybe three dashes and a couple numbers in it"—is Negari's unvarnished opinion. It was never held out to be a scientific study. *Gordon & Breach Sci* is inapposite.

Verisign's reliance on *Lee v. Dong-A Ilbo* is confusing because that case does not touch on false advertising. *Lee* is a libel case applying the republication rule (developed specifically for use in the defamation context) to the question of whether the official-report privilege applies to reports based on the acts of foreign governments. *Lee v. Dong-A Ilbo,* 849 F.2d 876, 877-78 (4th Cir. 1988). Neither the facts nor law in *Lee* apply here.

C.     **Verisign cannot identify a single advertisement that meets each of the Lanham Act's elements.**

Since each XYZ statement in isolation is insufficient to violate the Lanham Act, Verisign argues that statements must be viewed cumulatively and that the Court can mix and match different parts of each statement in order to meet each required element. But the Court must review each statement (as a whole) to see if it is capable of supporting a Lanham Act claim. *See e.g. Millennium Labs., Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 603 (D. Md. 2013) (individual advertisements are reviewed separately to see if each meets each element of a Lanham Act claim; if an individual advertisement is missing even one element, it is not actionable); *Pandora Jewelry, LLC v. Chamilia, LLC*, No. CIV. CCB-06-3041, 2008 WL 4533902, at *4 (D. Md. Sept. 30, 2008)(evaluating separate communications independently to determine if each met every element of a Lanham Act claim).

For example, in *Millenium Labs*, the court considered a series of ads that were each part of a laboratory's advertising campaign—much like the "campaign" Verisign alleges XYZ engaged in here. The court held that the jury's duty was to render an "advisory verdict on the literal falsity of *each* of the four ads," and determined as a matter of law that some ads were false while others were true and therefore not actionable. *Id.* at 603-04 (emphasis added).

Similarly, in *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010), the Ninth Circuit dismissed Lanham Act claims after evaluating each statement independently and concluding that "[n]one of the statements at issue here satisfies all the necessary elements." *Id.*

Verisign asks the Court to disregard this common-sense approach in favor of allowing it to aggregate the separate statements together, even though its own authority does not support this extraordinary proposition. Verisign relies heavily on *Trident Products & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, No. 3:10CV877-HEH, 2011 WL 2938483, at *4 (E.D. Va. July 19, 2011). But in *Trident*, the court evaluated a series of statements that were part of a single advertisement. XYZ isn't asking the Court to ignore statements that were made together in a single advertisement—it is asking the Court to independently evaluate statements that were made at separate times and in separate forums.

Similarly, in *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002), the Fourth Circuit carefully considered a single advertisement—the packaging for a bag of herbicide—in its entirety. *See Scotts* at 270-71. More recently, in *PBM*, 639 F.3d 111, the Fourth Circuit again analyzed a single advertisement—a mailer comparing different types of baby formula. 639 F.3d at 116-17. In both these cases, the Fourth Circuit correctly observed that each of these single advertisements needed to be analyzed in their entirety because that is how consumers would see them. But no portion of either opinion supports Verisign's position that the Court here should take various aspects of several single statements—which were presented in a stand-alone video, a stand-alone interview, and several stand-alone online postings—and combine them into one mega-advertisement that has never been seen by a single consumer in any context.

Verisign's reliance on *R.H. Donnelley Corp. v. Illinois Bell Tel. Co.*, 595 F. Supp. 1202, 1206 (N.D. Ill. 1984) is misplaced. In *R.H. Donnelley,* the court held that it could consider the consumer impact of the same false message being repeatedly displayed. Unlike *R.H. Donnelley*, Verisign argues that the court should combine completely unrelated messages to find the elements of a Lanham Act claim. Likewise, *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 514 F. Supp. 704, 710 (S.D. Ohio 1981) aff'd in part, rev'd in part, 670 F.2d 642 (6th Cir. 1982) does not aid Verisign. *Frisch* holds only that the court can consider the impact of prior advertising on consumer confusion—not that it can draw Lanham Act elements from disparate messages to create an actionable whole.

Finally, *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, (S.D.N.Y. 2008), is irrelevant because the court did not consider the substantive issue. The plaintiff failed to meet its burden of demonstrating a likelihood of irreparable harm on a preliminary-injunction motion, so the court denied the motion without assessing a likelihood of success on the merits. 574 F. Supp.2d at 356. And *W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, No. 11-CV-3473 CBM MANX, 2011 WL 11741501, (C.D. Cal. Oct. 21, 2011) is similarly unavailing. The *W. Sugar* court found only that resolution of the factual question of whether a claim that a particular compound was sugar is false was inappropriate at the pleading stage. While the court then went on to comment in dicta that the entire course of advertising should be considered, it did not hold that a plaintiff could mix-and-match elements from different advertisements.

Verisign's reliance on dicta from out-of-circuit (and even unreported) district court cases underscores how remarkably novel (and unsupported) its position on this issue is.

### D.     Puffery may—and in this case *should*—be decided as a matter of law.

Verisign argues that the court cannot determine as a matter of law whether a given statement is an actionable statement of fact or a non-actionable statement of puffery or opinion. But the Court applies the same Rule 12 standard to a claim of puffery as it does any other factual assertion: if no relief could be granted under any set of facts as pleaded, the claim fails. *Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d 431, 436 (M.D.N.C. 2002). As a matter

of law, only statements that are capable of being shown true or false in a way that admits of empirical verification are actionable. *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, No. GJH-14-2827, 2014 WL 7336691, at *20 (D. Md. Dec. 19, 2014). Thus, as a matter of law, Verisign's false-advertising claim fails for any statement that is opinion or puffery on its face.

Verisign does not argue that statements like: "All the good real estate is taken. The only thing that's left is something with a dash or maybe three dashes and a couple numbers in it"[3] are anything but opinion and puffery. Verisign also offers up the general argument that *sometimes* puffery cannot be established at the pleading stages. (*See* Opposition at 24.) But Verisign offers no argument as to why discovery is necessary to determine that statements like "It seems I aimed too low in my ambitions of .com, .net, .xyz, as it has now become .com, .xyz., .org!"—or even ".XYZ is the Next .COM—BELIEVE IT!"—are anything other than hyperbolic opinions.

Similarly, Verisign's argument that XYZ's video featuring two cars is actionable because it "visually communicates a comparative superiority claim" is not supported by law. Statements of superiority are quintessential opinion and non-actionable. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498–99 (5th Cir. 2000), *cert. denied*, 532 U.S. 920. If Verisign's position were correct, no business could ever state its opinion that it was superior to a competitor without violating federal law.

Citing *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 39 (1st Cir. 2000), Verisign claims that XYZ's puffing that it is "impossible to find the domain name you want" on the .com registry is actionable. But in *Clorox Co.*, a bleach advertiser claimed that it was not possible to get clothes whiter supported by studies and in comparison to a competitor's

---

[3] Verisign requests the Court take judicial notice of Verisign's contest for "best new .COM" domain names. (Opposition at 4-5, n.2.) If the Court takes judicial notice of that, it should also take judicial notice of Verisign's hyperlinked text "See tips for selecting a great domain name" (last visited May 7, 2015). That link leads to Verisign's presentation urging consumers to "BE MEMORABLE WITH A LONGER DOMAIN NAME" and reminds them that "hyphens can open up a world of possibilities." This seems to accord with Negari's opinion about the general paucity of "good real estate" on the .COM registry. "Hyphens can open up a world of possibilities" is a marketer's way of presenting "all that's left is dashes."

11

whitening product—which is a quintessentially objective claim. Here, XYZ's statement is inherently subjective because "impossible" is modified by "you want". This makes it non-actionable puffing because it is hyperbole rather than a statement of fact: no reasonable listener would believe it literally true, because XYZ cannot possibly know what domain name any particular person wants. *See Prof'l Sound Servs., Inc. v. Guzzi,* No. 02 CIV. 8428(DC), 2003 WL 22097500, at *2 (S.D.N.Y. Sept. 10, 2003) *aff'd,* 159 F. App'x 270 (2d Cir. 2005) (holding that statement that "Rich doesn't know anything about sound" was inactionable hyperbole, even though it communicated an underlying fact.)

**E.     The visual images in the "two cars" video do not convey statements of fact because they are inherently metaphorical.**

In reviewing the two-cars video, Verisign argues visual images can communicate facts that "can be actionable under the Lanham Act." XYZ never claimed otherwise. Rather, visual images communicating only *non-factual* information cannot violate the Lanham Act. *S.C. Johnson*, 241 F.3d at 238 (visual images in a commercial part were part of a literal falsity assessment). In every case Verisign cites, the visual images featured the actual products being compared or advertised and each advertisement communicated facts. Those facts are distinguished from XYZ's tongue-in-cheek video.

In *S.C. Johnson & Son*, two brands of self-sealing plastic bags appeared on screen, where the competitor's bag was shown to leak water. This comparison is direct and factual; it was possible to measure the rate of leakage from each type of plastic bag and the parties performed such a study. Moreover, the visual comparison featured *the actual product*, completely unlike XYZ's metaphorical video. The *McNeil-PPC, Inc.* case also featured images (albeit stylized) of the *actual products* being compared. *See McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 226, 242 (S.D.N.Y. 2005) (holding stylized image of blue Listerine liquid flowing between teeth, followed by a strand of floss, created false impression—along with spoken words—that Listerine is equal to floss). Verisign's final case involved a television commercial where a celebrity squeezed juice from an orange directly into a container. The court held that these images impliedly

misrepresented that the advertiser's orange juice was fresh-squeezed, rather than pasteurized. *See Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 318 (2d Cir. 1982). A consumer seeing pure orange juice would believe the advertised orange juice is pure.

Here, there's nothing communicated about domain names in an Audi sports car and old Honda. The visual juxtaposition between the Honda and Audi communicates only subjective measures of value constituting an opinion. *See Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) (statements at issue must be "specific and measurable…capable of being proved false or of being reasonably interpreted as a statement of objective fact."). No reasonable person could interpret XYZ's video as a statement of objective fact because the message communicates only XYZ's opinion of itself as a hot new sports car. *See, e.g., C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (comparative superiority claims must be facts capable of being disproven).

XYZ's video makes no factual claims, and Verisign's visual "comparative superiority" theory fails as a matter of law.

F.  **Verisign does not—and could not—plead that XYZ's registration figures are literally false, and Verisign's conclusory allegation of "implied falsity" is not supported by the pleadings.**

   1.  **Verisign's Complaint does not allege the registration number statements are literally false, and fails to support the claim that they are false by implication.**

Verisign argues that whether XYZ's registration numbers are literally true is "nothing more than…a factual dispute for the jury." But Verisign's own Complaint does not allege that XYZ's registration numbers are literally false. (*See* Compl. ¶¶44-57.) To the extent Verisign now claims the numbers are literally false, it must do so in an amended complaint where it offers accompanying factual allegations rather than "naked assertions. *Giacomelli*, 588 F.3d at 193..

Similarly, Verisign's claim that the registration numbers are false by implication requires Verisign to plead underlying facts about how those statements are viewed by the public. *See Scotts Co.*, 315 F.3d at 273 ("If a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate…that the challenged [representations] tend to mislead or

13

confuse consumers."). Verisign's Complaint makes no claim that consumers were misled or confused by XYZ's reporting of its registration numbers. Rather, Verisign simply "nakedly asserts" with "unadorned conclusory allegations" that XYZ's representations "are misleading" without identifying who would be misled. Complaint, ¶ 55.

The Complaint fails to allege that the registration numbers deceived—or were likely to deceive—any consumers about whether XYZ's registrations were *paid* registrations. Nor does Verisign allege that this matters to consumers in the first place. The number of registrations is important to XYZ, but not material to whether a consumer purchases a .COM. Finally, Verisign does not—and could not truthfully—allege that removing the "fake" registrations from XYZ's totals would change XYZ's status as the "number one new gTLD in the marketplace."

> **2. Amendment to allege registration-number falsity would be futile because the registration numbers were not widely disseminated, and they didn't harm Verisign.**

Even if Verisign could amend its pleadings to adequately allege literal falsity and implied falsity, Verisign would still fail to state a claim because the registration numbers come from posts on Negari's personal blog. (Compl. ¶¶53(a)-(e).) Given that the relevant purchasing public in this case is tens of millions (and perhaps hundreds of millions), such miniscule distribution does not satisfy the "widely disseminated" requirement to become actionable under the Lanham Act.

Moreover, Verisign cannot trace any harm to its reputation or sales from the statements. Verisign is the undisputed market leader among domain registrations. (Compl. ¶¶ 10-11.) XYZ is a brand new entrant. (*Id.* ¶13.) If Verisign believes that a consumer would be impressed enough to purchase a domain name because XYZ claimed 447,544 registrations, then, logically, that same consumer would be exponentially more impressed with Verisign's claim to 116,000,000-plus registrations. Verisign wouldn't lose the consumer's business from XYZ publishing its registration numbers. Thus, Verisign would have not standing even if it amends to allege the new facts it raises in its opposition.

**G.    The Court should ignore Verisign's unsupported arguments about timing and a discovery dispute.**

Versign complains that XYZ "belatedly" challenges the legal sufficiency of the Complaint. But Rule 12(c) expressly permits a party to seek judgment on the pleadings: "After the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. Rule 12(c). Here, the pleadings are closed and this motion will be resolved well before trial. (*See* Dkt. No. 24 setting final pretrial conference for August 20, 2015.)

Verisign's dig that "XYZ has failed to respond to discovery" is irrelevant, inaccurate, and misleading. First, a motion for judgment on the pleadings assumes the truth of every well-pleaded, plausible allegation within the Complaint. This makes the parties' progress in discovery irrelevant to deciding the matter. Second, Verisign's claim is simply not true: XYZ has provided substantive responses to Verisign's interrogatories and has sunk countless hours identifying, collecting and reviewing tens of thousands of pages of documents that will be produced as soon as an appropriate protective order is in place. Third, Verisign fails to inform the Court that it created this lag in discovery by engaging in several weeks of negotiations over an agreed protective order only to object to its own proposed language at the eleventh hour and without explanation. (*See* Dkt. 39 (XYZ's Motion for Protective Order) and Dkts. 42 and 44 (related declarations).

## III.    CONCLUSION

In its 29-page brief, Verisign doesn't contest much. Instead, it offers a treatise about how *Lexmark* now allows noncompeting businesses to sue under the Lanham Act. But Verisign misses the point that even direct competitors still must allege injury, and Verisign never identifies any injury. For that reason, the Court should dismiss this case for lack of standing.

Verisign also includes citation to many irrelevant and distinguishable cases, but never addresses the only precedent that matters—*Fashion Boutique*. And under *Fashion Boutique* none of the statements at issue were sufficiently disseminated to the relevant purchasing public. Finally, Verisign submits new facts to support its argument about how truthful registration

numbers should be viewed as false. But Verisign did not allege these facts its complaint. Nor did Verisign claim in its opposition that the registration numbers misled any consumer, or explain why any consumer would rely on registration numbers in deciding whether to purchase from XYZ or Verisign.

Verisign's brief is long on rhetoric but short on applying law and factual allegations that matter. XYZ respectfully requests that the Court grant XYZ's motion for judgment on the pleadings, and dismiss this case without leave to amend.

Dated May 7, 2015.

/s/ Timothy J. Battle
Timothy J. Battle (VSB# 18538)
Timothy J. Battle Law Offices
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net

Derek A. Newman (admitted *pro hac vice*)
Jason B. Sykes (admitted *pro hac vice*)
Derek Linke (*pro hac vice* application pending)
Newman Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
(206) 274-2800 Tel
(206) 274-2801 Fax
*Counsel for XYZ.com LLC and Daniel Negari*

**CERTIFICATE OF SERVICE**

I certify that on May 7, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NED) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Kevin We. Weigand
Taylor S. Chapman
VENABLE LLP
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182

/s/ Timothy J. Battle
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for XYZ.com and Daniel Negari*