IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Verisign, Inc., <br><br> Plaintiff, <br><br> v. <br><br> XYZ.com, LLC and Daniel Negari, <br><br> Defendants. | Civil Action No. 1:14-cv-01749 CMH-MSN |

**DECLARATION OF DEREK LINKE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR ENTRY OF A PROTECTIVE ORDER**

I, Derek Linke, hereby declare:

1. I am counsel for defendants XYZ.com LLC and Daniel Negari (together, "XYZ"), over the age of 18, and competent to testify in this action.

2. XYZ began searching for responsive documents in response to Verisign's broad requests shortly after Verisign served them on the first day of discovery in this case.

3. Because of the extensive scope of Verisign's requests, XYZ experienced difficulties conducting such a search for responsive documents in-house and hired an outside vendor to assist. By April 28 the vendor's search had identified tens of thousands of potentially responsive documents. I communicated this information in an April 28, 2015 email to Verisign's counsel requesting a two-week extension to produce those responses. A true and correct copy of this email is attached hereto as Exhibit A. In that email I also confirmed that XYZ planned to respond to Verisign's interrogatories by the original deadline.

4. On April 3, 2015 Verisign's counsel provided an initial draft protective order that contained a provision for outside-counsel's-eyes-only handling for especially sensitive materials. Over the next two weeks, I engaged in numerous emails and telephone calls with Verisign's

1

counsel as we negotiated various terms in the draft protective order Verisign initially provided. We exchanged several revisions of that draft order. At no time during those negotiations did Verisign's counsel ever suggest removing the outside-counsels'-eyes-only higher tier of protection.

5. During my April 21-23 discussions with Verisign's counsel regarding the draft protective order, Verisign's counsel claimed that certain Verisign personnel—including Verisign's entire board of directors, nine members of its senior management, the entire legal department, and others—all needed access to XYZ's discovery responses to assist outside counsel with analysis.

6. As part of these discussions, I informed Verisign's counsel that the parties' status as competitors meant that commercially sensitive information should be preserved and not shared with each sides' competitive decision-makers.

7. Verisign disagreed, presenting a "compromise" that would allow Verisign's board of directors, senior management team, entire legal department, and three additional non-marketing employees to access XYZ's most sensitive information. A true and correct copy of the email I received from Verisign's counsel indicating their position is attached hereto as Exhibit B.

8. I responded with an email pointing out the substantive flaws in Verisign's reasoning. A true and correct copy of that April 24, 2015 email is attached hereto as Exhibit C.

9. Verisign's counsel never substantively responded to the arguments raised in my April 24, 2015 email, concluding that the parties will simply "agree to disagree" in an April 27, 2015 email. A true and correct copy of Verisign's April 27 email is attached hereto as Exhibit D.

10. Verisign's counsel refused XYZ's request for a two-week extension in an email dated April 29, 2015. A true and correct copy of this email is attached hereto as Exhibit E.

11. I noted that a modest extension should be acceptable because of Verisign's quick service of its discovery requests and the lack of danger that a two-week extension would affect discovery. A true and correct copy of my email is attached hereto as Exhibit F.

12. On April 30 and May 1, Verisign's counsel and I conferred at length about

numerous discovery issues. I provided detailed information to Verisign concerning the status of XYZ's document search, the difficulties created by Verisign's sweeping document requests, and the tens of thousands of documents identified by XYZ's vendor. I assured Verisign's counsel that XYZ would continue its diligent efforts in locating and producing responsive documents.

13. I also told Verisign that though XYZ would produce nonconfidential documents as they became ready, XYZ would produce no confidential materials until a protective order was in place.

14. Verisign's counsel stated on April 30, the day XYZ's discovery responses were due, that Verisign would file multiple discovery motions on May 1, including a motion to compel document production, a motion to compel interrogatory answers, and a motion for protective order.

15. XYZ followed through as promised and served its answers to Verisign's interrogatories on April 30, 2015.

16. On May 1, upon resumption of discussions, Verisign's counsel noted that Verisign could no longer move to compel answers to interrogatories because XYZ had answered them. But Verisign could, and would, file a motion to compel document production based on XYZ's objections despite XYZ's counsel noting that no actual dispute existed involving XYZ's objections.

17. During the May 1 phone conference, Verisign's counsel and I spent hours discussing XYZ's objections to Verisign's document requests and largely determined that there were no disputes about the meaning or scope of the requests, much to Verisign's counsel's disappointment. Verisign's counsel also confirmed that it did not intend to confer about XYZ's objections for confidentiality, because no protective order had been entered, or which asserted a privilege.

18. Despite the hours of discussion, Verisign's counsel and I were unable to resolve *every* disagreement about XYZ's objections to Verisign's most intrusive and burdensome requests. Specifically, Verisign continued to insist that certain of Verisign's most burdensome

3

and intrusive requests were relevant despite no apparent connection to Verisign's false advertising claim. For example, Verisign's counsel speculated that its requests for information about XYZ investors and owners and its requests for "all" of XYZ's agreements with certain third parties could *possibly* lead to information about the XYZ promotion described in Verisign's complaint.

19. I noted that numerous other Verisign requests specifically called for materials pertaining to the "XYZ Promotion," and therefore Verisign would be entitled to any documents involving XYZ owners and investors and agreements with third parties relating to the XYZ promotion. Verisign's counsel replied that Verisign nonetheless wanted information on XYZ's owners and investors and all agreements with the specified third parties to ensure Verisign had complete discovery relating to the "XYZ Promotion" described in the Complaint. When pressed about the relevance of XYZ's agreements with third parties, Verisign's counsel stated that Verisign required those agreements for its damages case because they could serve as a "baseline" for comparison with the alleged misconduct in the complaint. (*Id.*)

20. At the conclusion of our lengthy discussion about Verisign's requests for production to XYZ and Negari and the objections to both, I confirmed to Verisign's counsel that no specific documents had yet been identified during the document review which would be withheld on the basis of those few unresolved objections (other than objections as to confidentiality, pending entry of a protective order, or based on assertion of a privilege, which were not the subject of the parties' extensive meet and confer discussions). I stated that should such a document be identified during XYZ's discovery review, XYZ would advise Verisign that it intended to withhold it based on one of the remaining objections so the parties could address it at that time.

21. Verisign's counsel stated that Verisign would file a motion to compel nonetheless, so that in case a dispute arose later, the issue would "already be before the Court." (*Id.* ¶ 21.) He further noted that Verisign would simply "supplement" its motion papers as needed. (*Id.*)

22. As promised, XYZ has produced to Verisign all of the non-confidential

4

responsive documents identified thus far during discovery.

23. Since Verisign filed its motion, it has served numerous subpoenas to third parties with whom XYZ has done business, seeking a vast range of information with no clear connection to its false advertising claims against XYZ.

I certify and declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed May 14, 2015 at Seattle, Washington.

_____
Derek Linke

## CERTIFICATE OF SERVICE

I certify that on May 14, 2015, I electrically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NED) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Venable LLP (Vienna)
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
nicholas.depalma@venable.com
rkmiller@venable.com

_____
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for XYZ.com LLC and Daniel Negari*