1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
VERISIGN, INC.,                :
             Plaintiff,        :
                               :
     vs.                       : Case No. 1:14-cv-1749
                               :
                               :
XYZ.COM, LLC, et al.,          :
             Defendants.       :
                               :
-------------------------------:
```

HEARING ON MOTIONS

May 15, 2015

Before:  Michael S. Nachmanoff, Mag. Judge

<u>APPEARANCES</u>:

Randal K. Miller and Nicholas M. DePalma,
Counsel for the Plaintiff

Derek A. Newman and Timothy J. Battle,
Counsel for the Defendants

1          NOTE:  The case is called to be heard at 10:00 a.m.

2   as follows:

3          THE CLERK:  VeriSign, Incorporated versus XYZ.com,

4   LLC, et al., case number 14-cv-1749.

5          THE COURT:  Good morning.

6          MR. MILLER:  Good morning, Your Honor.  My name is

7   Randy Miller for plaintiff from the law firm of Venable.  I am

8   here with my colleague, Nicholas DePalma.

9          Also with me is the general counsel of VeriSign, Tom

10  Indelicarto.  And James Hubler, who is in charge of litigation

11  for VeriSign.

12         THE COURT:  Good morning.

13         MR. BATTLE:  Your Honor, Timothy Battle, local

14  counsel for the defendants, XYZ.com and Daniel Negari.  With me

15  is Mr. Derek Newman of the Newman Du Wors law firm, who has

16  been admitted pro hac vice for this case and will be handling

17  this argument.

18         THE COURT:  Good morning.  Good morning.

19         MR. MILLER:  Your Honor, if I might suggest.  There

20  are two matters before you today.  There is a motion to compel

21  production and then there is dueling requests for -- the

22  defendants want a two-tiered protective order, and we want a

23  single-tier protective order.  So there are those two issues.

24         If it makes sense, I could just take those two at the

25  same time and start with the motion to compel.

3

1          THE COURT:  Yes, I would like to start with the

2    motion to compel, although I do think they're intertwined, the

3    two matters.  And so, we'll deal with them as they stand.

4          Maybe you can tell me exactly where things stand with

5    regard to the original motion and what has been produced and

6    what the plaintiff seeks now at this point on the motion to

7    compel.

8          MR. MILLER:  Okay.  Well, the problem, Your Honor,

9    the reason why we're here on the motion to compel is that this

10   is what has been produced by the defendant.

11         This case has been pending for five months.  The case

12   started with a demand letter back in April of last year.  So

13   there has been more than a year of notice about this and the

14   case pending for five months.

15         The problem that we're now facing is that in the next

16   couple weeks we have to start depositions.  We have expert

17   reports due on June 19.  So there is a concern that we have

18   that we need to get the documents as soon as possible.

19         The objections that we received to requests for

20   production of documents were the type of, you know, boilerplate

21   general objections that we think should be stricken, with the

22   exception of those asserting privilege under work product and

23   attorney/client privilege.

24         So with the exception of the privilege, we think that

25   they should be stricken because if you look at the objections,

4

1    there is just the kind of -- pasted in here the same type of

2    general burden, trade secret type objections for almost every

3    one of these requests.  There is 24 requests, and it's the same

4    objection for almost all of them.

5            THE COURT:  Well, let me stop you.  And I'm familiar,

6    I've looked at the attachments and the pleadings.  And the

7    plaintiff is absolutely correct, and I know Mr. Battle is very

8    familiar with the practice in this court, that general

9    objections are not accepted here, and that it is expected that

10   responses to discovery will be produced.  And that if there are

11   specific objections, they will be lodged and there will be a

12   discussion amongst the parties to try and narrow in a

13   reasonable manner any differences of opinion.

14           And certainly if the defendant or any party is going

15   to stand on privilege or work product, they will produce a

16   privilege log and those issues will get hashed out in an

17   appropriate and efficient way.

18           So I understand the plaintiff's concern there.  What

19   I am trying to focus on is what it is exactly that you have not

20   received that you think you are entitled to.  And I see that

21   you mentioned in your pleadings that what you had received was

22   474 pages in total.  And I guess there were three specific

23   areas that you listed.  One had to do with documents related to

24   the Media2.  The other was Xin.  And the third had to do with

25   the ownership and investors of XYZ.com.

1          Is that still the specific outstanding areas that you

2    need to get resolved today?

3          MR. MILLER:  Well, I think that those are the three

4    major buckets of our discovery requests.  What this production

5    that we've received is, there is not a single piece of paper in

6    here that we didn't already have.  It's the complaint, it's the

7    complaint exhibits, it's other public documents.  And so, so

8    far we've received nothing.

9          We think because of the general objections, that all

10   of the objections should be stricken and that the Court should

11   enter an order that there be full and unevasive responses to

12   document requests as soon as possible.

13         And I will just point out one request, for example,

14   asked, request number 3 asks for one copy of each of the

15   advertising statements that the defendant has used.  And the

16   objection there was that it's overbroad, it's burdensome, it's

17   confidential and proprietary.

18         So this is the kind of objection that makes me worry,

19   we'll get to the protective order I'm sure, but it makes me

20   worry about what this proprietary and trade secret type

21   designation is going to be used for when we asked for one copy

22   of all advertising that you have used.  That would be just one

23   copy of each thing that went to the public.  So it couldn't

24   possibly be either burdensome or a trade secret.

25         So it's for that reason I really don't think that

1    we've narrowed the requests for production at issue today.  We

2    would like the Court to enter an order that the defendant

3    produce documents as soon as possible on a rolling basis and

4    certainly have it completed by next Wednesday so that if there

5    is a problem, we can come back here with a motion next Friday.

6         THE COURT:  Thank you.  Let me hear from Mr. Newman.

7         And let me ask you, Mr. Newman, I've read the

8    pleadings, and on page 11 of your opposition you seem to

9    suggest that there really isn't a dispute.  And so, I want to

10   try and figure out exactly what the parties are arguing about.

11        So what is it that has been produced?  What is it

12   that is ready to be produced?  And why has it not been

13   produced?  And then how does that relate potentially to the

14   protective order that has to be resolved today?

15        MR. NEWMAN:  Thank you, Your Honor, for focusing the

16   question.

17        XYZ and Mr. Negari have not declined to produce any

18   documents in response to the discovery requests.  The 500

19   documents that VeriSign refers to are public documents, he is

20   correct about that.  When VeriSign asked for one copy of each

21   advertising statement, XYZ provided it.  They received it.

22   They've received every document that is public.

23        Now, Your Honor, the discovery requests are broad.

24   They essentially cover almost every business record our client

25   has, business plans, marketing plans, internal presentations

1    about strategy, customer surveys, customer feedback.  And, Your

2    Honor, XYZ has done a diligent search.  How diligent?  XYZ

3    provided documents to an ESI vendor who uncovered 170,000

4    potential responsive documents that were then culled down over

5    a period of weeks.  We now have 24,000 potentially responsive

6    documents that we're actively reviewing and intend to produce

7    provided that there is a protective order that protects XYZ

8    against VeriSign stealing its trade secrets, business plans,

9    marketing plans, contracts with its most priced business

10   partners.

11          And there isn't a discovery dispute.  We were

12   surprised when VeriSign contacted us the day before the

13   earliest time it could file its motion and indicated there was

14   a dispute.  There was I think a four-hour call between my

15   colleague and VeriSign's counsel.  And during that four-hour

16   call I understand, I wasn't on it, but I understand in the end

17   there was nothing in dispute.  And then there was this motion

18   to compel.

19          I looked at the motion to compel and trying to figure

20   out what it is that VeriSign wishes to compel because

21   notwithstanding the broad objections due to an

22   out-of-town-lawyer not familiar with conventions, XYZ doesn't

23   intend to withhold documents provided that it's only given to

24   lawyers and not to VeriSign who could use it in competition

25   against XYZ.

1        THE COURT:  Okay.

2        MR. MILLER:  May I just make one point?

3        THE COURT:  Let me just take this one step at a time

4   and make sure that I'm understanding, Mr. Newman, and what you

5   have said.  And I appreciate that.

6        And setting aside the timing of matters, and I am

7   sure as Mr. Battle has explained to you, this court is unusual

8   and works at a speed that is somewhat different than other

9   courts around the country.

10        MR. NEWMAN:  And so shall we.

11        THE COURT:  Indeed.  And that, you know, we have

12   discovery cutoffs and final pretrial conferences that rarely,

13   if ever, get moved.  And so, it is incumbent on everyone to

14   move quickly.

15        And so, there is no fault in seeking to resolve

16   outstanding disputes, that's what we're here for.  And as I am

17   sure you are familiar with, these matters can be filed on a

18   Friday and resolved the next Friday.  And, frankly, that should

19   give both sides comfort that if you can't reach resolution on

20   matters, the Court is here to help the parties do that.

21        So setting aside the timing of when things arose, I

22   want to make sure I understand.  And I saw in the papers that

23   you had retained an ESI vendor and that there were tens of

24   thousands of documents.  And of course, that's not surprising

25   in any significant litigation here.  And I hear that there are

1   perhaps 24,000 pages at least now that have been identified

2   that would be responsive.

3           MR. NEWMAN:  24,000 documents.

4           THE COURT:  Documents.  Correct.

5           MR. NEWMAN:  More pages.

6           THE COURT:  Could be many more pages, exactly.

7           MR. NEWMAN:  Yes, Your Honor.

8           THE COURT:  And I take it that the reason that those

9   24,000 have not been turned over at this point is simply

10  because of the lack of resolution over the protective order, is

11  that correct?

12          MR. NEWMAN:  There are two reasons.  The first and

13  primary is lack of resolution over the protective order.

14          The second is that they haven't fully been reviewed.

15  We don't know that they are all responsive.  They have been

16  tagged as potentially responsive, and we have paralegals

17  reviewing them now.

18          THE COURT:  Okay.  I understand.  But to the extent

19  that responsive documents have been identified, you are

20  representing to the Court that nothing will be withheld other

21  than on the basis of privilege after you finish this and after

22  the protective order is resolved, is that correct?

23          MR. NEWMAN:  Almost, Your Honor.  I can't fully make

24  that representation because as I stand here, since we haven't

25  completed the review, we're not certain that an objection won't

10

1    apply with respect to a particular document.  But I think that

2    it is unlikely.

3            This litigation is very expensive for our client.  We

4    believe that the litigation was brought to litigate our client

5    out of business and to get to its trade secrets.  It is trying

6    to conserve funds, and because of that we don't want to engage

7    in discovery disputes.  To the extent that a document is

8    potentially responsive, we produce it.

9            THE COURT:  Very good.  Thank you.

10           MR. NEWMAN:  Thank you.

11           THE COURT:  I will hear from you, Mr. Miller.

12           MR. MILLER:  There was just one point I wanted to

13   make.

14           THE COURT:  Yes.

15           MR. MILLER:  That last statement is exactly the point

16   that I was kind of worried about, which is that on page 9 in

17   the middle of their brief they essentially make a statement

18   very similar to what we just heard.  Which is that, well, we

19   are sort of possibly going to be asserting objections.  At the

20   bottom of that first full paragraph it talks about should a

21   document be identified during XYZ's discovery review, XYZ would

22   advise VeriSign that it intended to withhold that document

23   based on one of the remaining objections.

24           So I just am a little nervous that that's -- again, I

25   know that counsel is from California, he may not be familiar,

1    but I know that this Court is not going to extend our expert

2    report deadline.  And our expert is asking for the documents.

3    And we know that there is documents, we just need to get them

4    as soon as possible.  And I am worried that if we have repeated

5    motions to compel practice, it's going to derail potentially

6    the schedule or it's at least going to make it hard for us to

7    litigate the case.

8            And so, that's why we would ask for an order that

9    says produce documents immediately on a rolling basis and maybe

10   have it substantially complete by next Wednesday so we can have

11   a chance, you know, to catch up.

12           THE COURT:  Okay.  I understand.  Well, it strikes me

13   that based on the representations of defense counsel here, and

14   obviously we need to resolve the protective order, that with

15   regard to the issues regarding the three outstanding issues

16   that the plaintiff raised, the owners and investors of XYZ, any

17   relationship between Xin and XYZ, and any relationship between

18   Media2 and XYZ, that right now at least the defendants are not

19   refusing to produce those documents.

20           And so, based on the representations of counsel, I'm

21   going to grant the motion to compel in part.  Which is to say

22   that -- and perhaps it's moot because defense counsel is saying

23   that thousands of documents have been identified, they are in

24   the process of reviewing them, and that subject to the

25   resolution of the protective order they are going to turn them

1    over.

2              If the defendant is going to withhold any document

3    other than on the basis of privilege, they are going to need to

4    specify very clearly what is being withheld, and we're going to

5    have to resolve that right away.  Because right now I'm not

6    hearing an argument over relevance that the Court needs to

7    resolve.

8              Certainly documents that relate to XYZ and the way in

9    which it has done its business -- which the claims here are

10   Lanham Act claims about the way in which they have advertised

11   and promoted themselves.  And, therefore, if there are

12   relationships between those entities and XYZ, they could well

13   fall within the subject matter of the claims.

14             So unless you tell me otherwise and want to delve

15   into those three areas, I am certainly granting the motion, and

16   it seems consistent with what the defense has represented on

17   the record this morning.

18             MR. NEWMAN:  Your Honor, the motion isn't ripe and

19   not all documents have been identified, but the claim is rather

20   narrow.  It's an allegation that there has been false

21   advertising, false representation to the public.  The

22   relationship between XYZ and Cyber2Media and investors and how

23   much they invested, isn't likely to lead to the discovery of

24   admissible evidence.

25             The only evidence that the Court and VeriSign need

1    consider is what statements were made and are they true.  Who

2    the owners of the company are and other companies that Mr.

3    Negari has owned don't relate.

4            I don't believe that we're withholding documents, but

5    I don't think the Court should grant a motion that is not ripe.

6    I think that, rather, we should be given a couple weeks to

7    produce documents.  And then to the extent that there is a

8    discovery dispute, we come back here and resolve it.

9            There is not a dispute now.  And I sort of argue in

10   the blind because I haven't had the opportunity to review the

11   24,000 documents.  And I also haven't learned how the Court is

12   going to rule on the protective order, which changes

13   everything.  Because if there is an outside counsel provision

14   where I can designate outside counsel eyes only, then I can

15   deliver all these documents to VeriSign's lawyers because these

16   are gentlemen, I have been dealing with them, I like them a

17   lot, I don't think they are going to share with their client.

18           But to the extent that the documents are going to be

19   turned over to VeriSign, any person inside of VeriSign, we have

20   grave concern.  And then we come back and we talk about whether

21   it is likely to lead to the discovery of admissible evidence,

22   and we will make a compelling case that it is not.  That most

23   of the discovery requests are far overbroad and that the

24   protective order really resolves the issue because we can

25   produce even those that are overbroad to avoid the dispute.

1          But to the extent that the protective order does not,

2     we must withhold.

3          THE COURT:  Well, let me ask this question.  And

4     obviously I understand that 24,000 is a lot of documents and

5     that you are in the process of reviewing them and having other

6     people review them.  But is it the defendants' contention that

7     a large number of those documents would need the extra

8     heightened protection of outside counsel's eyes only?

9          MR. NEWMAN:  I believe so, Your Honor.  Most of the

10    documents are proprietary, confidential, internal documents.

11    They include financial analysis that would be valuable to

12    VeriSign because VeriSign would know how the new threat to its

13    competition is undertaking its business.

14         They include business plans that VeriSign could use

15    for itself or it could launch a counterattack against.  The

16    documents include all of Mr. Negari's e-mails for the past

17    several years, and they touch on business that relates to

18    VeriSign but doesn't relate to this lawsuit.  The documents are

19    highly sensitive and proprietary.  They are not public.

20         The defendants would not be designating documents

21    outside counsel only unless they were highly confidential and

22    proprietary, trade secret, competitive information that

23    VeriSign could use to VeriSign's advantage, whether to

24    restructure VeriSign's business, to improve it, or whether to

25    launch a counterattack against XYZ.

1            And XYZ needs that protection.  XYZ believes this

2    lawsuit was brought just to get at these documents that

3    VeriSign could not get at but for this litigation.  And I think

4    that we allow VeriSign's lawyers to be the gatekeeper.  And to

5    the extent that they believe something is relevant and that it

6    should be made public, then we can discuss it.  And to the

7    extent that we can't resolve it, this Court will resolve it.

8            THE COURT:  How do you respond to the argument that,

9    as you know, the case law disfavors a two-tiered approach, and

10   that the more complicated things get, the more difficult it is

11   to move efficiently through a case?

12           Lawyers need to be able to speak with their clients

13   or at least some of their clients or some aspect of their

14   clients to understand litigation and make decisions.  Do you

15   really take the position that there are thousands of documents

16   that are so sensitive that it would be severely damaging to XYZ

17   if outside counsel shared some of those documents with some

18   employees at VeriSign?

19           MR. NEWMAN:  Well, the Court just asked a few

20   questions and made a statement.  The Court asked me to respond

21   to the Court's statement that the case law disfavors the

22   two-tiered approach.

23           I don't read the case law that way.  When there are

24   competitors and there is sensitive information that one

25   competitor can use against another, it seems to me that the

1   two-tiered approach is uniformly granted.

2          And in fact, Your Honor, last week we did PACER

3   research.  We looked at every VeriSign case since 2007 and

4   pulled the protective orders.  And 100 percent of those

5   protective orders had a two-tier approach.

6          VeriSign's general counsel is in court today.  If I

7   am incorrect and there has been a single federal case where

8   there was the so-called standard one-tier approach, then

9   VeriSign's general counsel can advise the Court.

10          But from what I've seen --

11          THE COURT:  Let me stop you there.  I don't disagree

12   that it is not inappropriate to use the two-tier approach and

13   that that two-tier approach is appropriate where there are

14   direct competitors.  And it certainly appears that these are

15   potential competitors or competitors right now.

16          But a two-tier approach also contemplates that the

17   scope of those documents that would be subject to such a severe

18   limitation would be relatively small, that they would be things

19   that are not abstractly damaging.  Litigation is damaging,

20   often in general when competitors sue each other.

21          And so, the notion that every e-mail or every

22   business plan or every document about the future of XYZ would

23   be subject to exposing it in its entirety, strikes me as

24   difficult to reconcile with the notion that you could have two

25   tiers and that lawyers could appropriately determine what is

1    really important and needs to be restricted in the way the

2    other side handles it.

3           MR. NEWMAN:  Well, Your Honor's comment of course is

4    valid.  And our firm would be very careful in designating

5    documents.

6           I'm not suggesting that every document would be

7    outside counsel only, but VeriSign has requested our client's

8    business plans, which is a blue print to our client's success,

9    its marketing plans, its financials.  VeriSign not only wants

10   to know who the investors are, but how much each of them

11   invested.  This is proprietary and confidential.  It's not

12   likely to lead to the discovery of admissible evidence.  It

13   doesn't relate to any claim or defense in the case.

14          We will provide it, but we can't provide it if

15   VeriSign, the company as opposed to the lawyers, will have

16   access to it.

17          And that would change my response when the Court asks

18   whether I can provide assurances that we're going to delivery

19   documents.  The answer, if there is a one-tier approach, is no.

20   And then we should start going through the merits of each of

21   the discovery requests and why they are overbroad and not

22   likely to lead to the discovery of admissible evidence.

23          THE COURT:  Thank you.  Let me hear from Mr. Miller.

24          MR. MILLER:  A couple points first about the motion

25   to compel, just to close that out.

1          So, you know, I think from the statements of counsel,

2   we hear that he is coming back to these objections about burden

3   and other of the objections that we've asked to be stricken

4   again and again.

5          Just to briefly comment.  We propounded 24 RFPs,

6   requests for production.  They propounded 101.

7          So as you say, the litigation is difficult for

8   everyone, but I think the main concern that I have as to the

9   motion to compel is time.  I think that we need an order today

10  that puts a firm deadline, a pretty aggressive deadline.  I

11  understand that there is a lot of documents and he has

12  paralegals reviewing them, but we have to get all these

13  documents and absorb them in time to take the June 9 deposition

14  of the defendant, Mr. Negari.

15         So I'm concerned about we go to that deposition, we

16  don't have all the documents, we take an incomplete deposition,

17  and then we have to come back to you and ask to reopen the

18  deposition, or the same thing with the expert reports.

19         And so, that's why the main point I have to say about

20  the motion to compel is that there should be an aggressive

21  deadline.  I suggest next Wednesday, on a rolling basis so we

22  start getting documents over the weekend and Monday and Tuesday

23  and we can start absorbing it.

24         So that's what I have to say about the motion to

25  compel.  Would you like me to move on to the protective order

1  issues?

2          THE COURT:  I would.

3          MR. MILLER:  Okay.  The number one issue on the

4  protective order is that we need VeriSign's help to understand

5  what is the significance of the documents we are receiving.  It

6  is not only that we need VeriSign to participate, but VeriSign

7  has a right to participate in the prosecution of this case.

8          Now, there are some cases where parties sort of turn

9  the case over to the litigators and the litigators basically do

10  it and the party is more passive.

11          The gentleman here, the general counsel and the head

12  of litigation, are members of the Bar, by the way.  They should

13  be part of this, the group of people that have access to all

14  the documents because they are actually intimately involved on

15  a day-to-day basis with the case.  They are members of the Bar.

16  But I think that what has been proposed here is outside counsel

17  only.

18          Now, I can say, me and Mr. DePalma have been

19  litigating Lanham Act false advertising cases, I have been

20  doing it for 20 years.  But I have got to tell you, I don't

21  know this industry like these gentlemen and like the business

22  representatives that we want included in access to the

23  documents, and we need their participation.

24          The Supreme Court last term in a unanimous decision

25  in the Palm Wonderful case said that it is the businesses that

1    are in the market that have the greatest ability, even more so

2    than federal regulators like the FDA, are the ones that have

3    the interest and the ability to absorb and evaluate documents,

4    understand their significance.  And VeriSign wants to

5    participate in the prosecution of this case.

6            And so, Your Honor is correct about the legal

7    standard, and I will just say there is a 2014 Eastern District

8    of Virginia decision that we cite in our papers.  And it says:

9    Attorney's eyes only is a drastic limitation that is reserved

10   for only those rare instances in which it is truly justified.

11           Now, I understand that there might be cases where the

12   parties agree.  There might be instances where there is

13   complicated formulas or very highly technical information that

14   the disclosure of which would do harm.

15           This is the kind of soft business plan, e-mails kind

16   of case that it's not one of those rare instances where you

17   would use an extraordinary remedy.

18           I would say, there are concerns that counsel raises

19   about this is all proprietary information, but the protective

20   order that we have proposed addresses that because a provision

21   of that protective order says that this can only be used for

22   the litigation and for no other purpose.

23           These gentlemen, for example, are going to be bound

24   by that.  I can tell you that they are members of the Bar, they

25   are conscientious and there will be procedures in place to

1  control and to limit the dissemination of this material so that

2  we can assure and report and represent to the Court that these

3  materials are used for the prosecution of this case.

4              THE COURT:  Well, let me ask you a couple of

5  questions, if I can.

6              MR. MILLER:  Yes.

7              THE COURT:  First, is there any dispute that this is

8  a case in fact that deals with competitors?  That you are both

9  competing or hope to compete in the same space?

10             MR. MILLER:  We are direct competitors.

11             THE COURT:  Okay.  And how do you respond to the

12 argument that if you're seeking quite broad discovery about

13 things like their business plans, and their detailed financial

14 statements, and their market surveys, and things that really go

15 to how they put their business together and how they would

16 compete against VeriSign and others, that that really puts them

17 in a difficult position to the extent the information that's

18 turned over now is in the possession of VeriSign?

19             MR. MILLER:  I think it's a fair point, and that's

20 why we're moving for a protective order.  We think that the

21 protective order that we're -- that we're recommending this

22 time, which is attached to our motion, provides that

23 protection.

24             But I would say that the type of information that has

25 been described -- and ordinarily there has to be a lot more,

1    you know, detailed representations to -- you know, by way of

2    declaration and attachments and perhaps in camera review to

3    obtain the outside counsel restriction that they are

4    advocating.

5            But I think what's at issue in this case is this

6    company, XYZ, has basically come onto the scene with very

7    aggressive promotional statements saying that they have a

8    million registrations.  We think that -- we think that almost

9    all of that is phantom, that it's actually a deception on the

10   American public.

11           And the advertising --

12           THE COURT:  And I presume that you propounded

13   discovery that will identify how many people there are and how

14   they became customers of XYZ, and that that goes to the heart

15   of your claim that they have done something improper in

16   violation of the Lanham Act.  I mean, I take it you are going

17   to get that information?

18           MR. MILLER:  Yes, Your Honor, but I would also say

19   that the business plans and marketing plans would also have --

20   would lay out what they are going to try to do.  And intent is

21   relevant in Lanham Act false advertising cases if they are

22   intending to sort of perpetrate -- you know, obviously we're

23   just at the beginning of the case, so I don't want -- I don't

24   have -- I don't have the information in hand, but it would be

25   helpful to us and certainly reasonably calculated to lead to

1   discoverable information to see the marketing plan.

2          I would regard that as core to a Lanham Act false

3   advertising case because it would lay out the company's

4   strategic objectives, and perhaps the investors and owners,

5   there is reports on return on investment on their promotional

6   campaign which is at issue in the case.

7          THE COURT:  Now, tell me with regard to your proposal

8   of a more limited group -- of a protective order in which there

9   is confidential information and then there is a more limited

10  group of people who could see it.

11         My understanding was that the proposal was the board

12  of directors, nine senior management, all of the legal

13  department, and possibly others, is that correct?

14         MR. MILLER:  That is correct.  Now, I can tell you

15  that on the reality of the case and on a day-to-day basis,

16  there is really -- probably the most -- within that group,

17  there is probably a smaller group of the people that are like

18  in almost daily communication with us about the case.  And it's

19  these two gentlemen behind me, and there are three other

20  corporate representatives, you know, who are sort of in daily

21  participation on the case.

22         And I think that at a minimum in order to -- we are

23  balancing, right, we are balancing the interests that my friend

24  has identified in terms of avoiding undue disclosure of his

25  confidential business documents versus the right of VeriSign to

1    participate in the prosecution of this case.

2            And so, I think that the group that I am identifying,

3    there might be five individuals who are in daily activity with

4    the case who could certify, who could execute the attachment

5    that says that they are aware of the protective order and agree

6    to be bound by it.  And if we could have that group have access

7    to it, we can do our job.

8            THE COURT:  Thank you.  Mr. Newman, would not much of

9    your concerns be assuaged if the number of people at VeriSign

10   who had access to the most sensitive information were limited?

11           I can understand the objection to the entire board of

12   directors and nine senior staff and the entire legal

13   department.  But if in fact there are key people at VeriSign

14   who are really working on the litigation and are not in the

15   business, on the business side of VeriSign, would it not be

16   appropriate to fashion a compromise that the parties could come

17   up with that would address the most sensitive information,

18   which I would think would be a limited number, would be a truly

19   limited number of documents?

20           And we would see, I think very quickly, if there were

21   hundreds or thousands of documents that were designated that

22   way, that there would be a very quick resolution in court to

23   see whether or not that was justified.

24           But I certainly do believe that where you have direct

25   competitors, that the concerns that you raise are valid.  I am

1   just wondering whether or not there isn't a middle ground that

2   is somewhere between what Mr. Miller has suggested, which I

3   think is, you know, is a fairly large number of people, but

4   could allow the plaintiffs to interact with their client in a

5   meaningful way, but also cabin those who would have access to

6   the information and that they would be bound by the terms of

7   the protective order not to share it in any other way with

8   others at VeriSign, that would address your concerns?

9           MR. NEWMAN:  I don't think so, Your Honor.  The cases

10  talk about decision makers.  And the Court has correctly noted

11  that the board of directors and senior officers are decision

12  makers.  And XYZ is grateful if the Court is inclined not to

13  allow them to have access.

14          As for the legal department, they are inside the

15  company.  They too may be decision makers.  It's routine for

16  any company of VeriSign's size to have legal members at

17  strategy meetings and business planning meetings.  And the

18  cases also discuss human fallibility.  It's not about bad

19  faith.  It's about that once you have had exposure, it changes

20  your world view, your prejudices, your biases and what you

21  know.

22          And so when these lawyers inside VeriSign are in

23  business strategy and planning meetings and the question comes

24  up, should we undertake the following business plan or

25  marketing plan, they know what the competitor is doing and they

1    can't help but to respond accordingly.

2         I don't believe that the general counsel of VeriSign,

3    member of the Bar who I met, and is obviously respectful and

4    has integrity, I don't believe he is going to intentionally

5    disclose our client's documents to the senior members, the

6    board of directors and the officers, but I do believe that when

7    he is in those meetings, that his response when asked about

8    certain business plans is going to be what's best for VeriSign,

9    and that will be informed by what he knows the competition is

10   doing.

11        This is not a technical case.  When VeriSign's lawyer

12   speaks about how it needs assistance from its client, the Court

13   should keep in mind that this is all about whether there have

14   been true statements made to the public.  The Court asked

15   whether we're going to disclose how many registrations there

16   are.  Yes.  Is that confidential?  No.

17        VeriSign notes that experts need to review these

18   materials.  We are going to have those materials to VeriSign

19   right away.  And in fact, they have the materials because the

20   number of registrations is public.

21        We've already disclosed in the interrogatories, or

22   actually I believe we redacted it, but we will disclose when

23   there is a protective order, we can disclose today if there is

24   a protective order, we disclose the number of registrations

25   that the third parties give away as a promotional scheme.  And

1    so, VeriSign will know how many registrations there are because

2    that's public, and how many are given away because we are

3    disclosing that.  And then VeriSign is free to make its

4    argument about how that is deceptive.

5              It does not need its client's support for that.  It

6    is not a technical case.  It is about representations to the

7    public and whether they were true.

8              These lawyers who represent VeriSign are excellent.

9    They have litigated many Lanham Act false advertising cases and

10   they know what they are doing.  VeriSign doesn't need to

11   participate in that.  They have hired great counsel who can do

12   it for them.

13             THE COURT:  Thank you.  Mr. Miller, what response to

14   the issue about whether or not general counsel or other lawyers

15   at VeriSign also participate integrally in the business

16   decisions and future plans of VeriSign, how do we address that?

17             The courts do address the concern that you can't, you

18   know, separate what you've learned in one context, and once

19   it's there, there is always the possibility of inadvertent

20   disclosure.

21             MR. MILLER:  I think that there are procedures that

22   could be put in place that we could oversee and represent to

23   the Court that are being enforced under the standard protective

24   order which this Court's precedent says is what ordinarily

25   should happen.

1          I could understand if there were complicated formulas

2     or technical processes that were at play here, that there might

3     be more of a concern, but I think that what these business

4     plans -- probably the business plans that we're talking about,

5     marketing plans, are going to lay out sort of what they

6     represented, for example, to ICANN that they were going to do,

7     what they intended to accomplish with the advertising campaign.

8          And I think it would be, you know, it would help to

9     discharge VeriSign's right to participate in the prosecution of

10    the case that at least some control group closely monitored

11    with adequate controls and -- for example, we could limit

12    dissemination of the documents.  We could have other controls

13    in place to make sure that the copies are not -- you know,

14    remaining at VeriSign, or being passed around to other people,

15    they come back with us or something.  That we have the ability

16    to sit down, you know, with our client and share what has been

17    produced so that they can determine what directions to give us.

18          We are, after all, serving the client, it's the

19    client's lawsuit.

20          THE COURT:  Let me ask this question, and you may not

21    be able to answer it.  But do you have any information that

22    would contradict the research they did on PACER that VeriSign

23    has engaged in litigation here and sought a two-tiered

24    protective order?

25          And if so, and having been involved in Lanham Act

1   litigation here, are you aware of whether or not two-tiered

2   protective orders have been used in Lanham Act cases where

3   VeriSign was either a defendant or a plaintiff?

4           MR. MILLER:  Well, this is the first time I have

5   heard this is right now, just like you.  And I will note that

6   there was a brief filed by the defendants yesterday.  I think

7   that brief was out of time, by the way, I think it's 5 o'clock

8   on Wednesday.  But yesterday we got a brief in, and this wasn't

9   mentioned.

10          So I have got to confess to you that I haven't even

11  had a chance to ask because we just heard it uttered in court

12  right now, which I know is a disfavored tactic.

13          I can tell you that sometimes parties agree to

14  two-tiered protective orders because, you know, they too have

15  to produce documents.  We have been asked to produce all kinds

16  of sensitive confidential information, and sometimes it's kind

17  of like mutually assured destruction.  It's sort of like, okay,

18  we'll agree, we'll agree to the two tier at the outset.

19          I also must tell you, having done a lot of Lanham Act

20  cases, that given the First Amendment judicial access concern

21  that the public have access, that there be a lot of sunshine, I

22  think this case has some public significance.  I think this is

23  a brand new part of the domain name industry that is coming

24  into fruition.  And I think people are interested.  So there

25  ought to be some sunshine.

```
 1              And I will tell you, at the end of the day what
 2   happens ordinarily is the materials that are at one time marked
 3   highly confidential come into a public courtroom during trial.
 4   As you were saying earlier in your comments, it's very limited
 5   and that a lot of the protection goes away.
 6              I think that, for example, the marketing plan is
 7   going to be probably stale by the time we even get it.  It's
 8   something that we already concede that they are executing on,
 9   but it might help us prove our case and we are entitled to get
10   it.
11              I don't know whether VeriSign has agreed to
12   two-tiered protective orders, I assume they have, but sometimes
13   you agree to it.  The question is, when there is a dispute and
14   when there is a party like VeriSign that is saying, we ought to
15   just have the ordinary -- you know, when the Court has to --
16   when the Court has to decide, then the standard that I read
17   from you 2014, Eastern District of Virginia, that says that
18   it's rare and in limited circumstances, ought to be the
19   governing legal standard.
20              THE COURT:  Okay, thank you.
21              Okay.  Well, I'm going to have the parties try to see
22   whether or not this can be resolved rather than the Court
23   entering one of the two protective orders that has been entered
24   right now.
25              I am going to grant the motion to compel in part.
```

1   Responses are due, they were due two weeks ago.  As everyone

2   here knows, litigation moves quickly.  And I appreciate the

3   efforts when there is an enormous amount of information to go

4   through, but it's important to go beyond the public documents

5   and start to turn over some of those 24,000 pages, 24,000

6   documents right away.

7        And so, I am going to order the defense to begin

8   producing documents as of next Friday on a rolling basis.  And

9   so, to the extent, as this review goes forward and there is no

10  objection that is going to be lodged either on confidentiality

11  or on any other basis other than privilege -- and if it's based

12  on privilege, you will have to produce a privilege log, you

13  know, within seven days on a rolling basis to the extent there

14  are specific documents being withheld.

15       To the extent that there are specific objections not

16  based on privilege that the defendant wants to stand on, those

17  need to be communicated, not instead of producing documents,

18  but in addition to the documents that are being produced over

19  which there is no dispute, immediately, so that those matters

20  can be resolved.

21       The Court will not accept general objections.  And to

22  the extent that the defense thinks that there are things that

23  are overbroad, it's incumbent upon the defense to make clear

24  what's not being produced.

25       And so, I am going to grant the motion to compel in

1    part.

2           MR. NEWMAN:  May I understand the Court's order to be

3    that if there are documents that are overbroad and not likely

4    to lead to the discovery of admissible evidence, that we can

5    still raise that and try and work through that with opposing

6    counsel and then bring a further motion for a protective order?

7           THE COURT:  Yes.  And as the Local Rules require, you

8    must confer not only to provide sufficient information to the

9    plaintiff so they know what they are not getting, but so that

10   you can resolve any disputes amicably and make a good faith

11   effort to do so before you come to court and get a ruling on

12   whether or not they are so unduly burdensome or so far afield

13   that they shouldn't be produced.

14          MR. NEWMAN:  We always do, Your Honor.  Thank you.

15          THE COURT:  You're welcome.  With regard to the

16   protective order, I do find that this is a case in which the

17   parties are in direct competition, and I think there really is

18   a danger that some of the information sought -- and perhaps

19   this goes to whether or not, when there are discussions amongst

20   the parties, there are ways of narrowing the requests to avoid

21   the complication of what the defense views as so sensitive and

22   in direct competition that it makes it difficult to turn over.

23          But to the extent the plaintiffs believe that the

24   information they seek is necessary to the resolution of these

25   claims, and it potentially puts the defense in the position of

1　turning over highly sensitive information, I think there does

2　need to be a higher scrutiny and a limitation on those

3　documents.  I would not expect those documents to be a large

4　percentage of 24,000 pages of documents.

5　　　　　　　And so, the defense is going to have to make a

6　cold-eyed calculation as to how to designate something that's

7　in a higher tier.

8　　　　　　　I do believe that even in a higher tier, the

9　plaintiffs need to be able to have some ability, some

10　ability -- and maybe this is a case, I don't think so, and

11　neither party was suggesting it, in which we need three tiers.

12　I know that that is done.  I think that is usually reserved for

13　the most complex patent cases in areas of technical expertise.

14　　　　　　　But I believe that there should be a very small

15　control group that the plaintiffs can articulate where I think

16　this issue of the spillover, the inadvertent disclosure needs

17　to be addressed.

18　　　　　　　In other words, if there are people within the legal

19　department or within VeriSign that need to weigh in on the

20　issue of false advertising, on the specific claim of the Lanham

21　Act to advise outside counsel, then they can be bound under

22　restrictions to see that information.

23　　　　　　　But if those are employees who are engaged deeply in

24　strategic business planning and marketing, then I think that's

25　a real problem.

1      And so, I would urge the plaintiffs to think

2  carefully about who to propose.

3      And then I'm going to ask you by next Friday to

4  submit an agreed upon protective order consistent with what I

5  am articulating now.  I hope that you will be able to find a

6  way to thread that needle.

7      I do think that the defendants' proposal, I think it

8  was the defendants' proposal that the mechanism for objecting

9  be that the most highly restricted documents are designated by

10  whoever is producing it, that is shared with the other side.

11  The other side, if they think it has been wrongly designated,

12  shall promptly inform the designating party and ask them to

13  withdraw the designation.

14      If they do not, then I think it's incumbent upon the

15  party, and I know the plaintiffs disagreed with this, to file a

16  motion with the Court.  It does not need to be a complicated

17  motion.  It can be very simple, a motion to deauthorize the

18  designation as unjustified.

19      Both sides agree and the law is clear that the burden

20  is on the designating party to justify it.  And this is why I

21  am, perhaps more than I need to, emphasizing that if there is

22  overdesignation, it is going to quickly come to the attention

23  of the Court because that justification will need to be

24  presented powerfully and consistent with the case law that the

25  most restrictive confidentialing needs to be applied.

1         And if we find that it is not being done

2   appropriately, we'll address it in court quickly and costs will

3   have to be assessed.

4         So I think there is an incentive to have these

5   matters resolved quickly.  I don't think having this effort to

6   protect competitors from one another should be a reason to

7   create more litigation or to slow down the sharing of

8   information so that these claims can be resolved efficiently

9   and within the time periods that the Eastern District expects.

10         And so, I think that both sides will need to work

11   quickly and take very seriously the power that they have to

12   begin that process.  But, you know, if it's not working, that's

13   what the Court is here for.  And we can get that addressed, you

14   know, within a week.

15         So hopefully this will allow both sides to get

16   sufficient information to be prepared to take depositions of

17   experts and meet the expert disclosures.

18         If you find, despite your best efforts, by the middle

19   of next week that this ruling is not clear or that you don't

20   think you can come up with an agreed-upon protective order

21   consistent with what I have ruled, you can call chambers, we

22   can set up a conference call.

23         I appreciate that we have counsel that are from out

24   of town.  If we can do things by phone appropriately, I am

25   happy to do that.

1          But what I want to do is strike the right chord, that

2   this is the time now that discovery should be going full bore

3   so that everyone can meet their obligations.  And my job is to

4   make sure that this case is ready for the District Court to

5   resolve it either on motions or through a trial later on.

6          And so, that requires everybody and everybody has an

7   interest in doing everything they can so that the Court can get

8   a resolution of this matter.

9          Are there any questions?  Is there anything that I

10  have left unaddressed?

11         MR. NEWMAN:  Nothing from the defendants.  I am

12  confident that we will work through the protective order issue.

13  Thank you.

14         THE COURT:  Thank you.

15         MR. MILLER:  Nothing.

16         THE COURT:  Thank you.  Court will be in recess.

17         NOTE:  The hearing concluded at 10:47 a.m.

18         -------------------------------------------------

19

20

21

22

23

24

25

C E R T I F I C A T E   of   T R A N S C R I P T I O N

      I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court.  Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

      Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

/s/ Norman B. Linnell

Norman B. Linnell

Court Reporter - USDC/EDVA