**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Verisign, Inc., <br><br> Plaintiff, <br><br> v. <br><br> XYZ.com, LLC et al, <br><br> XYZ. | Civil Action No. 1:14-cv-01749 CMH-MSN |

**DECLARATION OF GRANT CARPENTER**

1. I am over the age of eighteen years and competent to testify in this matter. I am general counsel to defendant XYZ.com, LLC and testify from personal knowledge.

2. In its requests for production of documents, Verisign requested all XYZ's marketing plans and business plans. To comply, XYZ produced hundreds of thousands of pages of responsive documents. Most those documents are emails about XYZ's secret business practices, business partners, confidential agreement terms, and marketing plans. XYZ produced all responsive documents—even though the discovery requests were overbroad—because it has faith in the protective order.

3. Unsurprisingly, Verisign initially opposed any attorney's eyes only designation. Verisign asked the Court to allow it unrestricted access to XYZ's trade-secret pricing, pending business deals, and other key information.

4. Verisign is in a unique position to take unfair advantage of this information. As the industry leader, Verisign has massive business resources. And as a new entrant in the field with comparatively limited resources, XYZ's only way to gain a competitive edge is through its innovative marketing and promotional efforts.

5. If Verisign knows XYZ's secrets, including pricing information and customer relationships, Verisign could easily undercut XYZ or target XYZ's customers or merely

1

replicate XYZ's successful marketing strategies.

6. If Verisign has access to XYZ's internal practices, Verisign could readily copy or misappropriate those trade secrets.

7. In response to XYZ's discovery requests, ███████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████
████████████ XYZ achieved much success with those placements. During the promotions, a consumer would see .xyz as the first-offered domain extension and resulted in significant sales for XYZ.

9. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████

10. XYZ can be harmed or crushed by Verisign because Verisign has huge market share and massive revenues. Verisign can unfairly target and undercut XYZ's existing business deals if Verisign knows they exist, and even more so if Verisign knows the terms of arrangements with XYZ business partners, which will enable it to repeatedly replicate XYZ's successful strategies as it has already done.

11. XYZ carefully reviewed its materials, and designated portions as "Confidential" and other portions as "Attorney's Eyes Only."

12. XYZ keeps each of the exemplars from Verisign's motion secret from its competitors because release would allow competitors to know:

   - XYZ's pricing policies and structure;

- XYZ's marketing strategies and roll-out dates;
- The terms of XYZ's agreements and XYZ's business relationships;
- XYZ's compliance practices.

13. With access to these documents, Verisign could cause XYZ irreversible competitive business harm. Verisign would get a free look inside XYZ's operations and relationships.

14. Specifically addressing each exemplar:

| Verisign Exhibit | Description |
|---|---|
| A | Email chain between XYZ and key business partner discussing XYZ's confidential pricing plans, business strategy, and proposed confidential agreement terms (that eventually came to fruition as an executed confidential agreement). With this information, Verisign can negotiate similar deals, undercut XYZ pricing, and execute similar marketing campaigns that would cause harm to XYZ's business and relationships. |
| B | Email chain between XYZ and important supporter disclosing "private business dealings." Verisign is unaware about the relationship between XYZ and the supporter. With this information, Verisign can solicit the customer and appropriate the relationship. |
| C | Email chain between XYZ and its important business partner discussing pricing, confidential business points, marketing ideas, regulatory compliance, and XYZ's business strategies. With this information, Verisign can negotiate similar deals, undercut XYZ prices, and learn how to structure better deals with business partners like this one. |
| D | Email chain between XYZ and ICANN responding to compliance audit that Verisign initiated. The information provided to ICANN is confidential, and is especially |

| | |
|---|---|
| | sensitive as to Verisign because it requested the audit. The document discloses XYZ's confidential business practices. With that information, Verisign could better launch competitive attacks against XYZ. |
| E | Confidential Marketing agreement between XYZ and business partner disclosing pricing, deal structure, and business plans. The agreement provides that "Neither party will disclose the existence or nature of this Agreement to any competitors of the other party." Verisign is a competitor of both XYZ and this business partner. Knowing the terms of this deal could substantially assist Verisign in competition against them. |
| F | Advertising agreement with important business partner with pricing and advertising plan. The agreement discusses "prices, site metrics, visitor traffic, numbers of impressions and clicks" and expressly provides "terms and conditions of this Agreement will be treated as confidential." With access to this contract, Verisign can negotiate better or similar deals and design a plan to compete more effectively than without access the competitive information. |
| G | Email chain between Google and XYZ about advertising plan, timing of XYZ roll-out, another top-level domain that XYZ operates unrelated to the subject of this case, and confidential ideas about how Google can market XYZ. With this information, Verisign could negotiate similar deals or undercut XYZ with Google and other advertising networks. |
| H | Email chain between XYZ and business partner about pricing, payment plans, and whether business partner as a publicly-traded corporation must account for transaction in a certain manner. With this information, Verisign can negotiate similar pricing and know the public company's internal questions about accounting that is not public. |

15. Exemplars E and F are marketing agreements between XYZ and registrars. Verisign

designated its own marketing agreements with registrars as "Attorney's Eyes Only."

I certify and declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed July 15, 2015 in _Los Angeles_, _CA_.

_/s/ Grant Carpenter_
Grant Carpenter
Counsel for Defendant XYZ

### CERTIFICATE OF SERVICE

I certify that on July 15, 2015, I electrically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NED) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Venable LLP (Vienna)
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
nicholas.depalma@venable.com
rkmiller@venable.com

Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax

designated its own marketing agreements with registrars as "Attorney's Eyes Only."

I certify and declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed July 15, 2015 in _____, _____

_____
Grant Carpenter
Counsel for Defendant XYZ

## CERTIFICATE OF SERVICE

I certify that on July 15, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NED) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Venable LLP (Vienna)
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
nicholas.depalma@venable.com
rkmiller@venable.com

s/ Timothy J. Battle
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax