IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| Verisign, Inc., <br><br> Plaintiff, <br><br> v. <br><br> XYZ.com, LLC et al., <br><br> Defendants. | Civil Action No. 1:14-cv-01749 CMH-MSN |

**DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ANDREW SIMPSON AND MEMORANDUM IN SUPPORT**

**Table of Contents**

I.    Introduction ................................................................................................................ 1

II.   Factual Background ................................................................................................... 1

      A.    Verisign's Complaint alleges false advertising by a new competitor, XYZ. ............. 1

      B.    Verisign employee Andrew Simpson provided a report analyzing the number of theoretically available .com domain names. .......................................................... 2

      C.    Simpson uses untested methods to evaluate the number of theoretically "available" domain names. ....................................................................................... 3

III.  Argument ................................................................................................................... 6

      A.    The Simpson Report is not relevant because it analyzes the number of theoretically available <.com> domain names—not the availability of domain names desirable to a particular consumer. ............................................................ 6

      B.    The Simpson Report is not relevant because it will not help the jury to understand that particular <.com> domain names are theoretically available—anyone can determine that and an expert is not required. ....................................................... 8

      C.    The Simpson Report is not reliable because it hypothesizes without any scientific basis. ........................................................................................................................ 8

IV.   Conclusion ................................................................................................................ 10

## I. Introduction

Verisign alleges that Defendants made false statements that "reflect a strategy to create a deceptive message to the public that companies and individuals cannot get the .COM domain names they want from Verisign, and that XYZ is quickly becoming the preferred alternative." Verisign disclosed Andrew Simpson as an expert to address the availability of <.com> domain names. Simpson is employed by Verisign as a data scientist. Verisign asked Simpson to provide an opinion about what "theoretical" <.com> domain names are available. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Simpson's testimony is neither relevant nor reliable.

Simpson's testimony is not relevant—the allegedly false statements are about the availability of "good" <.com> domain names, not merely those which are theoretically available in the abstract. Moreover, Simpson testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And subjective statements of opinion cannot form the basis for a false advertising claim. Simpson's testimony is also unreliable. He uses a novel approach consisting of a variety of techniques that he cobbled together for the purpose of his report. His approach amounts to complicated guesswork.

Simpson's proposed expert testimony is neither relevant nor reliable and should be excluded.

## II. Factual Background

**A. Verisign's Complaint alleges false advertising by a new competitor, XYZ.**

Verisign's Complaint identifies several allegedly false statements about its <.com> domain-name business. Verisign alleges the statements "when viewed together and in context, reflect a strategy to create a deceptive message to the public that companies and individuals

1

cannot get the .COM domain names they want from Verisign, and that XYZ is quickly becoming the preferred alternative." (Complaint (ECF 1) at ¶ 42.)

Verisign points to statements that XYZ made: "with over 120 million dot coms registered today, it's impossible to find the domain name you want," "[a]ll of the good real estate is taken. The only thing that's left is something with a dash or maybe three dashes and a couple numbers in it." Verisign claims these and other similar statements are false. (*See* Simpson Report ¶ 11(a)–(g).)

**B.     Verisign employee Andrew Simpson provided a report analyzing the number of theoretically available .com domain names.**

Verisign disclosed as an expert Andrew Simpson[1], who is employed by Verisign as a data scientist specializing in global domain name usage. (Simpson Report ¶ 1; Simpson Dep. Tr. 7:22–8:5.) ███████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████

XYZ retained Jothan Frakes to evaluate Simpson's report.[2] Frakes has been active in the domain name industry for over 20 years. He developed, managed and launched internet registrars, developed registry systems for TLDs similar to <.com> and <.xyz>, co-founded and

---

[1] *See* July 3, 2015 Expert Report of Andrew Simpson ("Simpson Report") (Declaration of Derek Linke in Support of Defendants' Motion to Exclude Plaintiff's Experts ("Linke Decl."), Ex. G; August 12, 2015 Reply Expert Report of Andrew Simpson ("Supplemental Simpson Report") (Linke Decl., Ex. H).
[2] *See* August 1, 2015 Rebuttal Expert Report of Jothan Frakes ("Frakes Report") (Linke Decl., Ex. K).

co-produced the industry-leading international commercial conferences for domain names, and was recently retained as a subject-matter lead for technical and financial questions submitted by TLD applicants. (Frakes Report ¶¶ 9–14.) He holds numerous patents and has designed systems that generate zone files for TLDs ▮▮▮▮▮▮▮▮▮▮ (Frakes Report ¶¶ 15–16.)

C. **Simpson uses untested methods to evaluate the number of theoretically "available" domain names.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Domain names are used by businesses, organizations, and individuals to help internet users find websites. A domain name is a stand-in for an internet protocol (IP) address, which is a string of alphanumeric characters that allows a computer browser to locate a resource like a website on the internet. To be desirable, a domain name needs to be short and memorable. (Frakes Report ¶ 36.)

▮▮▮▮▮▮▮▮▮▮▮▮▮ (Simpson Report ¶ 16.) Over 120 million .com domain names have been registered. (Frakes Report ¶ 51.) Domain names have become so scarce they are now commodities, and popular names are sold for thousands or tens of thousands of dollars, and some are worth millions. (Frakes Report ¶ 37.)

Desirable <.com> domain names have been essentially unavailable for direct registration (rather than purchase on the expensive secondary markets) for decades. (Frakes Report ¶ 36.) Simpson concludes otherwise based on ▮▮▮▮▮▮▮▮▮▮

3

██████████████████████████████████████████████

(Simpson Report ¶ 16.) ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ *d.*)

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

    Simpson's conclusion emphasizes the speculative nature of his findings: He concludes that ████████████████████████████ (Simpson Report ¶ 27.) But at deposition, Simpson conceded that ██████████████████████ (Simpson Dep. Transcript at 65:2.)

██████████████████████████████████████████████████████████

██████ s irrelevant to whether desirable names (names consumers would want) are available. (Frakes Report ¶ 33–35.) For example, the name "z1-3axqp-r.com" is available – but no one would want it. Frakes concludes that Simpson's complex and totally untested system for evaluating desirability is completely speculative. Even if some word combinations that feature in literature remain available, there is no evidence that consumers would want those random combinations of words to advertise their business or personal website. (Frakes Report ¶¶ 45–47.)

Verisign also claims that XYZ's statement that 99% of .com domain-name searches result in a "domain taken" response is false. ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ (Frakes Report ¶ 42.) ██████████ ██████████████████████████████ (Simpson Report ¶ 13(c)-(d).) Most registrars use multiple different domain name availability check, and other availability techniques return over two-billion domain name check results per month. (Frakes Report ¶ 43–45.) Of those two billion checks, more than 99.859% returned as *unavailable*. (Frakes Report ¶ 45.)

██████████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████

5

### III.     Argument

Plaintiff bears the burden of establishing that Simpson's proffered testimony is admissible under Federal Rule of Evidence 702. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. at 592 n. 10.) Rule 702 allows for opinion testimony by an expert only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue and:

1) the testimony is based upon sufficient facts or data;
2) the testimony is the product of reliable principles and methods; and
3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Because expert witnesses have the potential to "be both powerful and quite misleading," the Court must ensure that any and all scientific testimony is both relevant and reliable. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) and *Daubert*, 509 U.S. at 595.)

The Court determines whether expert testimony is admissible. Fed. R. Evid. 104(a). The Court serves as a gatekeeper for all types of scientific testimony, and must exclude testimony that is irrelevant, unreliable, or more likely to mislead than to help the jury understand a contested issue of material fact. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001), citing *Daubert*, 509 U.S. 579, and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

**A.     The Simpson Report is not relevant because it analyzes the number of theoretically available <.com> domain names—not the availability of domain names desirable to a particular consumer.**

Simpson's testimony is irrelevant because it does not demonstrate that any of the alleged statements about <.com> availability are false. There must be a "valid ... connection between the

6

expert's testimony and the pertinent inquiry before the court as a precondition to admissibility." *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001); *see also Petri v. Virginia Bd. of Med.*, No. 1:13-CV-01486, 2014 WL 5421238, at *2 (E.D. Va. Oct. 23, 2014), citing *Garlinger*, 16 F. App'x at 235 (excluding expert testimony that did not relate to the ultimate question before the jury, even though it might have been helpful to understand the background of the dispute.)

In the Fourth Circuit, only "description[s] of fact or representation[s] of fact" are actionable as false advertising under the Lanham Act. *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). To be a representation of fact, the statement must "admit of being adjudged true or false in a way that admits of empirical verification." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 502 (4th Cir. 2015) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498–99 (5th Cir. 2000), *cert. denied*, 532 U.S. 920) (punctuation omitted). In contrast, statements of opinion—which convey a subjective rather than empirical viewpoint—are not actionable. *Design Res.*, 789 F.3d at 501 (citing *Pizza Hut*, 227 F.3d at 498–99).

Verisign fixates on XYZ's statements about the availability of <.com> domain names. The Simpson Report opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Simpson Report ¶ 2.) But there is no dispute that some words and combinations of letters are actually available. The allegedly false statements pertain not to theoretically available domain names, but to "good" domain names that a particular customer might want. Simpson testified that ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7

███████████ is irrelevant to whether any available domains are subjectively "good" for any particular consumer.

**B.     The Simpson Report is not relevant because it will not help the jury to understand that particular <.com> domain names are theoretically available—anyone can determine that and an expert is not required.**

Helpfulness to the jury is the touchstone of admissibility for expert opinion. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Expert opinion that merely recites facts the jury could observe is not helpful and therefore not admissible. *Id.* at 377. Expert opinion that might supplant a jury's independent exercise of common sense is especially harmful. *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)); *Persinger v. Norfolk & Western Railway Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) (testimony about how difficult it is to lift heavy things, even couched in scientific terms, is not helpful and is thus excludable).

Here, an expert opinion is not required for the jury to know that, for example, the character combination "z1-3axqp-r.com" or other undesirable names are available. As an example, Simpson notes that ███████████████████████████████████ ███████████ (Supplemental Simpson Report at Ex. 1.) This does not require expert testimony: a list of available obtuse words could be presented through any witness.

**C.     The Simpson Report is not reliable because it hypothesizes without any scientific basis.**

Simpson purports to ███████████████████████████████████
███████████████████████████████████████████████████

---

[3] An Amalekite is an archaic term referring to a member of the tribe of Amalek. http://dictionary.reference.com/browse/amalekite

8

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is completely made up and based on no accepted scientific principles.

Several factors assist in guiding the Court's assessment of whether the reasoning or methodology underlying testimony is scientifically valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Cooper*, 259 F.3d at 199, (quoting *Daubert*, 509 U.S. at 592–93). These factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys great general acceptance within a relevant scientific community." *Id.* (citing *Daubert*, 509 U.S. at 592–94); *see also CSL, L.L.C. v. Imperial Bldg. Products, Inc.*, No. 05-15931, 2006 WL 679891, at *1 (9th Cir. 2006)(upholding the exclusion of novel scientific evidence in light of the "absence of peer review, the lack of general acceptance in the scientific community, and the absence of a known rate of error".); *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*, No. CIV.A. 3:08CV573, 2009 WL 5876245, at *3 (E.D. Va. July 23, 2009)(excluding novel "calculation of confusion" damages theory because it was not generally accepted.)

Simpson's novel method fails all these checks. It is completely untested and has not been subjected to peer review. There are no standards for evaluating the error rate, and Simpson's method is unknown and therefore not generally accepted within the domain-name or any other relevant community. (Frakes Report ¶¶ 34–47). Making it even more likely that Simpson's method is unreliable, Simpson invented it for this litigation and it is not part of his regular research. And worse, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9



███ Simpson Report ¶ 13(d).) But this figure is misleading because ███

███ (Frakes Report ¶¶ 43–45.) ███

███

(Supplemental Simpson Report ¶¶ 24–28.) But this is irrelevant: XYZ's statements were about the number of domain name checks that came up as unavailable, not the total number of unavailable domains. Intentionally ignoring this data makes the Simpson Report unreliable.

Finally, Simpson includes ███

███. (Supplemental Simpson Report ¶¶ 18–19.) But this data does not need an expert to introduce it, and it does not relate to Simpson's broader, completely untested methods for determining domain-name availability.

## IV.  Conclusion

Simpson's testimony is irrelevant because there is no dispute that there are theoretically billions of <.com> domain names available. The jury does not need Simpson's opinion to come to that conclusion. The question in this case is whether XYZ's opinion that the "good" domain names are gone constitutes false advertising. Simpson attempts to address this through a method he invented solely for this litigation. His method is unreliable because he is the first person to ever have used it, and thus it cannot be tested. Simpson also conceded in deposition that ███

███ So his method cannot be applied equally for any given domain-name consumer.

Simpson's testimony does not satisfy the standard for expert opinions and is inadmissible. The Court should exclude Simpson from testifying as an expert.

10

| | |
|---|---|
| Dated August 28, 2015 | /s/ Timothy J. Battle |
| | Timothy J. Battle |
| | Timothy J. Battle Law Offices |
| | VSB# 18538 |
| | 524 King Street |
| | Alexandria, VA 22320-4593 |
| | (703) 836-1216 Tel |
| | (703) 549-3335 Fax |
| | *tjbattle@verizon.net* |
| | |
| | Derek A. Newman, admitted pro hac vice |
| | Derek Linke, admitted pro hac vice |
| | Jason Sykes, admitted pro hac vice |
| | Sophy Tabandeh, admitted pro hac vice |
| | 100 Wilshire Boulevard, Suite 940 |
| | Santa Monica, CA 90401 |
| | (310) 359-8200 Tel |
| | (310) 359-8190 Fax |
| | *dn@newmanlaw.com* |
| | *linke@newmanlaw.com* |
| | *jason@newmanlaw.com* |
| | *sophy@newmanlaw.com* |
| | |
| | *Counsel for Defendants XYZ.com, LLC and Daniel Negari* |

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Kevin William Weigand
Taylor Sumner Chapman
Venable LLP (Vienna)
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
*nicholas.depalma@venable.com*
*rkmiller@venable.com*
*kwweigand@venable.com*
*tschapman@venable.com*

/s/ Timothy J. Battle
Timothy J. Battle (VSB No. 18538)
Timothy J. Battle Law Offices
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for XYZ.com and Daniel Negari*