IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Verisign, Inc.,

        Plaintiff,

  v.

XYZ.com, LLC and Daniel Negari,

        Defendants.

Case No. 1:14-cv-01749 CMH-MSN

**DEFENDANTS' REPLY IN SUPPORT OF
MOTIONS TO EXCLUDE EXPERTS (ECF 232, 233, 234, 235)**

## Table of Contents

I. Kindler's testimony is neither relevant nor reliable because ███████████████ ███████████████████████████████████████ ███████████████████████████ .................................................................. 1

    A. Kindler's lost-profits opinion is not relevant because ███████████████ ███████████████████████████████████████ ███████████████ .................................................. 1

    B. Kindler's lost-profits opinion is also unreliable because ███████████ ███████████████████████████████ ███████████████████████████████████████ . ..................... 1

    C. Kindler's disgorgement analysis is unreliable because ███████████████ ███████████████████████████ .................................................. 3

    D. Kindler's testimony about corrective advertising is not relevant because, as Verisign now concedes, ███████████████████████ ███████████████████████████ . ................................................. 3

II. Simpson's testimony should be excluded because he ██████████████████ ███████████████████████████████████████████ . ................... 5

III. Berenblut's testimony is irrelevant ███████████████████████████████ ███████████████████████████ . ..................................................................... 6

    A. Berenblut's testimony is irrelevant because ███ ███████████████████ ███████████████████████████████ ██████ ......................... 6

    B. Berenblut's methodological flaws render his opinion inadmissible under Rule 702. ...... 8

IV. Mazis's testimony is irrelevant and unreliable because he bases his conclusions on speculation rather than survey results and the methodology used is fatally flawed. ...................... 10

    A. Mazis's testimony should be excluded as irrelevant speculation because he did not test his ultimate conclusion that respondents found a meaningful distinction between paid or unpaid domain-name registrations. ....................................................... 10

    B. The Mazis survey is not relevant because it forces respondents to focus on the number of registrations when the actual Blog Post expressly states that other data is more important. ....................................................................................................................... 11

    C. The Court should exclude the Mazis survey because its methodology is fatally flawed rendering it unreliable. ....................................................................................... 12

V. Conclusion ............................................................................................................................ 14

**I. Kindler's testimony is neither relevant nor reliable because her opinion is** ███████████████████████████████████████████████████

**A. Kindler's lost-profits opinion is not relevant because it is based on a calculation of XYZ's market share and does not measure whether Verisign lost sales as a result of the alleged false advertising.**

Verisign contends Kindler's testimony is relevant to lost profits. But a false-advertising plaintiff seeking to recover lost profits must prove that it actually lost sales as a direct result of the alleged false advertising. *See Pharmanetics, Inc. v. Aventis Pharm., Inc.*, No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *12 (E.D.N.C. May 4, 2005) *aff'd*, 182 F. App'x 267 (4th Cir. 2006).

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. That is irrelevant to the actual issue in dispute: the extent of Verisign's lost profits occurring as a "direct result" of the alleged false advertising. *See Pharmanetics*, 2005 WL 6000369, *12.

**B. Kindler's lost-profits opinion is also unreliable because she** ████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Verisign dismisses concerns about the reliability of Kindler's lost-profits testimony, arguing that ████████████████████████████████████████ (Opp. at 27 (quotation omitted).) Verisign contends that Kindler's analysis is reliable because it "undoubtedly considered other factors"—namely, ████████████████████████ ████████████████████████████████████████████████. (*See id.* at 26.) But Verisign neither disputes nor attempts to explain that the factors Kindler ignored include

1

industry standard considerations for [REDACTED]

First, Verisign does not dispute that industry standard for lost-profits analysis required evaluation of: [REDACTED]. Nor does Verisign dispute whether Kindler evaluated these industry-standard factors—which she did not.

Kindler simply attributes [REDACTED]. This is insufficient. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001)("[I]f an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony"); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir. 1999)(excluding damages report because it failed to account for all possible factors leading to a decline in sales.); *Turfgrass Grp., Inc. v. Carolina Fresh Farms, Inc.*, No. 5:10-CV-00849-JMC, 2013 WL 1010383, at *3 (D.S.C. Mar. 14, 2013) *aff'd*, 588 F. App'x 992 (Fed. Cir. 2014)(failure to consider relevant factors and addition of invented factor without any peer review made damages report unreliable.).

Because Kindler's testimony as an expert has "the potential to be both powerful and quite misleading," *Cooper*, 259 F.3d at 199 (quotations omitted), she should not be permitted to testify about an opinion formed without considering her profession's standard factors for lost-profits analyses.

Second, Verisign does not offer any explanation as to why Kindler was justified in ignoring [REDACTED]. Verisign publicly explained to investors that the [REDACTED]. (Frakes Report ¶ 59.) Verisign has also admitted that the introduction of new competition in the form of new TLDs could have a material effect on its business. (Hewitt Report ¶ 60, citing Verisign, Inc. SEC Form 10-K for the period ending

December 31, 2013 at 44.) Kindler disregards Verisign's explanation entirely by simply assuming that ███████████████████████████████████████████████████████ ███████.

### C. Kindler's disgorgement analysis is unreliable because ██████████████ ██████████████████████████████████████.

Kindler's disgorgement analysis is unreliable because ████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142-43 (4th Cir. 1994) (excluding unreliable expert opinion calculating construction delays based on an assumption that sand was not available because there was no evidence that the assumption was true).

Although Kindler █████████████████████████████████████████████ ███████████████████████████████████████████. (*See* Kindler Report ¶ 31.) For example, Kindler admits that ███████████████████████████████████████ ██████████████████████████████████ (ECF 233 at 6.) She did not evaluate ████████████████████████████████████████████████████. (*Id.*) She did not consider ███████████████████████████████████████████████ ████████████████████████████. (*Id.* at 7, 8; Lindenthal Report ¶ 35.) Perhaps most importantly, Verisign does not attempt to explain why Kindler's testimony on this subject could be considered reliable when Kindler has admitted that she ████████████████████ ██████████████████ ECF 233 at 6.)

### D. Kindler's testimony about corrective advertising is not relevant because, as Verisign now concedes, ████████████████████████████████████ ██████████████████ which is something the jury can do itself.

Verisign abandoned Kindler's testimony about corrective advertising except to the extent she sought to "verify" Verisign's corrective advertising costs. (Opp. at 29.) Verisign now contends that ████████████████████████████████████████████████████████

3

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See id.*) For that reason, Kindler should be barred from offering testimony as to those issues.

Kindler should also be excluded from offering expert testimony to "verify" Verisign's claimed advertising costs. XYZ's Motion accurately characterized Kindler's proposed testimony on this subject as merely ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (ECF 233 at 14.) Verisign does not dispute that.

Nor does it explain why expert testimony is necessary to relay data about the amounts of Verisign's claimed costs. *See Capital Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 672 (W.D. Va. 2013) ("An expert cannot simply parrot his client's findings or calculations and then pass that data off as his own expert opinion."); *see also Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (expert testimony that does not rely on specialized knowledge inadmissible). Verisign contends that Kindler should be allowed to rely on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Opp. at 30.) That same information is what Verisign should provide directly to the jury. No expert is necessary, and having an expert economist recite Verisign's information is likely to prejudice the jury.

Verisign mistakenly claims that XYZ's arguments about the relevance of Kindler's expert testimony are the same as those rejected in *Children's Med. Ctr. of Dallas v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, No. 3-04-CV-2436-BD, 2006 WL 616000, at *7 (N.D. Tex. Mar. 10, 2006). But that case did not involve a challenge to the relevance of expert testimony that merely stated claimed corrective-advertising costs. Rather, that decision rejected a challenge to the reliability of the methods used by an economist to estimate claimed corrective advertising damages. *Id.* In contrast, Kindler seeks to offer expert testimony to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—which is not relevant because the jury can verify Verisign's claimed corrective-advertising expenses for itself.

4

## II. Simpson's testimony should be excluded because he ████████████████ ████████████████████████████████

In its opposition, Verisign contends that Simpson's opinion demonstrates that ████████ ████████████████████████████████████████████ (Opp. at 19.) But to form his opinion that ████████████████████████████████████████████ ████████████████ *Daubert* provides that this this type of junk science is not admissible.

████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████ Since the radio test leads to inconsistent results as it is applied with different groups of people, it does not qualify as a reliable method under *Daubert*.

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████.

Verisign claims that Simpson used a ████████████████████████ ████████████████████████████████████████████ (Opp. at p. 21.) This

5

argument is misleading. As an example, Verisign cites the existence of a dictionary as a component that has been tested by time. But while dictionaries, Google's ngram database, and domain names themselves have been developed over the years, ███████████████████ ███████████████████████████████████████

The Court should exclude all Simpson's opinions and conclusions that are based on the ███████████████████ These conclusions include Simpson's opinion that ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ And most importantly, the Court should exclude Simpson's ultimate conclusion that there are ████████████████████ ████████████████████████████████████

### III. Berenblut's testimony is irrelevant because ████████████████████ ███████████████████████.

While Berenblut's opinions about ████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████ This is a false advertising case. ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████

#### A. Berenblut's testimony is irrelevant because ████████████████████ ████████████████████████████████████████████████████.

Berenblut's opinion is not relevant in a *false advertising* context unless one or more of XYZ's public statements claimed (or at least implied) that ████████████████. XYZ never did this. It is a privately-held company ████████████████████████████.[1]

---

[1] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

6

Case 1:14-cv-01749-CMH-MSN Document 289 Filed 09/17/15 Page 9 of 19 PageID# 4733



████ Verisign must present evidence in support of the inference. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("But if a 'plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers.'" (citing *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992))); *see also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 14 (7th Cir. 1992).). Verisign has no such evidence.

████████, ████████████████████████████████████████ That alone is sufficient to exclude his testimony because his opinion has no bearing on the truth or falsity of XYZ's claims. *See PBM Products, LLC v. Mead Johnson Nutrition Co.*, No. 3:09-CV-269, 2010 WL 56072, at *1–2 (E.D. Va. Jan. 4, 2010) *aff'd sub nom. PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011); *see also Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001).

████████████████████████████████████████████████

For example, in *S.E.C. v. Johnson*, 525 F. Supp. 2d 70 (D.D.C. 2007), the SEC alleged that executives at a publicly traded company knowingly deviated from GAAP on several official forms filed under penalty of perjury. GAAP governs financial reports in publicly traded companies, so GAAP was an issue in that case. Similarly, in *Heller Healthcare Fin., Inc. v. Boyes*, No. 300CV1335D, 2002 WL 1558340 (N.D. Tex. July 15, 2002), the underlying allegation of

7

negligent misrepresentation to obtain a loan rested on the accuracy of the defendants' GAAP accounting.

Verisign does not allege securities fraud or accounting malfeasance. This is a false-advertising case. Courts in these circumstances exclude GAAP-compliance allegations and evidence. *See In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 383 at n.23 (D.N.J. 2010) (finding allegations as to GAAP irrelevant to plaintiff's substantive falsity claims because they were distinct from claims that defendant did not use GAAP); *In re MoneyGram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947, 971 at n.22 (D. Minn. 2009) (same); *see also AMERCO and Subsidiaries v. C. I. R.*, 96 T.C. 18, 35-36 (1991) (excluding expert testimony on GAAP because it was irrelevant to tax issue before the court); *Louisiana Health Care Self Ins. Fund v. U.S.*, No. CIV.A. 12-766, 2014 WL 4828940 at *2-4 (M.D. La. Sept. 29, 2014) (recognizing "serious questions about the relevance of [the expert's] testimony and the reliability thereof" where expert offered GAAP-compliance testimony but had no ability to link it to the tax law issues driving the case).

Because Verisign has no evidence that . And Berenblut's opinion as to . Thus, the Court should exclude Berenblut's testimony. *See Garlinger*, 16 F. App'x at 235 (connection between expert's testimony and pertinent inquiry is a precondition to admissibility).

### B. Berenblut's methodological flaws render his opinion inadmissible under Rule 702.

Berenblut's reliance on the wrong GAAP standards and sloppy application of basic accounting rules renders his opinion unreliable. *See Cooper*, 259 F.3d at 199 (warning that expert testimony can "be both powerful and misleading")*; see also Capital Concepts*, 936 F. Supp. 2d at 668 (an expert report that ignores or misapplies accounting standards is inadmissible).

Berenblut relied on the wrong GAAP standard in his initial report to support his opinions about the propriety of the Network Solutions transaction. He repeatedly cited to, discussed, and

8

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████. Verisign's argument lacks citation to law or reason. Of course, an expert should be able to identify and apply the correct standards, and Berenblut's failure to meet this basic threshold means his opinion is unreliable.

Verisign suggests Berenblut's error is harmless. But if Berenblut applied the ██████ ███████████████████████████████████████████████████████ ████████████████████████████████████Fair value could be measured by contemporaneous or subsequent transactions. █████████████████████████ ███████████████████████████████████████████████ In truth, those transactions are highly relevant and establish that ███████████████████ ████████████████████████ (*See* Hewitt Report at ¶¶ 98-107; *see also* ¶¶ 92-97 (██████ █████████████████████████████████.)

Even assuming the value of registrations is a question of weight, Berenblut's critical and highly prejudicial error in using the wrong standard demonstrates his failure to apply "the principles and methods reliably to the facts of the case." The Court should exclude his testimony under Rule 702.

Verisign sued XYZ for false advertising. Now through Berenblut, Verisign attempts to convict XYZ of ████████████████████, essentially a securities-fraud allegation. That charge has no merit and, more importantly, it is not relevant to proving or disproving Verisign's sole underlying claim. XYZ respectfully requests the Court exclude Berenblut's irrelevant and unreliable opinions.

### IV. Mazis's testimony is irrelevant and unreliable because he bases his conclusions on speculation rather than survey results and the methodology used is fatally flawed.

#### A. Mazis's testimony should be excluded as irrelevant speculation because he did not test his ultimate conclusion that respondents found a meaningful distinction between paid or unpaid domain-name registrations.

In its opposition, Verisign refers to statements that it attributes to Defendants referring to the number of *sold* registrations and sales in general. Those statements are not relevant to Mazis's opinion as they do not appear in the tested Blog Post.

The only statement Mazis tested was in the Blog Post entitled ".XYZ the most used new gTLD - boooooom!" The Blog Post discussed that consumers should not look at registration numbers alone to determine success, but rather look to other metrics. (*See* Mazis Report, Ex. D.) Unlike the National Advertising Division case *In re: Worldwide Sport Nutritional Supplements, Inc.* Case. No. 4524 (July 7, 2006), XYZ is not citing *sales* data to substantiate a "Number One" sales claim. Rather, as evidenced by the title of the Blog Post, XYZ maintains that with the most active websites, it is the most *used* new gTLD. (*See* Mazis Report, Ex. D.)

The Mazis survey fails to establish that consumers were *misled* by not understanding the "vast majority" of domain names given for free. (*See* Poret Report 1–3.) In his supplemental report, Mazis attempts to rectify this fatal flaw in his survey by speculating about consumers' prior beliefs affecting their perception of the Blog Post. (*See* Supplemental Mazis Report ¶¶ 2–6.) Particularly, Mazis opines that consumers who registered a domain name "likely paid for their registrations, and consumers who expect to register a domain name (also respondents to my survey) understand that they need to pay to register a domain name. Therefore, respondents' prior beliefs, before they took my survey, would be that consumers or businesses must pay a fee to register a domain name." (*Id.* at ¶ 3.) Mazis concludes that because the "default value is that the domain name registration has been paid for" in the absence of being informed that most registrations were given away for free, survey respondents are likely to be misled. (*Id.* at ¶ 5.)

But Mazis is not qualified to offer testimony about the domain-name industry, and what respondents expect when reading about domain-name registrations. His personal belief that

10

registrants typically pay for domain names is unsupported. Although Mazis could have, he never asked respondents whether they "paid" for a domain name. That was not a qualification.

Instead, Mazis asked respondents whether they *registered* a domain name in the past two years. (*See* Mazis Report, Question S9.) Mazis's opinion that consumers were misled due to their prior belief should be excluded because he never tested whether respondents in fact had this prior belief. His opinion is based on assumption and should be rejected as speculative. *See SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 635 (E.D.N.C. 2013) (citing *Tyger Constr. Co*, 29 F.3d at 142 ("[A]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.")

Similarly, Mazis should not be allowed to testify about whether the statement is likely to influence the purchasing decision. Mazis concedes that he did not test materiality. (Exhibit B to Defendants' Reply in Support of Motion to Exclude Experts, Deposition of Michael Mazis (hereafter, "Mazis Dep.") at 191:22–24, 192:17–20.) Yet in his supplemental report, Mazis opines about materiality. (*See* Supplemental Mazis Report ¶¶ 16–19.)

Misinterpreting Defendants' argument, Verisign cites to cases that stand for the proposition that materiality need not be proven by a survey. (Opp. at 9–10.) That is not the point. Rather, since Mazis did not test for materiality or establish it, he should not be allowed to testify about materiality. Mazis's personal beliefs on the topic are not relevant because he is not an expert in domain-name consumer behavior. Mazis's speculative assumptions could only mislead and confuse the jury. *See Tyger Constr.*, 29 F.3d at 142–44. Verisign states that it "can prove materiality based on other evidence". (Opp. at 10.) This other evidence—rather than Mazis's speculative opinion—will assist the jury. Mazis's opinion cannot be helpful, only prejudicial.

> **B.** **The Mazis survey is not relevant because it forces respondents to focus on the number of registrations when the actual Blog Post expressly states that other data is more important.**

The authentic Blog Post was about defining "success" by looking beyond registration numbers. (*See* Mazis Report, Ex. D). Readers exposed to the real Blog Post, those in the test

11

group, learned that registration-number data is "only one piece of the puzzle …. Utilization and adoption is key." (*Id.*) Mazis concedes the "main point" of the actual Blog Post is about utilization and adoption, not about the number of registrations. (Mazis Dep. at 114:11–16.) Yet Mazis disregards the entire message of the Blog Post by forcing respondents to focus solely on the registrations-number statement when testing for the communicated message. In his control group, Mazis even changed the title to ".XYZ gives away domain names for free - boooooom!"

By presenting respondents with the registration-number statement alone in isolation—when the Blog Post expressly states that consumers should look at other data—Mazis materially altered the message. Mazis's alteration renders his results valueless and irrelevant. Any limited relevance is outweighed by the potential for unfair prejudice and the likelihood that it will confuse of mislead the jury.

## C. The Court should exclude the Mazis survey because its methodology is fatally flawed rendering it unreliable.

In exercising its "gatekeeping function," a court may exclude seriously flawed survey data from being admitted into evidence. 6 McCarthy on Trademarks and Unfair Competition § 32:170 (4th ed.). Here, the Mazis survey is fatally flawed and should be excluded because its results are exclusively based on responses to leading, suggestive closed-ended questions—without a control measure. *See Millennium Labs. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 601 (excluding surveys as unreliable where it lacked a proper control); *see also Nat'l Football League Properties, Inc. v. ProStyle, Inc.*, 57 F. Supp. 2d 665, 668–670 (survey excluded from evidence because, among other things, survey failed to have a control).

Contrary to Verisign's assertion, the responses to the open-ended questions do not suggest that the Blog Post communicated any implied message. None of the test group respondents, those exposed to the authentic Blog Post, stated that the Blog Post indicated anything about purchases. While less than a quarter of the test group respondents understood the Blog Post as communicating a message about "popularity" or "success," these descriptors are too vague to indicate a belief about a number of *purchased* registrations. Rather, they indicate respondents

12

understood the main message—that success should be measured by metrics other than registration numbers.

Mazis even concedes that the terms "popular" and "success" are subjective. (Mazis Dep. at 130:23–131:1.) Yet without support, Verisign asserts that popularity means demand and success is defined by actual sales. Other than two—or 0.7%—of the respondents in the test group,[2] no verbatim responses in connection with demand and success mention sales. And "success" does not refer to sales from registrations, especially considering the Blog Post's thesis was about how success is based on factors other than registration numbers.

Since the responses to the open-ended questions do not communicate a message about the number of purchased domain names, Mazis testified that his opinion is "entirely based" on the responses to the closed-ended questions. (Mazis Dep. at 191:9–21.) Why then did he ask the open-ended questions?

In its opposition, Verisign cites a litany of cases that purport to accept the use of the closed-ended questions. (Opp. at 8.) But Defendants do not dispute the use of properly-drafted closed-ended questions in surveys. Rather, the issue is whether the wording of the closed-ended questions in the Mazis survey makes them impermissibly leading and suggestive. *See LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 954 (N.D. Ill. 2009) ("The issue is whether a given question is leading—'the wording of a question, open-ended or closed-ended, can be leading, and the degree of suggestiveness of each question must be considered in evaluating the objectivity of a survey.'"); *see also Johnson & Johnson-Merck Consumer Pharm. Co.*, 19 F.3d at 134 ("A survey is not credible if it relies on leading questions which are 'inherently suggestive and invite guessing by those who did not get any clear message at all.") (internal quotations omitted).

---

[2] As mentioned in Defendants' moving papers (ECF 232 at 5, n.4), Dr. Poret notes that two answers potentially suggest a belief that the Blog Post referred to the number of sold domain names. But the validity of one of these responses is undermined since as part of the same answer, one respondent indicated "frankly I am too tired to make sense out of [the Blog Post]." (Poret Report, p. 13.)

13

The closed-ended questions are misleading because they suggest the possibility that the Blog Post communicates something about the number of domain names "purchased" and merely require that the respondent answer affirmatively. (Poret Report, p. 17.) And more bedeviling is Mazis's failure to use an adequate control to account for the tendency of the leading questions to induce respondents to answer affirmatively even if the Blog Post was not misleading. *Id.* at 19; *Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*, No. 06 CIV. 0034 (PAC), 2006 WL 2588002, *23 (S.D.N.Y. Sept. 6, 2006) (the use of control mitigates the suggestive effect of closed-ended questions).

Mazis should have used a control that did not communicate anything about the number of purchased domain names. (Poret Report, p. 28.) Even though Mazis thinks "that [it] would be good to do that," he did not do so. (Mazis Dep. at 190:19–191:4.) Instead, he did the opposite and showed the control group an altered Blog Post which emphasized the number of *purchased* domain names. And unsurprisingly, respondents played back what they were shown in the stimulus. (*See* Mazis Dep. at 180:13–18 "… obviously, the control said something about purchasing…So, obviously, in the control group, a lot of people are going to say it communicated something about purchasing…") Therefore, the control is useless and did not assess the biasing effect of the closed-ended questions. (Poret Report, p. 28.)

The Court should exclude Mazis's opinion regarding his survey results because the survey employed biased and misleading questions with no adequate control to assess whether the wording of the questions generated the response desired by Verisign.

## V. Conclusion

Kindler's damages opinion is unreliable and irrelevant. Her only analysis was that  She assumed simply that correlation proves causation—the logical fallacy in that two events occurring together are taken to have a cause-and-effect relationship. Kindler also

14

Simpson's opinion is unreliable because he uses the ███████████ He admits with the test ████████████████████████████████████████ ███ Since the test is not peer reviewed or recognized, and cannot be applied consistently, his testimony would provide no value. Nor is Simpson's ████████████ ████████████████████████████

Berenblut's opinion is irrelevant because he ███████████ as if this were a securities fraud action. ████████████████████████████████████████ ████████████████████████████████.

The Mazis survey is unreliable because he did not use a control for his leading closed-ended questions, even though he admitted "[it] would be good to do that." The Mazis survey is also unreliable because he took a single sentence about registration numbers out of context in framing his closed-ended question. The lack of reliability in the closed-ended question is illustrated by responses to the open-ended question, which indicated consumers did not equate "registrations" with "purchases." Finally, Mazis's opinion about whether consumers were misled, and whether the statement was material, is based entirely on speculation—rendering his opinion irrelevant.

The Court should exclude all four experts.

Dated September 17, 2015

/s/ Timothy J. Battle
Timothy J. Battle
Timothy J. Battle Law Offices
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net

Derek A. Newman, admitted *pro hac vice*
Jason B. Sykes, admitted *pro hac vice*
Derek Linke, admitted *pro hac vice*

15

Sophy J. Tabandeh, admitted *pro hac vice*
NEWMAN DU WORS LLP
100 Wilshire Blvd., Suite 940
Santa Monica, CA 90401
(310) 359-8200 Tel
(310) 359-8190 Fax
dn@nemanlaw.com

*Counsel for Defendants XYZ.com LLC and Daniel Negari*

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2015 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NED) to the following:

Nicholas Martin DePalma
Randall Karl Miller
Kevin William Weigand
Taylor Sumner Chapman
Venable LLP (Vienna)
8010 Towers Crescent Drive
Suite 300
Tysons Corner, VA 22182
*nicholas.depalma@venable.com*
*rkmiller@venable.com*
*kwweigand@venable.com*
*tschapman@venable.com*

/s/ Timothy J. Battle  _
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for Defendants XYZ.com LLC and Daniel Negari*