**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Verisign, Inc., | |
| Plaintiff, | Case No. 1:14-cv-01749 CMH-MSN |
| v. | |
| XYZ.com, LLC and Daniel Negari, | |
| Defendants. | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM IN SUPPORT**

# Table of Contents

I.    Introduction ................................................................................................................. 1

II.    Statement of Undisputed Facts .................................................................................. 2

     A.    Verisign and XYZ compete in the domain-name market ............................... 2

     ████    ██████████████████████████████████████████████████████

     C.    Verisign alleges XYZ made false statements. ............................................... 5

     D.    Verisign conducted a survey to find out whether consumers realized XYZ's registrations included some domain names that were given away for free. ................. 7

     ████    ██████████████████████████████████████████████████████████

     ████    ██████████████████████████████████████████████████████████

III.    Legal Standards .................................................................................................... 10

IV.    Discussion ............................................................................................................ 12

     A.    None of the statements were made in "commercial advertising or promotion." ...... 12

     B.    Verisign lacks evidence that the XYZ statements proximately caused consumers to withhold trade from Verisign, and no presumption of irreparable harm exists. ...... 16

     C.    Verisign lacks evidence that XYZ made "a false or misleading description of fact or representation of fact." ...... 21

     D.    Verisign cannot show that any XYZ statement was material to customer purchasing decisions. ...... 26

     E.    Verisign lacks evidence that customers were deceived. ............................. 27

     F.    The Court can grant partial summary judgment. ...................................... 27

V.    Conclusion ........................................................................................................... 30

# Table of Authorities

## Cases

*Agency Dev., Inc. v. Med. Am. Ins. Co.*,
310 F. Supp. 2d 538 (W.D.N.Y. 2004) ...................................................................23

*Am. Italian Pasta Co. v. New World Pasta Co.*,
371 F.3d 387 (8th Cir. 2004) ............................................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 11

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*,
378 Fed. App'x 652 (9th Cir. 2010) .....................................................................12

*Applied Med. Res. Corp. v. Steuer*,
527 F. Supp. 2d 489 (E.D. Va. 2007) ...................................................................13

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*,
984 F. Supp. 768 (S.D.N.Y. 1997) ...................................................................... 24

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
204 F.3d 683 (6th Cir. 2000) .............................................................................. 20

*Boule v. Hutton*,
70 F. Supp. 2d 37 (S.D.N.Y. 1999) ................................................................ 15, 16

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
627 F. Supp. 2d 384 (D.N.J. 2009) ..................................................................... 20

*C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*,
131 F.3d 430 (4th Cir. 1997) ...............................................................................23

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
284 F.3d 302 (1st Cir. 2002) .............................................................................. 26

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993) .................................................................................23

*Cavalier Tel., LLC v. Verizon Va. Inc.*,
208 F. Supp. 2d 608 (E.D. Va. 2002) ..................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................... 10, 11

*Coca–Cola Co. v. Tropicana Prods., Inc.*,
690 F.2d 312 (2d Cir. 1982) ................................................................................18

*Design Res., Inc. v. Leather Indus. of Am.*,
  789 F.3d 495 (4th Cir. 2015) ............................................................ passim

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 ...................................................................................... 17

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ................................................................. 13

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
  765 F.3d 205 (3d Cir. 2014) .......................................................... 17, 18

*Foxtrap, Inc. v. Foxtrap, Inc.*,
  671 F.2d 636 (D.C. Cir. 1982) ........................................................... 20

*Gmurzynska v. Hutton*,
  355 F.3d 206 (2d Cir. 2004) ............................................................... 15

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ........................................................... 17

*Imagine Medispa, LLC v. Transformations, Inc.*,
  999 F. Supp. 2d 873 (S.D.W. Va. 2014) ........................................22, 23

*Int'l Paint Co. v. Grow Grp., Inc.*,
  648 F. Supp. 729 (S.D.N.Y. 1986) ..................................................... 24

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) ......................................................... 26

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*,
  628 F. Supp. 2d 312 (E.D.N.Y. 2009) ................................................ 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)............................................................12, 16, 19

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
  263 F.3d 447 (5th Cir. 2001) ............................................................. 19

*Lundgren v. AmeriStar Credit Solutions, Inc.*,
  40 F. Supp. 3d 543 (W.D. Pa. 2014) .................................................. 18

*MDM Grp. Assocs., Inc. v. Emerald Isle Realty, Inc.*,
  No. 2:07-CV-48-D, 2008 WL 2641271 (E.D.N.C. July 1, 2008).............23

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
  924 F. Supp. 2d 594 (D. Md. 2013) ................................................... 11

*Mobius Mgmt. Sys. v. Fourth Dimension Software*,
   880 F. Supp. 1005 (S.D.N.Y. 1994) .........................................................................14

*Mylan Labs., Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) ........................................................................... 24, 28

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ................................................................................ 26

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*,
   290 F.3d 578 (3d Cir. 2002) ................................................................................ 24

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
   69 F. Supp. 3d 175 (D.D.C. 2014) .......................................................................18

*Pandora Jewelry, LLC v. Chamilia, LLC*,
   No. CIV. CCB-06-3041, 2008 WL 4533902 (D. Md. Sept. 30, 2008) ......................21

*PBM Prods., LLC v. Mead Johnson & Co.*,
   639 F.3d 111 (4th Cir. 2011) ........................................................................ passim

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
   227 F.3d 489 (5th Cir. 2000) ....................................................................... 22, 26

*Reynolds Consumer Prods., Inc. v. Handi-Foil Corp.*,
   No. 13-CV-214, 2014 WL 794277 (E.D. Va. Feb. 27, 2014) ...................................13

*Scotts Co. v. United Indus. Corp.*,
   315 F.3d 264 (4th Cir. 2002) ............................................................ 17, 24, 26, 27

*Seven-Up Co. v. Coca-Cola Co.*,
   86 F.3d 1379 (5th Cir. 1996) .....................................................................14, 15, 18

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
   299 F. Supp. 2d 565 (E.D. Va. 2004) ............................................................. 13, 14

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................17

**Other Authorities**

15 U.S.C. § 1125(a)(1)(B) ..........................................................................................12

Fed. R. Civ. P. 56(a) ............................................................................................10, 27

Fed. R. Civ. P. 56(g) ..................................................................................................27

J. Thomas McCarthy, 5 McCarthy on Trademarks §27:71 .........................................15

## I.    Introduction

Plaintiff Verisign, Inc. and Defendant XYZ.com LLC sell domain-name registrations. The market is massive. Domain names identify every website on the Internet, with over 294 million registered. Verisign's <.com> domain extension is the undisputed market leader, with about 120-million registrations. Until recently, Verisign had almost no competition.

But last year, almost 700 new competitors—offering new domain extensions—entered the market. At that time, XYZ introduced the new <.xyz> domain extension. It quickly achieved several-hundred-thousand registrations, and today has over a million.

Verisign sues XYZ for false advertising over statements in ███████████████████ ███████████████████████████████████████. Verisign also takes issue with XYZ's website statements disclosing its <.xyz> registration numbers, which were verifiable on public databases. Verisign believes that because ███████████████████████████████ ███████████████████████████████ Verisign also sues XYZ for saying "all of the good real estate" in <.com> is taken and 99% of good <.com> domain names are unavailable.

But in a Lanham Act false-advertising lawsuit, the plaintiff must make a threshold showing that a false claim was made in "commercial advertising." This requires the claim be "widely disseminated to the relevant purchasing public"—the claim must reach enough actual potential buyers to have an impact. Verisign lacks evidence that any XYZ statement reached a fraction of a percent of the worldwide millions of domain name consumers.

Another threshold requirement for false advertising is evidence that the defendant's alleged false claim proximately caused injury to the plaintiff. Verisign admits <.com> sales continued to *increase* after XYZ's statements. So despite alleging damage in its complaint to <.com>, ██████████████████████████████████████████████████ ██████ ██████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████

Even if any XYZ statement was in a commercial advertisement—and even if Verisign could show any statement caused it injury—Verisign still must establish the statement is false or deceptive, and material to a purchasing decision. But XYZ's statements are opinion or puffery, not factual in nature, or verifiably true. Verisign lacks sufficient evidence that any XYZ statement deceived consumers. Finally, Verisign lacks evidence that any consumer relied on any XYZ statement in making a domain-name purchase.

On this record the Court should, as a matter of law, grant summary judgment to dismiss this case, or partial summary judgment to narrow issues at trial.

## II.    Statement of Undisputed Facts

### A.    Verisign and XYZ compete in the domain-name market.

1.    Verisign and XYZ sell Internet domain-name registrations. (*See* Ex. E at 22:3–5, 27:22–28:2; *see also* Ex. A at 4, 6, 23, 25, 26; Ex. B at 25:22–26:2.)

2.    The string of characters in a domain name following the last dot is called the top-level domain or "**TLD**."[1] (Ex. B at 11:17–12:5.) Each TLD is operated by a "**registry**." (Ex. C at 263:8–20.)

3.    For more than 15 years, Verisign has been the registry operating the <.com> and <.net> TLDs. (Complaint (Dkt. 1) ("Compl.") ¶ 11.)

4.    The person who registers, and essentially owns, a domain name is called the "**registrant**." (Ex. D at 29:13–15; Ex. E at 22:1–2; Ex. C at 80:16–17.)

5.    Persons acquire domain names from a "**registrar**." (Ex. D at 29:13–15.) A registrar is an intermediary—a broker between the registry (like Verisign) and the registrant (who ultimately owns the domain name). (Ex. C at 95:19–21, 96:2–4.)

6.    Even though registrants acquire domain names from registrars, the registrants are customers of the registry. (*See id.* at 262:17–263:1.) A consumer or business with a <.com> domain name is a Verisign customer. (*Id.*)

[1] For example, in <amazon.com>, the TLD is <.com>; in <vaed.uscourts.gov>, the TLD is <.gov>.

7.    When a domain name is created it becomes a "**registration**" and is posted to a "registry database." (Ex. C at 76:21–77:6, 77:10–13.) A subset of the registry database—listing most, but not all, domain names in a TLD—is the "**zone file**." (*Id.* at 77:7–9; Ex. B at 12:18–20, 34:8–12; Ex. I at 51:8–10.)

8.    Verisign defined the "relevant purchasing public"—the market that registries, such as Verisign and XYZ, compete in— ████████████████████████████████ (Ex. A at 7.)

9.    Verisign ████████████████████████████████████████████████ ████████████████████ (Ex. B at 187:16–17.) According to Verisign, ████████████ ████████████████████████████████████████████████████ (Ex. A at 7.)

10.    In June 2014, almost 700 new top-level domains entered the domain-name market to compete with Verisign. (Ex. J at 212:11–12; *see also* Ex. F ¶ 27.) These new top-level domains are known as "**new TLDs**" or "**new gTLDs**." (Ex. B at 13:22–14:9.)

11.    Acknowledging the risk new competitors posed, Verisign publicly warned its investors that the introduction of new TLDs could ████████████████████████ ████████████████████████████████████ (Ex. G ¶ 60, n.74 (citing Verisign, Inc. SEC Form 10-K for the period ending December 31, 2013 at 44).)

12.    <.xyz> is one of the new TLDs that launched in 2014. (Ex. D at 183:11–15.) XYZ is the registry for the <.xyz> TLD. (Ex. C at 264:1–3; Compl. ¶ 13.)

**B.**   ████████████████████████████████████████

    13.   ████████████████████████████████████████████ ████████████████████████

    14.   ████████████████████████████████████████████████ ████████████████████████████

15. ████████████████████████████████████
████████████████████████████████████████
██████████████████████████ ██████████████

16. ████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████

17. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
███████████

18. ████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████

19. ████████████████████████████████████
████████████████████████████████████████
██████████████████████████

[2] An "impression" occurs every time an Internet user views an advertisement.
[3] ████████████████████████████████████████████.

4

**C.   Verisign alleges XYZ made false statements.**

20.   Verisign alleges that XYZ and its CEO, Daniel Negari, made false statements
(Compl. 11–13; Ex. D at 108:15–16), none of which appeared in traditional advertising such as in
paid television, radio, print, or web advertisements. (*See* Exhibit A to Plaintiff's Motion in
Limine to Admit Defendants' Advertising Statements (Dkt. 260-1) ("Dkt. 260-1").)

**Statements About <.com> Availability**

21.   Verisign complains that XYZ mischaracterizes the availability of <.com> domain
names. (Dkt 260-1 at 9–10.)

22.   Several of the statements come from a National Public Radio interview and a video
posted on the file-sharing site YouTube.

23.   National Public Radio contacted XYZ for an interview with Negari about new TLDs.
(Declaration of Grant Carpenter, September 24, 2015 ("Carpenter Decl.") ¶ 5, Ex. 3.) NPR
broadcast part of the interview in a story about the new TLD launch. (Ex. I at 357:21–25; Ex. E at
129:17–18.) The reporter opined, "You could try to become the next .COM, the next, all-purpose
ending, the thing that you can stick on the back of any business name. After all .COM is pretty
crowded." (Compl., Ex. 2.) The broadcast then cut to Negari saying, "[a]ll of the good real
estate is taken. The only thing that is left is something with a dash, or maybe three dashes and a
couple numbers in it." (*Id.*)

24.   In June 2014, XYZ posted a 35-second video titled "Move Over .com--.xyz is for the
next generation of the internet" ("**Two-Cars Video**") on the video-sharing site YouTube.[4]
(Compl. ¶ 17.) Verisign believes "Defendants use visual imagery to convey a superiority claim"
in the video. (Dkt. 260-1 at 10; *see also* Compl. ¶ 24.) The video features a dirty old Honda with a
license plate that says ".COM". (Compl. ¶ 19.) "The Honda is filmed in a grainy video, and is
accompanied by unflattering and dated background music." (*Id.*) The video also "shows a shiny
new Audi sports car pulling up next to the Honda with a Nevada license plate that says 'XYZ.'"
(*Id.* ¶ 21.) The narrator claims that "with over 120 million dot coms registered today, it's

---

[4] The video is on YouTube at https://www.youtube.com/watch?v=uh_i13jluqs

impossible to find the domain name that you want. It's 2014 and the next generation of domain names is here." (*Id.* ¶ 20, Ex. 1.) Then, the "Audi speeds away as the Honda remains stationary." (*Id.* ¶ 22.)

25.   The video has received about 52,000 page views. (*See* Carpenter Decl. ¶ 3, Ex. 2.)

**Non-public Statements About** ▮▮▮▮▮▮

26.   Verisign also complains that XYZ made statements about ▮▮▮▮. (Dkt. 260-1 at 3; Supplemental Binder Containing Documents for Statements at Issue (Dkt. 277-1) ("Dkt. 277-1"), Exs. 143, 215, 218.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

**Statements About <.xyz> Registration Numbers**

27.   Verisign complains that XYZ publicly disclosed the number of <.xyz> names registered at different points in time and that it claimed to be the top-selling new gTLD. (Dkt. 260-1 at 2–4.)

28.   XYZ's statements about registrations were always based on the number of <.xyz> domain names in the zone file. (*Id.* at 51:8–10, 355:7–16, 355:21–24, 356:8–13, 356:21–23, 357:5–7.)

29.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮, more <.xyz> domain names have been sold than any other new TLD. (Ex. I at 266:9–15.)

30.   XYZ also claimed <.xyz> as the top new gTLD on Negari's personal blog and in ▮▮▮▮▮▮▮. (Compl., Exs. 6, 7; Dkt. 277-1, Exs. 161, 166, 322.)

31.   Verisign agrees that Google Analytics reports make the number of visitors to the website pages containing XYZ's and Negari's blogs precisely knowable. (Plaintiff's Opposition to

Defendants' Motion for Judgment on the Pleadings (Dkt. 46) at 19.) ███████████

███████████████████████████████████████

███████████████████ (*See* Compl., Ex. 7, Carpenter Decl. ¶ 3(b),

Ex. 1.) The other blog post[5] where Negari discussed the number of <.xyz> registrations was

contained in a video displayed on YouTube, which received about 3,000 views as of September

21, 2015. (*See* Compl., Ex. 6;  Carpenter Decl. ¶ 9, Ex. 5.)

### Statements About XYZ's Marketing Budget

32.    Verisign complains that XYZ boasted of a multimillion-dollar marketing and

promotional campaign. (Dkt. 260-1 at 10–11.)

33.    Most of these statements came in response to unsolicited media interviews, while

some were in ███████████████. (*See* Carpenter Decl. ¶ 4, Ex. 3; *see also* Dkt. 277-1, Exs. 26,

247, 282.)

34.    In truth, XYZ ███████████████████████████████

███████████████████████████████████ (when Verisign filed its

lawsuit). (Ex. I at 142:5–143:8, 143:22–25, 145:9–21, 212:1–24.)

35.    ████████████████████████████████████████

███████████████████████

### D.    Verisign conducted a survey to find out whether consumers realized XYZ's registrations included some domain names that were given away for free.

36.    Verisign retained Michael Mazis[6] to conduct a consumer survey about a post on

Negari's personal blog containing the statement ".xyz has received the most registrations of all

new gTLDs with 447,544 domains registered." (Ex. K at 11:14–19; Ex. L ¶¶ 12, 14, 25.)

37.    Mazis's survey "sought to measure whether individuals who purchased a domain

name in the past two years or expect to purchase one in the next two years understood that the



---

[5] https://ceo.xyz/winning/
[6] XYZ's motion to exclude Mazis is pending. (Dkt. 232.)

vast majority of domain names within the .xyz registry were given away for free and were not purchased by domain name registrants." (Ex. L ¶ 1.)

38.    Mazis did not ask respondents whether or not they equated Negari's use of the word "registrations" in his blog post with a claim that each registration represented a "sale" or "purchase."(Ex. K at 61:6–11.)

39.    Mazis asked respondents open-ended questions about what messages were communicated by Negari's blog post. (Ex. L ¶ 24.) No responses to those open-ended questions indicated the blog post communicated a message about whether domain names were actually "purchased" or the like. (Ex. K at 124:9–125:6; Ex. M at 13.)

**E.    Verisign's evidence of harm is an** ███████████████████████████
███████

40.    Verisign relies ███████████████████████████████████████. (*See* Ex. A at 4–13.)

41.    Verisign's <.com> sales *increased* after XYZ and Negari made the statements Verisign complains about. (*See* Ex. F, Ex. 6; Ex. G ¶ 49; Ex. P ¶ 56.)

42.    ███████████████████████████████████████████████
█████████████████████████████████████████

43.    ███████████████████████████████████████████
█████████████████████████████████

44.    ███████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████

---

[7] XYZ's motion to exclude Kindler is pending. (Dkt. 233.)



45.

46.

47.

48.     Verisign has not identified any consumers whose purchasing decisions were influenced by XYZ's statements. (Ex. C at 30:4–7.)

49.     Verisign's consumer survey did not attempt to measure whether the tested blog post (or any statement or claim in it) would impact a consumer's decision to purchase a domain name. (*See* Ex. K at 191:13–19, 191:22–24, 192:17–20; Ex. N ¶ 16; Ex. M at 28–29.) Verisign presents no other evidence about whether any XYZ statement would impact a consumer's likelihood of purchasing any domain name. (Ex. J at 149:22–150:9, 153:3–6; Ex. O at 172:6–11; Ex. G ¶¶ 9(a)(ii), 66(e).)

50.     Verisign lacks evidence that consumers withheld trade from Verisign or diverted their trade to XYZ. (Ex. J at 138:8–19, 149:22–150:9, 151:1–19, 153:3–6; Ex. C at 138:3–139:1, 187:15–188:7; Ex. A at 5–13; Ex. B at 161:9–13, 226:8–16.)

**F.   Verisign** ████████████████████████████**, and Verisign's reports show that most requests to register <.com> domains fail because the domain is unavailable.**

51.   Verisign submitted an expert report from Andy Simpson, its employee, opining that

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

52.   Verisign's publicly reported figures show there were more than two-billion requests to register <.com> domain names in a single month. (Ex. U at 234:4–9.) Yet less than three million of these requests (about 0.15%) were successful because over 99% of the requests were for already-registered <.com> domain names—thus not available. (*Id.* at 234:9–13; Ex. P ¶ 45.)

53.   Verisign's Senior Vice President in charge of operational management of the <.com> Registry ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

54.   Verisign ████████████████████████████████

████████████████████████████ Verisign ██████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████

### III.   Legal Standards

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party, and mere allegations and denials are insufficient

---

[8] XYZ's motion to exclude Simpson is pending. (Dkt. 234.)

to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As the Fourth Circuit recently observed in affirming summary-judgment dismissal of another Lanham Act false-advertising claim: "[I]t is ultimately the nonmovant's burden to persuade us that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 500 (4th Cir. 2015) (citations and quotations omitted). A "complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 317, 323.

To defeat summary judgment, Verisign must provide admissible evidence that:

1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;

2) the misrepresentation is material, in that it is likely to influence the purchasing decision;

3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;

4) the defendant placed the false or misleading statement in interstate commerce; and

5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res.*, 789 F.3d at 501 (emphasis omitted) (quoting *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)). In *Design Resources*, the Fourth Circuit held that "failure to establish any one element is fatal to the claim." 789 F.3d at 501.

Verisign must offer evidence establishing each element. And as importantly, Verisign must do so for each statement it contends is actionable. *See id.* at 501–05 (analyzing each alleged false statement individually); *see also Millennium Labs., Inc. v. Ameritox, Ltd.*, 924 F. Supp. 2d 594, 603 (D. Md. 2013) (individual advertisements are reviewed separately for each element of a Lanham Act claim; if an individual advertisement is missing even one element, it is not actionable);

11

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 Fed. App'x 652, 654 (9th Cir. 2010) (dismissing Lanham Act claims after evaluating each statement independently and concluding that "[n]one of the statements at issue here satisfies all the necessary elements.")

## IV.   Discussion

To survive summary judgment, Verisign must overcome two threshold issues by showing that XYZ's statements:

1)   Qualify as "commercial advertising or promotion," *See PBM Prods.*, 639 F.3d at 120; and

2)   Proximately caused Verisign harm. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390–94 (2014).

The Court should grant summary judgment because Verisign cannot meet either threshold requirement for its Lanham Act false-advertising claim.

Yet even if Verisign clears those hurdles, it still must come forward with evidence for each statement establishing that it is false in a way that actually deceives a substantial segment of the audience, and "is material, in that it is likely to influence the [consumer's] purchasing decision." *See Design Res.*, 789 F.3d at 501.

The Court should grant summary judgment for five independent reasons: (1) no statement on Verisign's list was contained in commercial *advertising* or promotion under the Lanham Act; (2) no statement proximately *caused injury* to Verisign; (3) Verisign lacks evidence XYZ made a *false* or impliedly false *statement of fact*; (4) Verisign has no evidence that any deception was *material* to a purchasing decision; and (5) Verisign has no evidence of consumer *deception*.

## A.   None of the statements were made in "commercial advertising or promotion."

### 1.   The alleged false claims were not widely disseminated to the relevant purchasing public.

The Lanham Act only applies to "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). When an alleged false-advertising claim arises outside traditional advertising, courts in this circuit follow *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48

(2d Cir. 2002). *See, e.g.*, *Applied Med. Res. Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) ("Although this standard for 'commercial advertising or promotion' has never been formally adopted by the Fourth Circuit, it has been uniformly embraced by district courts in this Circuit"); *see also Reynolds Consumer Prods., Inc. v. Handi-Foil Corp.*, No. 13-CV-214, 2014 WL 794277, at *5 (E.D. Va. Feb. 27, 2014) (collecting cases relying on the *Fashion Boutique* test).

In *Fashion Boutique*, the court held that while "the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech." 314 F.3d at 57. Rather, a statement must be "disseminated sufficiently to the relevant purchasing public" to be a commercial advertisement. *Id.* at 56. "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act." *Id.* at 57.

Whether a statement is "disseminated sufficiently to the relevant purchasing public" depends on the specific market in question. *Id.* The larger the relevant market, the harder to show widespread dissemination. *See, e.g.*, *Applied Med. Res.*, 527 F. Supp. at 493–94; *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 573 (E.D. Va. 2004); *Cavalier Tel., LLC v. Verizon Va. Inc.*, 208 F. Supp. 2d 608, 617–18 (E.D. Va. 2002); *Reynolds*, 2014 WL 794277, at *5 (plaintiff survived summary judgment because it presented evidence that the statements at issue reached up to 25% of the market).

In *Applied Medical Resources*, the court dismissed a false-advertising claim when the plaintiff bragged that it sold its products "within the jurisdiction of this Court, in the Commonwealth of Virginia, throughout the nation, and in countries around the world." 527 F. Supp. 2d at 493 (internal quotations and citations omitted). The court found that "the relevant market for Plaintiff's [goods] is at least nationwide, if not worldwide." *Id.* In that context, the defendant's "isolated comments" during a narrow time frame were comparatively insignificant. *Id.* at 593–94.

Like the market described in *Applied Medical Resources*, the market for domain names is worldwide. Verisign ████████████████████████████████████████

13

████████████████████████████████████████████████████

████████████████████████████████   ████████████████

████████████████████████████████████████████████

XYZ's most widely disseminated statement—the Two-Cars Video—has been viewed just over 50,000 times. And Verisign admits that Google Analytics renders the level of dissemination of these online statements "precisely knowable." ████████████████████████

████████████████████████████████████████████████.

In *Tao*, the court observed that when the "relevant market is large and…the alleged contacts are comparatively trivial, dismissal for failure to state a claim is appropriate." 299 F. Supp. 2d at 573. That observation applies here: "the alleged contacts" made by XYZ's statements are "comparatively trivial" to the global market of millions of domain-name consumers. No single XYZ statement, nor all of them together, constitute advertising under the Lanham Act. None was disseminated to even one-tenth of one percent of the global market of hundreds of millions of "actual or potential" domain-name purchasers.

2.   **XYZ statements to** ████████████████████████████ **are not
     "promotional material."**

Verisign challenges XYZ statements that were ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. But the handful of district courts recognizing limited communications as promotion under the Lanham Act did so because the market was small. In *Mobius Mgmt. Sys. v. Fourth Dimension Software*, 880 F. Supp. 1005 (S.D.N.Y. 1994), a single letter was sufficient because the market was "quite small" and "the true relevant purchasing public consisted solely of [the letter's recipient.]" *Id.* at 1020–21. And in *Tao*, the parties competed for contracts with NASA, which meant the "relevant purchasing public" was just one government agency. 299 F. Supp. 2d 565, 569–73.

In *Seven-Up v. Coca-Cola*, soda bottlers—rather than end consumers—were the relevant purchasing public for soda syrup. 86 F.3d 1379, 1381–82, 1386–87 (5th Cir. 1996). Bottling

14

companies typically entered exclusive distribution arrangements with a syrup manufacturer. *Id.* The relevant purchasing public consisted of seventy-four bottling companies. *Id.* at 1382, 1384, 1386. The defendant made a sales presentation to eleven of the bottlers to convince them to exclusively bottle Sprite instead of Seven-Up, the plaintiff's product. *Id.* at 1382. The defendant's presentation penetrated roughly 15% of the relevant purchasing public. And it was specifically intended to get the bottlers to buy the intermediate product of Seven-Up soda syrup. For those reasons, which do not apply here, the court concluded the presentation was "widely disseminated" within that narrow market. *Id.* at 1386.

None of these cases support the argument that XYZ's



Verisign has no evidence that

. Against the backdrop of a global domain-name market comprised of tens of millions in the United States and hundreds of millions worldwide,

### 3. Statements in unsolicited radio interviews and industry news websites are not "commercial advertisements."

Verisign complains about radio interviews of Negari on NPR and KDWN in Las Vegas, and interviews of Negari on domain-name-industry news websites. These statements are not actionable. Rather, statements in media interviews cannot support a claim for false advertising because a response to an unsolicited inquiry by a news organization is not commercial speech. *See Boule v. Hutton*, 70 F. Supp. 2d 378, 390 (S.D.N.Y. 1999), *aff'd on other grounds*, 328 F.3d 84 (2d Cir. 2003); *accord Gmurzynska v. Hutton*, 355 F.3d 206 (2d Cir. 2004); J. Thomas McCarthy, 5 McCarthy on Trademarks §27:71, n.30.

As the *Boule* court stated:

> While [the Lanham Act false-advertising prohibition] applies to commercial advertising or promotion beyond the traditional advertising campaign, it does not cover a response to an unsolicited inquiry by a magazine reporter seeking comment on a topic of public concern....

15

> The fact that the [defendants] had an economic interest in making their statements to the [media outlet] does not alone transform their comments into "commercial advertising or promotion."

*Boule*, 70 F. Supp. 2d at 390.

Negari's statements in the NPR interview were commentary and opinion, solicited by NPR, then sliced up by NPR to build a story. NPR alone edited Negari's statements, placing them squarely next to NPR's own statement that "after all, .COM is pretty crowded." XYZ had no editorial influence over NPR or how the statement would be framed.

**B.    Verisign lacks evidence that the XYZ statements proximately caused consumers to withhold trade from Verisign, and no presumption of irreparable harm exists.**

Verisign seeks money damages and injunctive relief. Both these claims fail because Verisign cannot establish that XYZ's statements proximately caused consumers to withhold trade from Verisign. And Verisign is not entitled to a presumption of irreparable harm.

**1.    Under *Lexmark*, Verisign must prove that "deception of consumers causes them to withhold trade from the plaintiff" and it has no evidence of this.**

Recently, a unanimous United States Supreme Court addressed the proximate-cause requirement for Lanham Act false-advertising cases. Under *Lexmark*, plaintiffs must prove "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when **deception of consumers causes them to withhold trade from the plaintiff**." 134 S. Ct. at 1391 (emphasis added).

*Lexmark* is often described as liberalizing standing because in some circuits, before *Lexmark*, false-advertising plaintiffs could only sue direct competitors. But *Lexmark* also requires *every* plaintiff to prove that "deception of consumers causes them to withhold trade from the plaintiff." *Id.* This is consistent with Fourth Circuit precedent before *Lexmark*. *See PBM Prods.*, 639 F.3d at 122 ("under the Lanham Act, plaintiff must prove that there was a violation, that plaintiff has been damaged, and that there is a causal connection between the violation and those damages.") (internal citations omitted)). Verisign has no evidence of the causal nexus necessary

16

to proceed to trial. Verisign has no customer testimony, no documented cases of actual confusion or diverted sales, and no survey measuring whether consumers are likely to withhold trade.

**2.  The Supreme Court's holdings in *Winter* and *eBay* foreclose any presumption of irreparable harm.**

When asked to provide facts in support of its claim of irreparable damage to its goodwill and reputation, which would entitle it to an injunction, Verisign responded that:



(Ex. A, pp. 3–5 (emphasis added).)

But the Fourth Circuit has never recognized such a presumption. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273–74 (4th Cir. 2002) (declining to decide the issue). The Supreme Court twice rejected an irreparable-harm presumption. In one case, the Court rejected a presumption of harm after a patent-infringement finding. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 393–94 (2006). In a second case, the Court held that an injunction "based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

Two circuit courts have concluded that *eBay* and *Winter* apply to claims of irreparable harm arising under the Lanham Act—no other circuit has considered the question. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216–17 (3d Cir. 2014) ("[W]e hold that there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act [false-advertising] cases."); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("the *eBay* principle—that a plaintiff must establish irreparable harm— applies to a preliminary injunction in a [Lanham Act] trademark infringement case."). As the Third Circuit stated in affirming denial of injunctive relief in a false-advertising case, presuming

17

irreparable harm impermissibly relieves the plaintiff of its burden to make a clear showing worthy of the "extraordinary remedy" of injunctive relief. *Ferring Pharm.*, 765 F.3d at 217.

Rather, the Lanham Act requires a plaintiff to "offer something more than a mere subjective belief that he is likely to be injured as a result of the false advertising, he must submit proof which provides a reasonable basis for that belief." *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982) (internal citations omitted); *see also PBM Prods.*, 639 F.3d at 127 (quoting same). To show injury to reputation, Verisign must present extrinsic evidence such as testimonials from customers, or survey evidence that directly tests the effect of the statements on Verisign's reputation. *Compare Lundgren v. AmeriStar Credit Solutions, Inc.*, 40 F. Supp. 3d 543, 550–51 (W.D. Pa. 2014) (granting summary judgment where plaintiff's evidence of reputational harm consisted of conclusory allegations) *with Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 217–19 (D.D.C. 2014) *reconsideration denied*, 79 F. Supp. 3d 60 (D.D.C. 2015) (denying summary judgment where plaintiff presented consumer testimonials and survey evidence supporting its claim of reputational harm).

Verisign has no evidence to show damages to goodwill. Its consumer survey did not measure whether any statements resulted in economic or reputational harm. Instead, Verisign offers only its subjective belief about "tarnishing or diminishment in value in the .COM registry." This is insufficient to survive summary judgment. *See Design Res.*, 789 F.3d at 501; *see also Ferring Pharm.*, 765 F.3d at 219 (rejecting declaration testimony as too speculative to support a claim of irreparable harm).

### 3. **Verisign has no evidence that any XYZ statement caused a decline in Verisign's profits or led to XYZ achieving profits.**

In order to recover lost profits, Verisign must establish actual damage to its business that is proximately caused by XYZ's statements. *See Seven-Up*, 86 F.3d at 1389 (reversing jury verdict because damage was not sufficiently tied to the false statements at issue). Similarly, to obtain disgorgement of XYZ's profits, Verisign must show a causal connection between the defendants' profits and the statements at issue—that the profits were the *result* of the false advertising. *See*

18

*Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464–65 (5th Cir. 2001). And to survive summary judgment, Verisign must marshal admissible evidence "and not merely conclusory allegations or speculation," definitively showing XYZ's statements proximately caused lost sales (or XYZ's profits). *See Design Res.*, 789 F.3d at 500.

Verisign cannot establish this causal nexus. While Verisign's Complaint focuses on alleged harm to <.com>, Verisign's own data shows that <.com> registrations *increased* after XYZ's statements. No harm occurred to <.com>. Perhaps as a result, ███████████████████ ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

First, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. But as scientists, philosophers, and courts have long observed, correlation is not causation. And in the post-*Lexmark* world, ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. █████████████████████████

████████████████████████ Yet Verisign's SEC filings filed under penalty of perjury warn that the introduction of new TLDs could "have a material adverse effect on our business, results of operations, financial condition, and cash flows." Nor does Kindler account for changes in Verisign's advertising and promotion during this period. And tellingly, ████████████████

████████████████████████████████████████████████

Finally, in determining damages, ████████████████████████████████████

████████████████████ That is the flaw the Fourth Circuit called out in *PBM Products. See* 639 F.3d

at 122 ("The fatal flaw in Mead Johnson's economic information was that its expert assumed

that every sale PBM made was attributable to the 'compare to' statement on the product.").

Verisign cannot show that any XYZ statement caused it damage. For that reason,

Verisign's false advertising claim fails as a matter of law. *See id.* And to obtain XYZ's profits,

Verisign must establish that XYZ acted willfully and in bad faith, for which Verisign has no

evidence. *See Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 641 (D.C. Cir. 1982).

### 4.   Verisign's "corrective advertising" was not reasonably responsive to any XYZ statement because there was no damage to <.com> sales.

Verisign claims XYZ's statements about <.com> forced Verisign to place "corrective

advertising" ██████████████████████████████████████. But to recover

those costs, Verisign must show that (1) XYZ's statements created a likelihood of confusion or

damage to sales, profits or goodwill; (2) the corrective-advertising expenses were incurred due to

those statements; and (3) the expenses were reasonable under the circumstances and

proportionate to the damage that was likely to occur. *See Bracco Diagnostics, Inc. v. Amersham*

*Health, Inc.*, 627 F. Supp. 2d 384, 491 (D.N.J. 2009) (citing *Balance Dynamics Corp. v. Schmitt*

*Indus., Inc.*, 204 F.3d 683, 690–93 (6th Cir. 2000)). Verisign cannot clear these hurdles.

First, Verisign has no evidence showing that XYZ's alleged false advertising damaged

Verisign's sales, profits, or goodwill. Verisign's <.com> product enjoyed *increased* sales after the

XYZ statements. No corrective advertising was necessary.

Second, Verisign's only evidence that the contest was a response to XYZ's statements is

the self-serving testimony of Verisign executives. No documentary evidence surrounding the

creation, implementation, or review of the campaign mentions XYZ. ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.

20

XYZ is neither the first, loudest, nor most influential voice offering an opinion on the unavailability of <.com> domains. In that sense, Verisign's situation is similar to *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.*, 628 F. Supp. 2d 312, 327 (E.D.N.Y. 2009), *aff'd*, 409 Fed. App'x 389 (2d Cir. 2010). Despite finding that the defendants in that case willfully counterfeited the plaintiff's trademark, the *Koon Chun* court denied the plaintiff's corrective advertising in part because many other infringers existed and because it was "impossible to apportion the anti-counterfeiting costs for which defendants here are responsible." *Id.* Similarly, it is impossible to apportion to XYZ any of Verisign's costs in responding to the (accurate) perception that <.com> domain names are unavailable because XYZ did not create that perception, ██████████████████████████████████████.

Finally, █████████████████████ was an unreasonable and disproportionate response to XYZ's statements. ██████████████████████████████████████
████████████████████████. ████████████████████
███████████████████████████████████████████████
████████████████████ ████████████████████████
███████████████████████████████████████████████
████████████████

The Court should grant summary judgment because Verisign has no evidence of harm proximately caused by any XYZ statement. *See Pandora Jewelry, LLC v. Chamilia, LLC*, No. CIV. CCB-06-3041, 2008 WL 4533902, at *4 (D. Md. Sept. 30, 2008) (entering summary judgment against plaintiff who failed to offer evidence of harm).

**C.   Verisign lacks evidence that XYZ made "a false or misleading description of fact or representation of fact."**

**1.   Most of the statements are opinion—not descriptions or representations of fact.**

False advertising under the Lanham Act must contain a "description of fact or representation of fact" to be actionable. *Design Res.*, 789 F.3d at 501. A factual statement is

capable of "empirical verification." *Id.* at 502, 505. But a statement of opinion—which is not actionable—conveys a subjective (rather than empirical) viewpoint. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498–99 (5th Cir. 2000), *cert. denied*, 532 U.S. 920.

Puffery is one type of opinion statement. "Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *See Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390–91 (8th Cir. 2004); *see also Pizza Hut*, 227 F.3d at 496–97. Whether a statement is fact, opinion, or puffery can generally be decided as a matter of law. *See Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881–82 (S.D.W. Va. 2014) (dismissing claims over non-actionable puffery).

### Statements about "all the good real estate is taken," "domains you want," and "good domains" are opinion.

Verisign complains about Negari's statement in the NPR interview that "all the good real estate is taken." But this statement is Negari's personal opinion about what is "good real estate." ██████████████████████████████████████████████

████████████████████████████████

### The Two-Cars Video is puffery.

Verisign takes offense to statements and visuals in the Two-Cars Video. Verisign claims "Defendants use visual imagery to convey a superiority claim." The video displays no actual domain names, but rather an Audi sports car and old Honda. The tongue-in-cheek juxtaposition of the cars communicates only subjective measures of value constituting an opinion. Nothing in the video qualifies as a factual statement that could be proven false. *See Pizza Hut*, 227 F.3d at 496 (actionable statements must be "specific and measurable…capable of being proved false or of being reasonably interpreted as a statement of objective fact.").

No reasonable person could interpret XYZ's puffing video as a statement of objective fact because the message communicates only XYZ's opinion of itself as a hot new sports car. *See C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435–37 (4th Cir.

1997) (comparative superiority claims must be facts capable of being disproven). And the statement that "it's impossible to find the [<.com>] domain name you want" is merely a statement of XYZ's opinion.

### The "next .com" statements are puffery.

Verisign also contends that XYZ engaged in false advertising by stating that NPR described XYZ as the next <.com>. Verisign does not dispute that NPR broadcasted "You could try to become the next .COM…After all .COM is pretty crowded" before cutting to an interview with Negari. In the context of NPR's introduction and the entire interview, NPR did describe XYZ as the next .COM. But no consumer would purchase a <.xyz> domain name because NPR called XYZ the next <.com>. Rather "called the next dot com"—especially after media outlets discussed what the next <.com> is before introducing XYZ—is a broad, vague exaggeration, or boast on which no reasonable consumer would rely. The statement is puffery. *See Imagine Medispa*, 999 F. Supp. 2d at 881 (S.D.W. Va. 2014) ("'Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" (quoting *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

### Not providing "free giveaway" data is not a statement of fact.

Verisign argues that XYZ and Negari made false statements by ███████████████

████████████████████████████████████████████████████

████████████████████████████████

But "neither an implied statement nor a failure to state constitutes a 'description of fact' or 'representation of fact' under the Lanham Act." *MDM Grp. Assocs., Inc. v. Emerald Isle Realty, Inc.*, No. 2:07-CV-48-D, 2008 WL 2641271, at *4–5 (E.D.N.C. July 1, 2008). A plaintiff "cannot base a Lanham Act [false-advertising] claim on the defendants' failure to disclose a fact." *Agency Dev., Inc. v. Med. Am. Ins. Co.*, 310 F. Supp. 2d 538, 547 (W.D.N.Y. 2004), *aff'd*, 142 Fed. App'x 545, 546 (2d Cir. 2005).

In *Mylan Laboratories, Inc. v. Matkari*, the plaintiff's failure to allege an actual statement— as opposed to a failure to disclose—was "quite simply, too great a stretch under the Lanham

Act." 7 F.3d 1130, 1139 (4th Cir. 1993); *accord Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (S.D.N.Y. 1997) ("Avon cannot be held liable under the Lanham Act for failing to state publicly that [Skin-So-Soft] is not an effective insect repellent."); *Int'l Paint Co. v. Grow Grp., Inc.*, 648 F. Supp. 729, 730 (S.D.N.Y. 1986) ("[T]he Lanham Act ... impos[es] no affirmative duty of disclosure."); *see also MDM Grp.*, 2008 WL 2641271, at *4–5 (rejecting claim that defendant falsely implied its product was a legal-insurance product because "whether construed as an implied statement or as a failure to state, plaintiff's claim fails under *Mylan*").

███████████████████████████████████ is not a "representation of fact," Verisign's claim fails.

### 2.    The XYZ statements that may be factual (as opposed to opinion) are true.

"In analyzing whether an advertisement...is literally false, a court must determine, first, the unambiguous claims made by the advertisement...and second, whether those claims are false." *Scotts*, 315 F.3d at 274 (ellipses in original) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). Verisign challenges the truth of statements about (1) the total number of <.xyz> registrations; (2) whether XYZ received payment for those registrations; (3) XYZ's position as a market leader among new top-level domains; (4) the frequency with which searches for <.com> domain names end in failure; and (5) XYZ's advertising budget. XYZ's statements on these topics are true and supported with admissible evidence.

**The total number of <.xyz> registrations is true, as evidenced by XYZ zone files.**

Verisign does not dispute the accuracy of XYZ's registration numbers. Verisign ████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.

**XYZ's was paid "full wholesale price" for its domains.**

Verisign complains that XYZ said it was paid "full wholesale price" for <.xyz> domain names. Verisign supports its contention by pointing out that ████████████████████████



### XYZ's self-depiction as a "Top Selling" market leader is based on registration and revenue.

Verisign complains about 20 statements promoting XYZ's actual registration numbers and claims similar to ".xyz is the #1 selling new gTLD…." But no evidence exists that any other gTLD has sold more than XYZ. Verisign cannot dispute that XYZ has over a million <.xyz> registrations. ████████████████████████████, <.xyz> still has more registrations than any other new TLD. No other new TLD has anywhere near those registration numbers.

### Verisign cannot dispute that <.com> domain names are unavailable, and <.xyz> names are available.

Verisign attacks 12 statements such as "Great [<.xyz>] domain names are available that would be impossible to get with a .com ending, including dictionary words, geographic names and short names." According to Verisign's own data, <.com> names are largely unavailable. Verisign reports that in a given month, it receives about two-billion requests to register <.com> domain names. Most of those requests fail because the requested <.com> name is unavailable. Fewer than three-million <.com> domain names are registered each month. Three-million out of two-billion is less than 1%; so more than 99% of <.com> domain names people want are unavailable.

Also true: about 120-million <.com> domain names are registered and only about one-million <.xyz> domain names are registered. Since the <.xyz> registry is less than 1% the size of the <.com> registry, "great [<.xyz>] domain names are available that would be impossible to get

with a .com ending, including dictionary words, geographic names and short names." Statements that "it's impossible to find the [<.com>] domain name you want" are factually true.

**Statements about "Multi-Million Dollar Advertising spend" are true.**

Verisign complains about 11 statements in a few emails and presentations to registrars that XYZ had a multi-million dollar marketing budget. But █████████████████████
███████████████████████████████████████████

**D.    Verisign cannot show that any XYZ statement was material to customer purchasing decisions.**

A plaintiff asserting a false advertising claim under the Lanham Act must establish that the misrepresentation is "'material, in that it is likely to influence the purchasing decision.'" *Scotts*, 315 F.3d at 272 (citing *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002). A plaintiff can show materiality by probative evidence, such as a consumer survey. *Id.* at 214–15.

Even when a statement is literally false, a plaintiff must demonstrate materiality "in order to show that the misrepresentation had some influence on consumers." *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d at 312, n.10; *Johnson & Johnson*, 299 F.3d at 1250; *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). Only the Fifth Circuit might have reached a different conclusion, holding that materiality can be presumed from a literally false advertising statement. *See Pizza Hut*, 227 F.3d at 497. The Eleventh Circuit rejected the Fifth Circuit's approach because, if it marks a circuit split, it "conflates the elements of consumer deception and materiality." *Johnson & Johnson*, 299 F.3d at 1250 (citing *Pizza Hut*, 227 F.3d at 497).

Verisign has no evidence of materiality. For example, it has no evidence that a consumer would care whether domain names were purchased or given away. Verisign chose not to measure materiality in its consumer survey. Nor does it have any testimonials, evidence of actual

consumer decision-making, or other evidence. Without evidence of materiality, Verisign's claim fails as a matter of law and the Court should grant summary judgment.

### E.   Verisign lacks evidence that customers were deceived.

If a statement is literally true but allegedly false in context, the plaintiff must show actual deception—"that the challenged advertisements tend to mislead or confuse consumers." *Scotts*, 315 F.3d at 273 (internal citations, punctuation, and quotations omitted). The deception must impact a substantial segment of its audience. *Id.* at 278, 280.

Verisign has no anecdotal evidence of deception. Its survey measured only whether consumers believed that <.xyz> domain-name registrations were "purchases," which does not establish deception. The only conclusion that can be drawn is that consumers may not differentiate between "purchased" and "unpurchased" registrations when observing a statement of XYZ's total registration numbers. That does not show any XYZ statement tended to deceive consumers. Other than the survey, Verisign offers no evidence of deception for any XYZ claim. And without evidence of deception, the Court should grant summary judgment on this element alone.

### F.   The Court can grant partial summary judgment.

If Verisign fails to present a factual issue for one element of any alleged false claim, the Court should narrow issues for trial by granting partial summary judgment for that claim group. *See* Fed. R. Civ. P. 56(a) (the court can grant summary judgment for "part of each claim or defense"); Fed. R. Civ. P. 56(g) (the court "may enter an order stating any material fact…that is not genuinely in dispute and treating the fact as established in the case."). For each claim group listed in Verisign's supplemental initial disclosures, the Court can grant partial summary judgment based on a lack of widespread dissemination and Verisign's inability to show the statements proximately caused it harm.

Additionally, the Court can grant partial summary judgment on the statements about "**Availability of .Com**" because most of them are opinions and puffing, and the remainder are

true. The evidence is undisputed—by looking at Verisign's own data—that 99% of requests to register <.com> domain names are denied because the names are unavailable. The evidence is also undisputed that the number of <.xyz> names registered (about one million) is less than 1% of the number of <.com> names registered (about 120 million). By any calculation with those numbers, <.com> lacks availability. Any statements in this claim group that are not statements of fact are XYZ's opinion about what names are "good." The Court can grant partial summary judgment on this issue, and rule that the "Availability of .Com" claims should be excluded from any trial.

The Court can grant partial summary judgment on the statements about "**Multi-Million Dollar Advertising Spend**" because the statements are true and because the claim was never made to registrants. ████████████████████████████████████████████████████ ██████████████████████████████████████████. But even if not true, no evidence exists that the statement ever reached a single member of the purchasing public. The Court can grant partial summary judgment on this issue, and rule that the "Multi-Million Dollar Advertising Spend" claims should be excluded from any trial.

The Court can grant partial summary judgment on the statements about "**'Top Selling,' Revenue and Number of Registrations**" because they are true. On each day XYZ promoted its registration numbers, the numbers were accurate. ████████████████████████████████ ██████████ is not actionable under the Lanham Act. *Mylan Labs.*, 7 F.3d at 1139. Nor can Verisign really dispute that <.xyz> is the #1 selling new gTLD. ██████████████████████████ Verisign has no evidence that any other gTLD has sold more than XYZ.

Verisign also complains that XYZ promoted ████████████████████. That argument fails because XYZ has never publicly promoted ████████████. All documents that Verisign cites are either ████████████████████████████████████████████████████████ ██████████████████████ Verisign cannot meet the element that "the defendant placed the false or misleading statement in interstate commerce." *Design Res.*, 789 F.3d at 501. The Court

28

can grant partial summary judgment on this issue, and rule that the "'Top Selling,' Revenue and Number of Registrations" claims should be excluded from any trial.

The Court can grant partial summary judgment on the statements about "**Network Solutions – Paid Full Wholesale Price**" because they are true. Verisign has no evidence that XYZ was not paid the full wholesale price for any domain. ██████████████████████ ████████████████████████████. ████████████████████████ ████████████████████████. The Court can grant partial summary judgment on this issue, and rule that the "Network Solutions – Paid Full Wholesale Price" claims should be excluded from any trial.

The Court can grant partial summary judgment on the statements about "**Called The Next .Com**" because most were not placed into commerce, and the statement is puffing. Verisign complains about seven documents where NPR or others described <.xyz> as the next <.com>. ████████████████████████████. (Dkt. 277-1, Exs. 149, 328, 329.) ██████████████████████ (Dkt. 277-1, Exs. 148, 330.) XYZ is not liable for ████████████ because they were not placed into interstate commerce. *Design Res.*, 789 F.3d at 501. Finally, saying that NPR described XYZ as the next .com is puffing in the context of NPR actually saying "You could try to become the next .COM" immediately before introducing Negari. The Court can grant partial summary judgment on this issue, and rule that the "Called The Next .Com" claims should be excluded from trial.

## V.    Conclusion

Verisign complains about XYZ's vanity video (Two Cars), website blog posts, opinions stated to reporters, and ███████████████████—even ██████████ ████████ ██████ None of those statements was contained in commercial advertising. And none proximately caused injury to Verisign. Most statements were opinion or puffery, or objectively true. No consumer was deceived or withheld trade from Verisign based on any XYZ statement. No XYZ statement was material to any consumer purchasing decision. Verisign lacks evidence to support at least one essential element for a Lanham Act claim for each XYZ statement that it complains about.

XYZ respectfully requests that the Court grant summary judgment.


Dated September 24, 2015.             Respectfully Submitted,

/s/ Timothy J. Battle
Timothy J. Battle
Timothy J. Battle Law Offices
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net

Derek A. Newman, admitted *pro hac vice*
Jason B. Sykes, admitted *pro hac vice*
Derek Linke, admitted *pro hac vice*
Sophy J. Tabandeh, admitted *pro hac vice*
Newman Du Wors LLP
100 Wilshire Blvd., Suite 940
Santa Monica, CA 90401
(310) 359-8200 Tel
(310) 359-8190 Fax
dn@nemanlaw.com

*Counsel for Defendants XYZ.com LLC and Daniel Negari*

30

## CERTIFICATE OF SERVICE

I certify that on September 24, 2015, I served counsel, at the address stated below, by causing hand delivery of this motion and incorporated memorandum. I also electrically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Taylor S. Chapman <TSChapman@Venable.com>
Nicholas Martin DePalma <nicholas.depalma@venable.com>
Randall Karl Miller < rkmiller@venable.com>
Kevin W. Weigand <kweigand@venable.com>
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182

/s/ Timothy J. Battle
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for Defendants XYZ.com LLC and Daniel Negari*