**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| Verisign, Inc., | |
| Plaintiff, | Case No. 1:14-cv-01749 CMH-MSN |
| v. | |
| XYZ.com, LLC and Daniel Negari, | |
| Defendants. | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT
OR PARTIAL SUMMARY JUDGMENT**

**Table of Contents**

Discussion .........................................................................................................................1

A.    Since Verisign presents no evidence of widespread dissemination, no statement qualifies as "advertising or promotional statements" under the Lanham Act. ....................1

B.    Verisign cannot bring a Lanham Act claim for XYZ's "failure to state" additional facts about whether consumers paid for <.xyz> registrations. ................................................6

C.    Verisign has no admissible evidence of materiality, which is a required element for every false advertising claim. ..................................................................................9

D.    Verisign lacks evidence of causation and harm, and its mere allegations are insufficient to create an issue of material fact. ...................................................................10

E.    The Court can and should decide opinion and puffery as a matter of law. ..........................13

F.    The Court should grant partial summary judgment for any statement that fails to meet at least one element of a Lanham Act claim. .........................................................14

Conclusion ......................................................................................................................15

### Discussion

In its opposition, Verisign does not present admissible evidence of material facts that are genuinely in dispute. Instead, Verisign raises only immaterial factual disputes and fails to address most of XYZ's legal arguments. But to establish a genuine issue of material fact, Verisign "must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 500 (4th Cir. 2015) (citations omitted). To meet this burden, "there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. A dispute is only 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2014 WL 4159991, at *3 (M.D.N.C. Aug. 19, 2014). And a "complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**A.    Since Verisign presents no evidence of widespread dissemination, no statement qualifies as "advertising or promotional statements" under the Lanham Act.**

"[T]he language of the [Lanham] Act cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). "[A]lthough representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Applied Med. Res. Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) (noting universal application within the Fourth Circuit).

Without evidence of widespread dissemination, Verisign offers three flawed arguments to establish that XYZ's statements qualify as advertising under the Lanham Act. ████████ ████████████████████████████████████████████████████████████ ████████████████████████ Second, Verisign contends that because the statements appear in multiple mediums, they constitute "an organized campaign to penetrate the relevant market." Third, Verisign contends the XYZ statements in media interviews should be considered

1

promotional because certain messages were repeated across multiple interviews. None of these arguments withstand scrutiny.

1. ████████████████████████████

Verisign concedes that the "relevant purchasing public" is all "actual or potential purchasers of domain names." ((Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. 314) ("Opp'n"), Responses to Defendants' Statement of Facts ("SOF") ¶¶ 8, 9.) This is consistent with Verisign's ████████████████████

████████████████████████

████████████████████████████

████████

Despite supplementing other discovery responses throughout litigation, Verisign never changed this definition of "relevant purchasing public." Yet now, Verisign attempts to skirt its sworn discovery response by presenting irrelevant discussion about the contractual relationship between registries, registrars, and registrants. (Opp'n SOF ¶¶ 1, 4, 5 6.) Verisign also argues its designated corporate representative was being "colloquial" ████████████████

████████████████████████████

████████ (Defendants' Motion for Summary Judgment or Partial Summary Judgment (Dkt. 299) ("Motion"), Statement of Undisputed Facts ("SOF") ¶¶ 5, 6, Ex. C at 95:15–96:5, 262:17–263:1.).)

The Court should not allow Verisign to fundamentally change its sworn testimony and discovery responses to avoid summary judgment. This is not sufficient to create a genuine issue. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 959–60 (4th Cir. 1984) (nonmoving party cannot create an issue of fact by making contradictory statements); *Auffarth v. Nationwide Mut. Ins. Co.*, No. WDQ-08-1399, 2010 WL 2651187, at *5 (D. Md. June 30, 2010) (holding that an argument raised for the first time in opposition to a motion for summary judgment and which contradicted the party's prior interrogatories answers, deposition testimony, and other parts of the opposition, was insufficient to create an issue of material fact.)

If the Court allows this ruse, Verisign still has no evidence about widespread dissemination to registrars. Verisign previously represented to the Court that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Declaration of Nicholas M. DePalma in Opposition to Defendants' Motion to Strike (Dkt. 151-1) at ¶ 8.) Accepting for argument's sake that 1,473 is the *minimum* universe of registrars, the record reflects communications to only 13 of these registrars, or less than one percent. As a matter of law, such narrow distribution fails to meet the "widespread dissemination" requirement under *Fashion Boutique*.

## 2.   None of the statements, even if they were repeated in multiple mediums, were widely distributed.

Verisign's emphasis that the Lanham Act *can* extend to non-traditional advertisements misses the point. The Act only does so when the non-traditional advertisement is widely disseminated. XYZ's statements were not.

Verisign effectively ignores the "widespread dissemination" requirement by selectively quoting *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011): "[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." (*See* Opp'n at 22.) But the *Reckitt Benckiser* district court noted in the very next sentence that "**Proof of widespread dissemination within the**

3

**relevant industry is a normal concomitant of meeting this requirement**.” 760 F. Supp. 2d at

452 (quoting *Fashion Boutique*, 314 F.3d at 57) (emphasis added).

Determining widespread dissemination is essentially a basic math problem. The relevant

purchasing public is divided by the number of individuals exposed to the statements at issue.

*Compare Applied Med. Res.*, 527 F. Supp. 2d 489, 493-94 (finding no claim after measuring

distribution of statements against the product at issue’s “nationwide, if not worldwide” market)

*with Reynolds Consumer Prods., Inc. v. Handi-Foil Corp.*, No. 13-CV-214, 2014 WL 794277, at *5

(E.D. Va. Feb. 27, 2014) (allowing claim where plaintiff presented evidence that statements

reached 25% of the relevant market). ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████ (*See* Motion SOF ¶¶8–9; *see also* Opp’n SOF ¶¶ 8

(undisputed), 9 (not responded to and therefore deemed admitted).) Measured against this

backdrop, XYZ’s various emails to individuals, blog posts seen by a few-thousand people, and

even the YouTube video seen by 52,000 people do not amount to widespread dissemination

because they amount to a fraction of a percent of the total market.

Verisign argues that because Negari stated XYZ’s *entire* website at one time received 3.2

million unique visitors, all those visitors must have seen each statement posted on XYZ’s blog.

This is akin to saying that if 3.2 million viewers tuned into NBC in a given month, then all 3.2

million would have seen every episode of every show. But this ignores that Google Analytics data

is available for each specific page where the statements at issue appear. Verisign argues that

“Defendants only identify ‘two’ blog posts.” But XYZ provided Google Analytics for each of the

seven pages at issue. (*See* Declaration of Grant Carpenter in Support of Defendants’ Motion for

Summary Judgment or Partial Summary Judgment (Dkt. 300) (“Dkt. 300.”) ¶ 3, Ex. 1.)

Verisign also complains that XYZ “made statements about registrations and purchases on

television, radio, and the Internet.” (Opp’n SOF ¶ 31.) Verisign offers no evidence of how widely

each statement was disseminated. Similarly, Verisign offers no evidence to support its allegation

that any “commercial republication” of these media stories was widely disseminated.

3. **XYZ's statements to bona fide news sources are not actionable under the Lanham Act.**

Verisign contends that XYZ's statements to news media are actionable because "Defendants' statements are not 'isolated,' but are repeated in such a way that demonstrates they were planned in advance." (Opp'n at 22.) But "[t]he fact that the [defendants] had an economic interest in making their statements to the [media outlet] does not alone transform their comments into 'commercial advertising or promotion.'" *Boule v. Hutton*, 70 F. Supp. 2d 378, 390 (S.D.N.Y. 1999), *aff'd on other grounds*, 328 F.3d 84 (2d Cir. 2003).

Under Verisign's logic, if someone gives the same (or similar) answers when asked the same (or similar) questions by several different media outlets, the speech is no longer protected by the First Amendment and becomes actionable under the Lanham Act. But this reasoning has been directly considered and repeatedly rejected. In *Gmurzynska v. Hutton*, the Second Circuit wrote:

> The allegation that defendants caused a journalist to write an article about the controversy with the museum is similarly inadequate under the Lanham Act. The journalist's article is not commercial advertising, commercial promotion, or commercial speech. Rather, it is speech that is traditionally granted full protection under the First Amendment. "As always with the public expression of opinion, 'we have been careful not to permit overextension of the Lanham Act to intrude on First Amendment values.'

*Gmurzynska v. Hutton*, 355 F.3d 206, 210–11 (2d Cir. 2004) (citing *Boule*, 70 F. Supp. 2d at 91–92). *see also Landrau v. Solis-Betancourt*, 554 F. Supp. 2d 117, 124 (D.P.R. 2008) ("even assuming defendant Solis (or his partner) had an economically-based motivation for providing the journalist with information that was later included in the article, that alone is not sufficient to transform the article into commercial speech."); *Croton Watch Co., Inc. v. National Jeweler,* 2006 WL 2254818, *10 (S.D.N.Y. Aug.7, 2006) ("A plaintiff cannot adequately plead a violation of the Lanham Act by simply alleging that defendant caused a journalist to write the article, the content of which plaintiff finds objectionable.").

Separately, Verisign has no evidence about how widely disseminated any of the media stories were. Without such evidence, a jury would have to speculate as to the audience of these

programs and websites. But raw speculation is not enough to survive summary judgment. *See Cavalier Tel., LLC v. Verizon Va. Inc.*, 208 F. Supp. 2d 608, 617–18 (E.D. Va. 2002) (no claim where "unspecified number of alleged contacts with [plaintiff's] customers is placed in the context of a total market of at least several million Virginia telecommunications consumers); *see also Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 574 (E.D. Va. 2004) (noting that while generalized allegations about widespread dissemination may satisfy the requirements of Rule 12(b)(6), they "would not be enough to survive a Rule 56 motion.").

**B.    Verisign cannot bring a Lanham Act claim for XYZ's "failure to state" additional facts about whether consumers paid for <.xyz> registrations.**

Verisign does not challenge XYZ's assertion that the statements about registration numbers were accurately based on the number of domain names in its zone file. (*See* Opp'n SOF ¶ 28.) Instead, Verisign argues that ████████████████████████████████████
███████████████████████████████████████████████████████████████████

Verisign argues XYZ's statements about registration numbers, market position, receiving its full wholesale price, revenue, and advertising budget are all false.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████. But a "failure to disclose" is not actionable under the Lanham Act because defendants are not responsible for misinterpretations of facts or for failing to disclose additional facts. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) and other cases cited in the Motion at 23–24.[1] Thus, even taking the facts in the light

---

[1] Including *MDM Grp. Assocs., Inc. v. Emerald Isle Realty, Inc.*, No. 2:07-CV-48-D, 2008 WL 2641271, at *4–5 (E.D.N.C. July 1, 2008) ("neither an implied statement nor a failure to state constitutes a 'description of fact' or 'representation of fact' under the Lanham Act."); *see also Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (S.D.N.Y. 1997) ("Avon

most favorable to Verisign and assuming certain consumers misunderstood XYZ's true
statements about registrations, Verisign's claim still fails.

██████████████████████████████, and Verisign's reliance on securities-fraud
cases, do not create an issue of disputed fact as to Verisign's *false advertising claim.* ████
██████████████████████████████████████████████████████████
██████████████████████████████.

   In Verisign's own survey, more than 99% of survey respondents did not mention anything
about purchases when asked an open-ended question about XYZ's statement. (Motion, Ex. M at
13; *see also* Opp'n SOF ¶ 39.) Verisign complains that XYZ "doubled down" in claiming that
"███████████████████████████████████████████████
██████████████████████████████. (*See* Opp'n at 1,
19–20.) But XYZ introduced detailed evidence that it received the full wholesale price for these
registrations, including:

- ████████████████████████████████████████████
  ██████████████████████
- ████████████████████████████████████████████
  █████████████████████
- ████████████████████████████████████████████
  ██████████████████████████████████████d
- ██████████████████████████████████████████████
  ██████████████████

   Against this overwhelming evidence, Verisign offers up ████████████████
██████████████████████████████████████ (Opp'n
at 1, 20.) This selective quote, without any testimony to support Verisign's interpretation, does

cannot be held liable under the Lanham Act for failing to state publicly that [Skin-So-Soft] is not
an effective insect repellent."); *Int'l Paint Co. v. Grow Grp., Inc.*, 648 F. Supp. 729, 730
(S.D.N.Y. 1986) ("[T]he Lanham Act ... impos[es] no affirmative duty of disclosure.").

not contradict XYZ's claim that it received the full wholesale price for each registration. 

Verisign cannot use a statement out of context about net earnings, made in an isolated email to negotiate a business transaction, to create an issue of fact about whether XYZ received its wholesale price. Similarly, Verisign's claim that Negari urged

*See id.* at 2, 20.)

Separately, Verisign argues the

, and Verisign offers no evidence to the contrary. As importantly,

.

Finally, Verisign misleadingly cites article by Michael Berkens indicates that on June 14, 2014, XYZ was not number one, but rather number 14. This article does not create a genuine dispute of fact. First, Verisign must rely on *admissible* evidence. "In assessing a summary judgment motion, a court is entitled to consider *only* the evidence that would be admissible at trial." *Kennedy v. Joy Technologies, Inc.*, 269 F. App'x. 302, 308 (4th Cir. 2008) (emphasis added); *see also Maryland Highways Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). The Berkens article is inadmissible hearsay that Verisign failed to disclose during discovery.[2] More importantly, the article confirms that XYZ literally had the most registrations of any new TLD and only drops to 14 when the author excludes the registrations associated with Network Solutions. Verisign failed to produce any

---

[2] Contrary to Verisign's assertion in its opposition, the article is not available at the Internet address provided, which resolves to a "Not found, error 404" message.

evidence—such as a consumer survey or expert testimony—that XYZ's statements about being the "No. 1 new gTLD" implied a statement about end-user purchases, as opposed to registrations.

**C.    Verisign has no admissible evidence of materiality, which is a required element for every false advertising claim.**

Every claim for false advertising requires a showing of materiality—*i.e.*, that the statement at issue "is likely to influence the purchasing decision" of consumers. *Scotts Co. v. United Indus. Corp.*, 315 F.3d at 272 (4th Cir. 2002) (citing *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). Verisign's opposition makes no reference to materiality. Instead, Verisign attempts to demonstrate "consumer impact" by misleadingly citing testimony offered ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████ (*See* Declaration of Kevin W. Weigand (Dkt. 315) ("Weigand Decl.") ¶ 13, Deposition Transcript of Holden Andrews, July 17, 2015 (Dkt. 315-10) at 61:17–18, 62:6–10.) At ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ (*Id.* at 61:17–22.) ██████████████████████████████████████████████ ████████████████████████. His speculative testimony is irrelevant, inadmissible, and does not create a dispute of fact. *See Greensboro Professional Fire Fighters Ass'n Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) (holding that testimony consisting of inadmissible hearsay or pure speculation is "neither admissible at trial nor supportive of an opposition to a motion for summary judgment.").

Verisign also cites Dr. Mazis's survey as evidence of materiality. (Opp'n SOF ¶ 48.) But Dr. Mazis expressly concedes the survey did not attempt to test how the statement may influence a consumers' purchasing decision. (Motion, Ex. N ¶ 16; Ex. K at 191:13–19, 191:22–24, 192:17–20.) And the survey tested only one statement out of the 60-plus Verisign complains of. Verisign must present admissible evidence of materiality for every statement.

Verisign's failure to identify admissible evidence in support of materiality is fatal to its claim, and the Court should grant summary judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

**D.  Verisign lacks evidence of causation and harm, and its mere allegations are insufficient to create an issue of material fact.**

Verisign now claims its damages evidence is not limited to Lauren Kindler's testimony. But Verisign's ████████████████████████████████████████████ ████████████████████████████████████████ (*See* Deposition Transcript of Scott Schnell, Aug. 14, 2015 ("Aug. 14 Schnell Dep.") (Dkt. 315-10) at 60:20–62:13; *see also* Motion, Ex. A at 5–7.) While Kindler may have relied on documents and information provided by Verisign as an assumption upon which to base her calculation, █████ ██████████████████████████████████.

**1.  Verisign's claims for lost profits, corrective advertising, and disgorgement of profits fail because Verisign has no evidence of causation.**

Verisign does not dispute that ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████. But when an expert "assume[s] that every sale [the defendant] made was attributable to the 'compare to' statement on the product," the expert's opinion is "fatally flawed." *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 122 (4th Cir. 2011). So Verisign's report is insufficient evidence to meet the Lanham Act's causation requirement. Because Verisign cannot meet the causation element, any evidence of "lost profits" is irrelevant.

Verisign ████████████████████████████████████████ ██████████████████████████ (Opp'n SOF ¶¶ 46–47.) To recover costs of corrective advertising, the law requires that Verisign demonstrate the advertising it undertook

10

(i) was a direct response to XYZ's statements, and (ii) was reasonable under the circumstances. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 491 (D.N.J. 2009).



Finally, Verisign makes no attempt to distinguish the authority XYZ offered on disgorgement. In *Logan v. Burgers Ozark Country Cured Hams Inc.*, the Fifth Circuit Court of Appeals carefully considered the very question at issue here and concluded that a Lanham Act plaintiff seeking disgorgement must prove that the profits it seeks to disgorge were tied to the violation of the Act. 263 F.3d 447, 464–65 (5th Cir. 2001). This requirement ensures that a plaintiff like Verisign cannot sidestep the Lanham Act's causation element by electing to pursue disgorgement of revenue that cannot be fairly traced to any false statements. By contrast, the district court case Verisign relies on—*X-IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 625 (E.D. Va. 2001)—considers the entirely separate question of whose burden it is to prove deductions *after* causation has been established. Verisign never established causation. So Verisign's claim for disgorgement of profits fails for lack of a causal nexus. *See PBM Products*, 639 F.3d at 122 (holding that even if defendant's messages were false, plaintiff must prove a causal connection between the false messages and plaintiff's damages.)

    **2.**    **Verisign's conclusory testimony** ███████████████ **is insufficient for injunctive relief after *Lexmark* and *eBay*.**

    Verisign does not contest XYZ's analysis of the Supreme Court's recent decisions in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390–94 (2014), *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006). When taken together, these decisions foreclose any presumption of irreparable harm in a Lanham Act case. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 214–17 (3d Cir. 2014). And Verisign's reliance on *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014) is misplaced. In that case, the witness provided specific, non-conclusory testimony detailing how and why the plaintiff's brand, reputation, and goodwill would be affected. *See Groupe SEB USA, Inc v. Euro-Pro Operating LLC*, No. 14-137, 2014 WL 2002126, at *9–10 (W.D. Pa. May 15, 2014), *aff'd*, 774 F.3d 192 (3d Cir. 2014).

    By contrast here, Verisign tries to rely on its head of marketing's ███████████ ███████████████████████████████████████████████████ (Opp'n at 26.) But a plaintiff cannot establish harm by simply having its executive testify that harm exists, without any other facts. Such self-serving testimony is no more than the presumption of harm that the Supreme Court rejected and is precisely the sort of "conclusory allegation [and] speculation" that cannot create an issue of fact at summary judgment. *Design Res.*, 789 F.3d at 500; *see also Lundgren v. AmeriStar Credit Solutions, Inc.*, 40 F. Supp. 3d 543, 550–51 (W.D. Pa. 2014) (granting summary judgment where plaintiff's evidence of reputational harm consisted of conclusory allegations such as those offered here). Verisign must present some evidence of harm other than its ███████████████████████████. Since Verisign does not have that evidence, the Court should grant summary judgment.

    **3.**    **Verisign offers no evidence that XYZ's statements to registrars caused any harm.**

    Verisign ███████████████████████████████████████. (Opp'n SOF ¶¶ 42, 50.) Verisign has no evidence that any ████████████████████████

███████████. *See Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382, 1387–89 (5th Cir. 1996)

(rejecting "inferences of causation based solely on the chronology of events, where the record

contains undisputed testimony to the contrary or other equally credible theories of causation.").

Verisign cannot show that any registrar took action in response to XYZ's emails.

In truth, 

██████████. (Motion, Ex. C at 138:19–139:1.)

Verisign has no evidence that the alleged "promotional statements" proximately caused the

registrars (or anyone else) to withhold trade from Verisign or otherwise cause it harm. *See*

*Lexmark*, 134 S. Ct. at 1382; *PBM Products*, 639 F.3d at 122. XYZ's ███████████ do not

provide a basis for a Lanham Act claim.

**E.    The Court can and should decide opinion and puffery as a matter of law.**

Without authority, Verisign claims that "Defendants are free to argue to the jury that their

false statements are puffery, but they cannot obtain summary judgment on this basis." (Opp'n at

29.) Verisign is mistaken. Courts dismiss false-advertising claims that are based on puffery—

statements so hyperbolic in nature that no reasonable consumer would ever rely on them. *See*

*Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881 (S.D.W. Va. 2014)

(collecting examples of cases from across the country deciding puffery as a matter of law). Even

statements that are tied to specific numbers—such as XYZ's "99%" and "9 out of 10" claims—

can be dismissed as a matter of law where the numbers are so large that no consumer could

reasonably rely on it. *See In re General Motors Corp. Anti–Lock Brake Products Liab. Litig.*, 966 F.

Supp. 1525, 1531 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th

Cir. 1999) (dismissing a claim for fraud based on an advertisement statement that "crash-

avoidance systems, such as anti-lock brakes, '[are] 99 percent more effective than protective systems' such as air bags…'").

The Court should grant summary judgment on each of the statements based on XYZ's and Negari's opinions (such as their claims that XYZ would be "the next <.com>" and that there are no "good" <.com> domain names left). And the Court should grant summary judgment as to those statements that are obvious exaggerations too hyperbolic for any reasonable consumer to rely on (such as Negari's opinion in off-the-cuff remarks in media interviews that "the only thing that is left is something with a dash, or maybe three dashes and a couple numbers in it").

**F.    The Court should grant partial summary judgment for any statement that fails to meet at least one element of a Lanham Act claim.**

Verisign's single count for false advertising is premised ██████████████████████. Verisign argues that XYZ "selectively omit[s]" statements identified by Verisign. (Opp'n SOF ¶¶ 23–24.) But XYZ cites to the very disclosure that Verisign held out to the Court as a list of all of the statements at issue. (*See* Exhibit A to Plaintiff's Motion in Limine to Admit Defendants' Advertising Statements (Dkt 260-1) ("Dkt. 260-1").)

Verisign errs by suggesting that "the jury has the right to evaluate the entirety of Defendants' statements in the context of the overall advertising campaign." Rather, each statement must be evaluated in the context of the communication in which it appears. Verisign is not permitted to piece together multiple communications to draw out a message that was never presented in the marketplace. *See e.g. Design Res.*, 789 F.3d at 501–05 (analyzing each statement individually); *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) (dismissing false advertising claim because "[n]one of the statements at issue here satisfies all the necessary elements".) In fact, the lone case Verisign cites in connection with this issue supports that the Court should analyze on a *statement-by-statement* basis rather than a cumulative one. *See Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1017–22 (N.D. Cal. 2009) (analyzing each statement at issue individually). The Court should

14

grant partial summary judgment on any individual statement that fails to meet an essential element of a Lanham Act claim.

     For example, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ Opp'n SOF ¶ 26, PX-218.) But Verisign fails to present any evidence to show the application was submitted—which it was not. Without such evidence, it remains an undisputed fact that ██████████████████████ that Verisign complains were ever placed into interstate commerce. (Motion, Ex. I at 53:20–55:8, 96:21–24, 97:16–98:17, 114:13–115:1, 118:23–19:2; *see also* Dkt. 300. ¶ 8; *see generally* Supplemental Binder Containing Documents for Statements at Issue (Dkt. 277-1), Exs. 143, 215, 218.) The Court can grant partial summary judgment if it finds a material factual issue for some but not all statements.

## Conclusion

     Verisign's opposition does not address most of XYZ's legal arguments, and instead attempts to manufacture disputed issues of fact. Verisign fails to present admissible evidence of any genuine material dispute. XYZ's statements reached no more than a tiny fraction of a percent of the relevant purchasing public, and thus cannot constitute commercial advertising or promotion. Verisign has no evidence of materiality or that consumers withheld trade from Verisign. The Court should grant summary judgment.

Dated October 13, 2015.           Respectfully Submitted,

                      /s/ Timothy J. Battle
                      Timothy J. Battle
                      TIMOTHY J. BATTLE LAW OFFICES
                      VSB# 18538
                      524 King Street
                      Alexandria, VA 22320-4593
                      (703) 836-1216 Tel
                      (703) 549-3335 Fax
                      tjbattle@verizon.net

Derek A. Newman, admitted *pro hac vice*
Jason B. Sykes, admitted *pro hac vice*
Derek Linke, admitted *pro hac vice*
Sophy J. Tabandeh, admitted *pro hac vice*
NEWMAN DU WORS LLP
100 Wilshire Blvd., Suite 940
Santa Monica, CA 90401
(310) 359-8200 Tel
(310) 359-8190 Fax
dn@nemanlaw.com

*Counsel for Defendants XYZ.com LLC and
Daniel Negari*

## CERTIFICATE OF SERVICE

I certify that on October 13, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Taylor S. Chapman <TSChapman@Venable.com>
Nicholas Martin DePalma <nicholas.depalma@venable.com>
Randall Karl Miller < rkmiller@venable.com>
Kevin W. Weigand <kweigand@venable.com>
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182

/s/ Timothy J. Battle
Timothy J. Battle
VSB# 18538
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
tjbattle@verizon.net
*Counsel for Defendants XYZ.com LLC and Daniel Negari*