**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **VERISIGN, INC.,**<br>**Plaintiff,**<br>**v.**<br>**XYZ.COM, LLC, et al.,**<br>**Defendants.** | **Case No. 1:14-cv-01749-CMH-MSN** |

**PLAINTIFF'S MOTION FOR ADVERSE INFERENCE**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiff VeriSign, Inc. ("Verisign") moves for an adverse inference arising out of Defendants' failure to produce a full and complete General Ledger in native format. As set forth below, Defendants have never cured a refusal to produce a key document subject to a request for production issued the day after discovery commenced. Five months after it was due—and after extensive motions practice—Defendants' accountant finally produced a 14 page General Ledger ***in .pdf form*** – a document in possession of both XYZ and the accountant – which contains six suspicious line entries for the [redacted] at the heart of this lawsuit. But Defendants still refuse to produce this document in full and ***native form ordered by this Court*** so that Plaintiff could view what Defendants' accountant testified was additional information, including ***metadata*** that relates to the [redacted]. Consistent with this Court's order for native production, the Fourth Circuit notes that metadata observable from native production can yield "crucial evidence."[1]

[1] *Country Vintner of North Carolina, LLC v. E&J Gallo Winery, Inc.*, 718 F.3d 249, 253 n.4 (4th Cir. 2013).

This violation of discovery obligations comes after a long history of Defendants attempting to hide responsive information, which to this day has been improperly withheld. An adverse inference instruction is the appropriate remedy for Defendants' discovery misconduct.

**INTRODUCTION**

1. Defendants' General Ledger is critical evidence because it contains the financial entries concerning the [redacted] at the heart of this case.

2. Verisign contends that Defendants' promotional statements about their financial performance are false and misleading under the Lanham Act. As relevant here, Verisign contends that the [redacted]—and then blatantly violate the Lanham Act by stating that Defendants have "***sold***" the domain names that were stuffed (and asserting that they are the number one "***selling***" new gTLD and that these "***sales***" generated over $5 million in "***revenue***" in XYZ's first six months).

3. Verisign has sought Defendants' financial records related to the Network Solutions transaction since the inception of this case—and the Court has expended resources ordering Defendants to produce this information.

4. Defendants' accountant produced a .pdf copy of a General Ledger only ***after*** discovery closed, and only after Defendants violated orders from this Court and attempted (unsuccessfully) to circumvent an order from a federal court in California (where their accountant resides). As XYZ knew, a ***.pdf*** of a General Ledger is grossly insufficient because the accountant testified at deposition that the ***native*** form contains ***additional information about*** [redacted]

[redacted] in a "drop down" screen that Defendants did not produce. In fact, the General Ledger is never used as a .pdf in the ordinary course of business; instead, it is a set of data that XYZ and its accountant use in electronic form (a reality of modern business practice that justified this Court's prior Order that documents be produced in native format). ECF 87, 6/12/15 Hr'g Tr. 31:20-32:1, attached as Exhibit B to Weigand Decl.

5. Verisign demanded immediate production of the complete and native form of the General Ledger but Defendants never produced it.

6. Trial is less than three weeks away. The parties' dueling accounting experts have been deposed. Discovery is closed. Even if Defendants produce the complete and native form of the General Ledger today, Verisign would be deprived of its rights to discovery and analysis before trial.

7. For the reasons explained below, Verisign requests that the Court fashion an appropriate remedy, including an instruction that notifies the jurors that Defendants unlawfully withheld the General Ledger in violation of Court orders, and that the jury can conclude that the information would have supported Verisign's theory that Defendants received no payments for the over 375,000 .XYZ domain names given away by Network Solutions.

## **RELEVANT BACKGROUND**

8. On March 31, 2015, the day after discovery commenced, Verisign served its first set of discovery requests on Defendant XYZ, which included a request for documents "reflecting all payments between any domain registrants (*i.e.*, Network Solutions…) involved in the [Network Solutions transaction]." ECF 40-2 (Request 23) (emphasis added).[2]

---

[2] Verisign made the identical request of Defendant Negari. ECF 40-1 (Request 21).

9. Verisign moved to compel and moved to strike Defendants' objections. ECF 40. At the hearing on this motion, Defense counsel represented that "XYZ and Mr. Negari have ***not*** declined to produce any documents in response to the discovery requests." 5/15/15 Hr'g Tr. 6:17-18, attached as Exhibit A to Weigand Decl. (emphasis added). The Court granted the motion to compel and expressly ordered Defendants to communicate any objections that they were standing on "immediately, so that those matters can be resolved." Weigand Decl. Exhibit A, Tr. 31:15-20. Defendants never once communicated they were standing on any objection to Request 23.

10. Defendants knew that financial documents were at issue because they relied on them at the same hearing in arguing for an outside counsel's eyes only Protective Order. Weigand Decl. Exhibit A, Tr. 14:9-11 (Defense counsel arguing "most of the documents are proprietary, confidential, internal documents. They include ***financial analysis***…"); *id.* 17:9 ("its ***financials***").

11. The parties came before the Court on June 12, 2015 on Verisign's motion to enforce the Court's prior order and listed Negari RFP 21 as outstanding. ECF 60 ¶5(f). Verisign explained that Defendants "have not informed Verisign that they are withholding documents based on any objection" and that Defendants are "assisting nonparties in their efforts to avoid producing documents in response to Verisign's subpoenas." ECF 60 ¶7.

12. During the hearing, the Court ruled that Defendants were ***required to produce documents in native form*** (given the fact that Defendants had previously produced excel spreadsheets as .PDF, which generated over 40,000 pages of gibberish).

13. In particular, the Court ordered:

> "[o]n the issue of ESI, clearly you recognize that you must produce documents in a format that both sides are capable of looking at,

> whether it's Relativity, whether it's some other database, you can talk to each other and figure out the best mechanism for providing it in a ***native file format,*** or in Excel if it is Excel, or if it is OCR readable."

ECF 87, Hr'g Tr. 31:20-32:1, attached as Exhibit B to Weigand Decl. (emphasis added).

14. The Court noted, "[i]t certainly sounds to me like both counsel are articulating that they understand there is ***an <u>obligation</u> and that it is appropriate to produce documents in a way that is easily searchable and manipulable*** by the other side so that they can look at what they have and understand it." Weigand Decl. Exhibit B, Tr. 22:19-24 (emphasis added).

15. As with most critically important documents, the General Ledger in native form is responsive to multiple requests, not just Negari 21 and XYZ 23, but also requests for "all audited and unaudited financial statements, including but not limited to, income statements, balance sheets, ***cash flow statements***, and documents reflecting operating expenses from January 1, 2012 to present" and "Documents sufficient to show whether payments from Web.com and/or Network Solutions to you for sales of .XYZ domain names are reported as revenue on ***XYZ's books, records***, and financial statements." *See* Weigand Decl. Exhibit C. (Requests 28 and 30).

16. Verisign again moved to compel, and the Court ordered XYZ to "produce all relevant documents" by July 29, 2015. ECF 167. Defendants again failed to produce the General Ledger. Verisign again moved to compel on August 7, 2015. *See* ECF 193. In that motion, Verisign explained that "[i]nstead of fully complying with the Court order, Defendants produced some information when due, but have not produced documents in the possession of their accountant… Defendants have actually interfered with Plaintiff's subpoena to [the accountant], requiring unnecessary motions practice in California." *Id.* ¶3.

17. During the Court's hearing, Defendants' counsel assured the Court that all documents had been produced on multiple occasions:

> MR. BATTLE: On that legal issue, no, sir. But they have given -- XYZ.com and Daniel Negari through counsel have given VeriSign tax returns ***and the financial payments***, period. ***That's all there is***. So they have turned -- they have turned that material over. It's a nonissue.
>
> THE COURT: So let me make sure I'm understanding the full universe of the facts and the information here. Are you telling me that the defendants have gone to the accountant, Mr. Aziz-Lavi, and obtained from him all of the documents that are responsive to document requests number 28, 29 and 30?
>
> MR. BATTLE: I believe so, Your Honor, yes. ***They have turned over everything that -- responsive to that***. There is a few -- I will try to answer your questions as directly as I can, and then there are a couple of points that I think are important. ***Yes, I believe they've turned over everything***…

8/14/15 Hr'g Tr. 5:17-6:8, attached as Exhibit D to Weigand Decl. (emphasis added).

18. The Court asked probing questions about this representation:

> THE COURT: So your representation to the Court is that defense counsel has communicated with Mr. Aziz-Lavi, asked him for the documents that are responsive to those document requests that are required to be produced, ***collected that information, and provided it to the plaintiff already***?
>
> MR. BATTLE: ***Yes, sir***. Because this is -- what is confusing about this is there are financial statements and there are tax returns, and they have been turned over. ***And whatever data they get from -- to the raw data that ends up in this format, went to the accountan***t. And then they become financial statements or tax returns. ***And they have turned those over***.

Weigand Decl. Exhibit D, Tr. 6:23-7:9 (emphasis added).

19. The Court ordered that Defendants "certify that they have in fact, the defense, all of the defendants have communicated with the accountant previously and obtained documents that are responsive, and turn those documents over." Weigand Decl. Exhibit D, Tr. 17:2-5.

20. The Court expressly warned all parties that: "If it turns out that there are documents that have not been turned over and that leads to a late production, I will entertain a

motion that is not before the Court right now with regard to what the appropriate remedy is." Weigand Decl. Exhibit D, Tr. 18:1-4; *see also* ECF 212 (Order).

21. On August 17, Defendants filed an unsigned certification stating that Defendants "confirmed that all responsive documents were produced and forwarded documents for our review." ECF 214. Defendants assured the Court that "the only other responsive documents the accountant has are year-over-year comparisons generated for XYZ's 2012, 2013, and 2014 balance sheets and profit-and-loss statements," and such information was already produced. *Id.*

22. Unfortunately, Defendants never turned over all responsive documents provided to their accountant. Defendants did not turn over the General Ledger—reflecting the precise line entries of [redacted]. Defendants had the General Ledger in their possession ***the entire time***. After multiple motions, Court orders, and certifications to the contrary, XYZ withheld this document.

23. Verisign received an incomplete form of a General Ledger, but only after three months of motions practice in California over Verisign's subpoena to Defendants' accountants, a dispute that was initiated and supported by ***Defendants' counsel.*** In California, Defendants—not the third-party accountant—moved to quash the subpoena on June 17. In a coordinated strategy, Defendants obtained a declaration from the accountant stating that it would require "two employees to spend nearly 350 hours devoted to locating and producing responsive documents" related to three categories in the subpoena. Weigand Decl. Exhibit E. On August 26, the federal court in California ordered the accountant to produce XYZ's General Ledger no later than September 9. Weigand Decl. Exhibit F. On September 3, Defendants filed an *ex parte* application with the California Court, again asking the Court to allow them to withhold production of the General Ledger. Weigand Decl. Exhibit G. The federal court in California

immediately rejected Defendants' motion and held it was "wholly insufficient to warrant the relief being sought." Weigand Decl. Exhibit H. Despite the representations to the federal court in California about 350 review hours, on September 9, 2015—five months after Defendants were obligated to produce it—the accountant produced just 83 pages, and this included the 14 page General Ledger. *See* Weigand Decl. Exhibit I.

24. On September 9, the accountant produced a copy of an incomplete XYZ General Ledger in .PDF format. The ledger had entries specifically referencing the Network Solutions giveaway (with the word "SPLIT"). During the accountant's September 22 deposition, Verisign's counsel asked specifically about these entries and what the word "SPLIT" meant in this context.

25. The accountant testified that [redacted]. Weigand Decl. Exhibit J, Tr. 33:13-35:13. Verisign requested the Native file be produced:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Weigand Decl. Exhibit J, Tr. 92-93.

The accountant explained that in the ordinary course of business, the General Ledger was sent to him by Defendants in an electronic—not .pdf—format:

> [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted] [redacted] [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted]
>
> [redacted]

Weigand Decl. Exhibit J, Tr. 75:16-76:13.

26. Verisign has every reason to believe that Defendant Negari intentionally refused to disclose his full General Ledger in discovery—and that Defendant Negari encouraged the accountant to refuse to disclose the full General Ledger in native format to conceal material information about how he accounted for the Network Solutions transaction. The accountant's lawyer—who also represents Defendant Negari—instructed the witness not to answer the question regarding who was paying his legal fees.[3] Weigand Decl. Exhibit J, Tr. 90:2-19.

---

[3] Eugene Rome has filed *pro hac vice* applications to appear as a lawyer for Daniel Negari in other matters in this Court. *See Verisign, Inc. v. CentralNic Limited, et al.*, No. 1:15-cv-01028 (E.D. Va.) (ECF 34).

Following the deposition, Verisign asked Defendants' counsel to produce a native version of the QuickBooks ledger, but Defendants ignored these requests.

**ARGUMENT**

27. Rule 37(b) authorizes the Court to impose discovery sanctions for failure to comply with a court order, including, among other things, ordering that certain facts be taken as established, prohibiting the sanctioned party from supporting or opposing claims or defenses, striking pleadings, and imposing costs. Fed. R. Civ. P. 37(b).

28. The Court must consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. For Advancement, Educ. & Employment of Am. Indians,* 155 F. 3d 500, 504 (4th Cir. 1998); *accord Belk v. Charlotte-Mecklenburg Bd. Of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*).

29. Here, Verisign and the Court have spent substantial time and effort dealing with Defendants' discovery obstruction concerning Defendants' financial information, and as a direct consequence, Verisign received a critical document (a 14-page General Ledger) five months later, after expert discovery closed, and Verisign has ***never received the complete and native format*** of this document (which is the way the document was used and which would reveal additional information, including metadata relating to the [redacted]). Verisign has obtained multiple orders in this Court and multiple orders in the federal court in California covering this document—and, when it was finally produced after the close of discovery, Verisign received a .pdf omitting key information that should have been produced in native format.

30. The Fourth Circuit recognizes that "Metadata may be totally innocuous, such as formatting instructions and margin determinations, but ***sometimes metadata provides crucial evidence that is not available in a paper document***…. The hidden text may reflect editorial comments, strategy considerations…. Metadata may provide information that a paper document would not provide or information that differs from a paper document. Metadata may also reveal that a document has been changed or backdated." *Country Vintner of North Carolina, LLC v. E&J Gallo Winery, Inc.*, 718 F.3d 249, 253 n.4 (4th Cir. 2013) (quoting Jennifer M. Smith, *Electronic Discovery and the Constitution: Inaccessible Justice*, 6 J. Legal Tech. Risk Mgmt. 122, 138-39 (2012)).

31. Defendants repeatedly represented that they had produced all responsive materials to this Court—representations that, only after Verisign received an order compelling Defendants' accountant to produce documents in California—were unmasked as not accurate.

32. It is clear that Defendants have succeeded in depriving Verisign of critical information with trial less than three weeks away. Defendants have also succeeded in distracting Verisign from trial preparation by forcing Verisign to chase the information to which it was entitled for 5 months and now to file this motion.

33. An adverse inference jury instruction is the appropriate remedy in these circumstances. *See Flame, S.A. v. Indus. Carriers*, 2014 U.S. Dist. LEXIS 109954, at *40-42 (E.D. Va. Aug. 8, 2014) (prohibiting certain evidence from being introduced, ordering costs, and holding certain evidence as established "because of FBP's violation of the discovery orders, and because of its history of repeated abuses and non-compliance in this matter."); *Scott v. GMAC Mortg., LLC*, 2011 U.S. Dist. LEXIS 40113, at *8-11 (W.D. Va. Apr. 13, 2011) (magistrate judge order granting attorneys' fees and recommending that the court enter default judgment

against defendant regarding liability and, "in the event the case proceeds to trial, issue a jury instruction concerning Defendant's failure to disclose, and informing the jurors that they may draw an adverse inference from such non-disclosure."); *S. New Eng. Tel. Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 96 (D. Conn. 2008) (ordering default judgment where all defendants willfully violated the court's discovery orders by failing to turn over their ***General Ledgers*** and other business records, lying to the court about the inability to obtain documents from third parties, and destroying and withholding documents that were within the scope of discovery requests and orders).

**CONCLUSION**

WHEREFORE, Verisign respectfully requests that the Court:

Give this instruction to the jury:

> Verisign requested that .XYZ produce its financial information about the Network Solutions transaction in discovery. Defendants' General Ledger was responsive to this discovery request and in fact contains financial information about the Network Solutions transaction discussed in this case. This Court ordered .XYZ to produce discovery in Native Format so that Verisign could view metadata that its accountant testified existed that relates to the Network Solutions transaction. Oftentimes metadata provides crucial evidence that is not available in a .PDF document. Defendants violated this directive and produced an incomplete General Ledger five months after it was due, which itself was a violation of the court order; and further, the production of Defendants 14-page General Ledger was produced in .PDF format, not Native Format, so that Verisign could not see the complete General Ledger, including the document's metadata. You the jury are

entitled to conclude that this wrongfully withheld information would have supported Verisign's theory that [redacted]

Preclude Defendants from arguing at trial that they received [redacted]; and

Award Verisign all costs and fees incurred in seeking to obtain documents related to Defendants' accountant in this Court and the United States District Court for the Central District of California.

**LOCAL RULE 37 CERTIFICATE**

Plaintiff's counsel states that prior to filing this Motion it has conferred in a good faith effort with Defendants' counsel but was unable to reach agreement to resolve this dispute.

Dated: October 16, 2015

/s/

Randall K. Miller (VSB No. 70672))
Nicholas M. DePalma (VSB No. 72886)
Kevin W. Weigand (VSB No. 81073)
Taylor S. Chapman (VSB 81968)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Phone: (703) 905-1404
Facsimile: (703) 821-8949
E-mail: rkmiller@venable.com
*Counsel to Plaintiff VeriSign, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Timothy J. Battle
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
Email: tjbattle@verizon.net

Derek A. Newman
Newman Du Wors, LLP
100 Wilshire Boulevard, Suite 940
Santa Monica, CA 90401
310.359.8188 Tel
310.359.8190 Fax
Email: dn@newmanlaw.com
*Counsel to Defendants XYZ.COM, LLC and Daniel Negari*

I further certify that on this 16th day of October, 2015, the foregoing will be served via hand-delivery on:

Timothy J. Battle
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
Email: tjbattle@verizon.net
*Counsel to Defendants XYZ.COM, LLC and Daniel Negari*

/s/__________________
Randall K. Miller (VSB No. 70672))
Nicholas M. DePalma (VSB No. 72886)
Kevin W. Weigand (VSB No. 81073)
Taylor S. Chapman (VSB 81968)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Phone: (703) 905-1404
Facsimile: (703) 821-8949
E-mail: rkmiller@venable.com
*Counsel to Plaintiff VeriSign, Inc.*