IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|                          |   |                                    |
|--------------------------|---|------------------------------------|
| VERISIGN, INC.           | ) |                                    |
|                          | ) |                                    |
|    Plaintiff, | ) |                                |
|                          | ) |                                    |
|                          | ) |                                    |
| v.                       | ) | Civil Action No. 1:14-cv-01749     |
|                          | ) |                                    |
|                          | ) |                                    |
| XYZ.COM, LLC, ET AL      | ) |                                    |
|                          | ) |                                    |
|    Defendants. | ) |                                 |
|                          | ) |                                    |

MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants XYZ.COM, LLC and Daniel Negari's ("XYZ" or "Defendants") Motion for Summary Judgment.

Plaintiff Verisign, Inc. ("Verisign" or "Plaintiff") is a Delaware corporation with its principal place of business in Reston, Virginia. Defendant XYZ is a Nevada corporation with its principal place of business in Carson City, Nevada. Defendant Daniel Negari is the Chief Executive Officer ("CEO") and founder of XYZ. This Court has jurisdiction pursuant to 28 U.S.C §§ 1331 as the action arises out of alleged violations of the Lanham Act. See 15 U.S.C. § 1125(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events occurred in this District.

Plaintiff and Defendant are in the business of internet domain name registrations. Plaintiff is an industry leader with over 120 million registrations in the <.com> and <.net> space. Defendant is a new competitor that entered the market in 2014 offering registrations in the <.xyz> space. Plaintiff alleges that Defendants made numerous false statements in violation of 15 U.S.C. § 1125 that can be categorized as follows: 1) statements regarding <.com> availability; 2) non-public statements about Defendants' revenue; 3) statements about Defendants' registration numbers; and 4)statements about Defendants' marketing budget.

Plaintiff alleges that statements made by Negari in a National Public Radio ("NPR") interview were false as it relates to <.com> availability. Specifically, Plaintiff alleges Negari said,

> "[a]ll the good real estate is taken. The only thing that is left is something with a dash or maybe three dashes, and a couple numbers in it. Did you know that 99% of all registrar searches today result in a 'domain taken' page? [O]n average, nine out of – nine out of ten .com searches show up as unavailable."

Plaintiff alleges that XYZ engaged in false advertising when it stated that NPR described XYZ as the next <.com>. Plaintiff also alleges that false statements were made in a 35-second video posted on the video-sharing site YouTube titled "MoveOver.com--

.xyz is for the next generation of the internet."[1] The video shows a dirty old Honda with a license plate that reads <.com>, next to a shiny new Audi with a license plate that reads <.xyz>. The narrator claims "with over 120 million dot coms registered today, it's impossible to find the domain name that you want. It's 2014 and the next generation of domain names is here."

Plaintiff alleges that Defendants made non-public[2] false statements about Defendants' revenue. Specifically, Plaintiff alleges that Negari's following statements convey a statement about revenue: 1) "[m]y company has received 775,000+ registrations and ... generated over $5 million in revenue ...;" 2) "[w]e've sold over 600,000 domains just in the four months that we've been live;" 3) "[w]e've sold about 800,000 dot XYZ domain names since we've launched...; and 4) "[o]ur wholesale price is around $8."

Plaintiff alleges that Defendants made false statements via e-mail and blog posts regarding its registration numbers when it claimed to be the top-selling new Top-Level Domain ("TLD") at various times. Specifically, Plaintiff alleges that Defendants misrepresented the number of registrations and confused

---

[1] The video can be viewed at the following URL: https://www.youtube.com/watch?v=uh_i13jluqs

[2] These statements were internal communications between Negari and business partners, and between XYZ employees and media consultants.

consumers into thinking free-trial domain names that were
allegedly given away were actually sold at a wholesale price.

Plaintiff alleges that Defendants falsely posted online
that "[t]he .xyz registry has put a multi-million dollar
awareness campaign in place to educate users on what .xyz is..."
Specifically, Plaintiff alleges that Defendant's marketing
budget consisted primarily of a roundtrip transaction where
domain names were exchanged for advertising credit.

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate if the pleadings and evidence
before the Court show no genuine dispute as to any material fact
and that the moving party is entitled to a judgment as a matter
of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986). While the Court will view
the facts and inferences drawn in the light most favorable to
the nonmoving party, the party opposing the motion for summary
judgment must put forth specific facts showing a genuine issue
for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986). "[I]t is ultimately the nonmovant's burden to persuade
us that there is indeed a dispute of material fact. It must
provide more than a scintilla of evidence—and not merely
conclusory allegations or speculation—upon which a jury could
properly find in its favor." Design Res., Inc. v. Leather Indus.
Of Am., 789 F.3d 495, 500 (4th Cir. 2015) (citations and

quotations omitted). In presenting "more than a scintilla of evidence," a party may use expert witnesses. Rule 702 of the Federal Rules of Evidence states in pertinent part that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if ... the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702 assigns "the judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc. 509, U.S. 579, 580 (1993).

When making a claim under the Lanham Act, a plaintiff must prove that:

> "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Design Res., Inc., 789 F.3d at 501 (quoting *PBM Products, LLC v. Mead Johnson & Co.,* 639 F.3d 111, 120 (4th Cir. 2011).

"Because the plaintiff must establish all five elements of the claim, failure to establish any one element is fatal to the claim." Id.; see also Celotex 477 U.S. at 323.

A factual statement is capable of "empirical verification." Design Res., Inc. 789 F.3d at 502, 505. "In analyzing whether an advertisement ... is literally false, a court must determine, first the unambiguous claims made by the advertisement ... and second, whether those claims are false." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 274 (4th Cir. 2002) (quoting Norvartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3rd Cir. 2002)). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Id.

However, an opinion is not actionable under the Lanham Act and conveys a subjective, rather than empirical viewpoint. EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71 F. Supp. 3d 525, 554 (D. Md. 2014); see also Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 498-99 (5th Cir. 2000), cert denied, 532 U.S. 920; Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1311 (11th Cir. 2010).

Puffery is a type of opinion statement and "exists in two general forms: (1) exaggerated statements of bluster or boast

6

upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." See Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390-91 (8th Cir. 2004); see also Pizza Hut, 227 F.3d at 496-97. In Imagine Medispa, LLC v. Transformations, Inc., the court cited cases from across the country in deciding puffery as a matter of law. 999 F. Supp. 2d 873, 881 (S.D.W. Va. 2014).

Negari's statements in the NPR interview that "all the good real estate is taken" is an opinion, not a verifiable fact. Even Plaintiff's own <.com> availability expert Andrew Simpson admitted that whether a domain is a "good" domain is subjective to the registrant. Further, NPR did in fact describe XYZ as the next <.com>. XYZ reporting this fact in advertising is not a false statement. Further, according to Plaintiff's own data, <.com> names are largely unavailable. In a given month, Plaintiff reports that it receives about two (2) billion requests to register <.com> domain names, yet fewer than three (3) million are actually registered. Most of the requests fail because the requested <.com> name is unavailable. Three (3) million out of two (2) billion is less than one percent (1%); thus, more than ninety-nine percent (99%) of <.com> names are unavailable. The statements made during the NPR interview

consisted of statements of fact, opinion, and puffery, and the statements of fact have not been shown to be false.

The video posted to YouTube is puffery and opinion. It displays no actual domain names, and communicates a subjective measure of value and superiority, not capable of being proven false. The message communicates Defendants' opinion of itself as a shiny new sports car and nothing more. See C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P. 131 F.3d 430, 435-37 (4th Cir. 1997) (holding comparative superiority claims must be facts capable of being disproven).

The statements regarding Defendants' revenue and number of registrations are statements of fact that are verifiably true. The communications cited by Plaintiff were internal exchanges between Negari and XYZ employees, and other media consultants. Nothing in the record supports the notion that these exchanges were false. Plaintiff further relies on a deal XYZ made with Web.com in which Web.com purchased 375,000 domain names for a price of $8 each totaling $3 million dollars. In exchange, XYZ purchased advertising from Web.com in the form of 1,000 impressions for $10 each, at a total cost of $3 million dollars. Instead of cash exchanging hands, advertising credit was given to XYZ and the <.xyz> domain names were given to Web.com, who subsequently gave them away as free trials to their subscribers. Pursuant to the Generally Accepted Accounting Principles and an

independent audit by a reputable accounting firm, this exchange was determined to be fair value. Plaintiff also relies on this deal as the basis for their claiming that Defendants made false statements regarding its multi-million dollar marketing budget. This Court finds the statements regarding the Defendants' revenue, registration numbers, and marketing budget to be true.

Plaintiff admits that the "zone file[3]," contains accurate numbers of domain names registered in the TLD. When the Defendants stated they were a market leader in new TLD's and that they had the most new registrations than any other TLD, they were basing that information off of an accurate zone file. Further, the zone file confirms that there are over 120 million <.com> registrations and one (1) million <.xyz> registrations. These statements are also true.  The Plaintiff fails to meet the first element of the Design Res., Inc. test

Plaintiff must prove the misrepresentation is material. There is a slight split in circuits around the country on deciding the issue of materiality. The First, Second, and Eleventh Circuits held that even when a statement is literally false, a plaintiff must demonstrate materiality to show the influence on consumers. See Cashmere & Camel Hair Mfrs. Inst. V. Saks Fifth Ave., 284, F.3d 302, 311 (1st Cir. 2002); Nat'l

---

[3] A "zone file" is an industry-wide database listing of most, but not all registered domain names for a given TLD.

Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2nd Cir. 1997); Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1250 (11th Cir. 2002). The Fifth Circuit disagreed in holding that materiality can be presumed from a literally false statement. See Pizza Hut, 277 F.3d at 497.

Under either analysis, the materiality element cannot be shown. The Fifth Circuit analysis fails because this Court has found that the statements made by the Defendants were true. Assuming for sake of argument that the Defendants' statements were false, materiality is still not shown. The Plaintiff presents no evidence to show that consumers were influenced by the statements made by the Defendants. The Plaintiff chose not to test materiality in the consumer survey conducted by its consumer survey expert Michael Mazis. Further, there are no testimonials or other evidence of the consumer decision making process that would show materiality.

"Where the advertisement is literally false, a violation may be established without evidence of consumer deception." Scotts, 315 F.3d at 273, (quoting Cashmere & Camel Hair Mfrs., 284 F.3d at 311). "[B]ut, absent a literal falsehood, [a court] may find that a statement is impliedly misleading only if presented with evidence of actual consumer deception." Id. (quoting Abbot Labs v. Mead Johnson & Co., 971 F.2d 6, 14 (7th

Cir. 1992). The deception must impact a substantial segment of its audience. Id. at 278, 280.

The Plaintiff correctly states that the Lanham Act is a strict liability statute where intent is not required. However, the evidence relied upon by the Plaintiff, primarily the alleged false statements, attempts to show intent to deceive the receiving audience, which even if were true, is not enough to show actual deception required by the statute. Further, the survey conducted by the Plaintiff only measured whether consumers believed that <.xyz> domain name registrations were "purchases." The logical conclusion that can be drawn from this survey question is that consumers may or may not differentiate between "purchased" and "unpurchased." This conclusion does not show deception on the part of the Defendants.

The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. §1127; see also Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco, 329 F.3d 359, 363 (4th Cir. 2003) (holding that "commerce" under the [Lanham] Act is coterminous with that commerce that Congress may regulate under the Commerce Clause of the United States Constitution). The internet is considered an "instrumentality of interstate commerce," and as such, satisfies the fourth element of the Design Res., Inc. test. AvePoint, Inc. v. Power Tools, Inc., 981 F. Supp. 2d 496,

512 (W.D. Va. 2013); see also Bros. of Wheel M.C. Executive
Council, Inc. v. Mollohan, 909 F. Supp. 2d 506, 538 (S.D.W. Va.
2012) aff'd sub nom. Bros. of the Wheel M.C. Executive Council,
Inc. v. Mollohan, 609 F. App'x 149 (4th Cir. 2015) (holding that
internet activity is a use in commerce). The Defendant posting
the video to YouTube and making statements online meet the
element of putting the alleged false statements in interstate
commerce.

In order to succeed on a Lanham Act claim, the Plaintiff
must show damages "either by direct diversion of sales or by a
lessening of goodwill associated with its products." Design
Res., Inc., 789 F.3d at 501. In order to show lost profits or to
obtain a disgorgement of Defendants' profits, Plaintiff must
show a causal connection between the alleged false statements
and the associated economic damages. Id.; see also Seven-Up v.
Coca Cola, 86 F.3d 1379, 1389 (5th Cir. 1996); Logan v. Burgers
Ozark Country Cured Hams, Inc., 263 F.3d 447, 464-65 (5th Cir.
2001).

Plaintiff cannot establish the causal connection between
the alleged false statements and damages to Plaintiff.
Plaintiff's own data shows that <.com> registrations actually
increased after Defendants' statements. Thus, no harm is evident
as it relates to the <.com> registrations. Plaintiff further
alleges harm to their <.net> registrations, and relies on the

analysis of expert Lauren Kindler. Kindler's analysis consisted of comparing <.net> registration numbers after Defendants' statements to <.net> registration numbers from an earlier timeframe. Because a decline in <.net> registrations coincided with some of Defendants' statements, Kindler concludes that Defendants' statements caused the decline.

While Kindler's qualifications are not in dispute, her methods in reaching this conclusion are questionable. "Correlation is not causation." Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 173, (2003). Kindler failed to account for the over 700 competitors in the <.net> space during the same time period, failed to account for the decline in Plaintiff's <.net> sales prior to Defendants' statements, and failed to account for changes in Plaintiff's own advertising and promotion. These are fatal flaws that point only to correlation, not causation, and as such, Kindler's conclusions are not reliable.

On the issue of lessening of goodwill, Plaintiff claims that irreparable harm to their brand and reputation is presumed, and injunctive relief is appropriate. This presumption is inaccurate. The Supreme Court twice rejected an irreparable harm presumption. See eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393-94 (2006) (rejecting an irreparable harm presumption after a patent infringement finding); see also Winter v. Natural Res. Def. Council., Inc., 55 U.S. 7 (2008) (holding that an

injunction "based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief ... [and] may only be awarded upon a clear showing that the plaintiff is entitled to such relief). Thus far, the Fourth Circuit has not yet decided the issue. See Scotts Co. 315 F.3d at 273-74. The Third Circuit and Ninth Circuit have both held that eBay and Winters apply to claims of irreparable harm rising under the Lanham Act. See Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 216-17 (3rd Cir. 2014) ("[W]e hold that there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act [false advertising] cases."); see also Herb Reed Enters, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013).

Moreover, Plaintiff does not proffer evidence beyond their subjective belief that Defendants' statements caused harm. Plaintiff does not submit testimonial evidence via experts or consumers, and the consumer survey conducted does not measure whether any statements resulted in economic or reputational harm. Plaintiff has not shown any evidence of irreparable harm to Plaintiff's reputation or goodwill.

For the foregoing reasons, Defendant's Motion for Summary Judgment must be granted.

An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 20, 2015